**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC., <br><br> Defendant, <br><br> ERICSSON INC., <br><br> Intervenor-Defendant, <br><br> NOKIA OF AMERICA CORP., <br><br> Intervenor-Defendant. | C.A. No. 2:23-158-JRG <br><br> JURY TRIAL DEMANDED <br><br> ███████████ |

**PLAINTIFF'S MOTION TO STRIKE PORTIONS OF**
**MS. JOHANNA DWYER'S EXPERT REPORTS**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................................1

ARGUMENT................................................................................................................................................2

    I.       The Court Should Strike Ms. Dwyer's Opinions on the Number of Standard-Essential Patents ..............................................................................................................2

    II.     The Court Should Strike Ms. Dwyer's Opinions Regarding Keyword Searches.....................................................................................................................................5

    III.    The Court Should Strike Ms. Dwyer's Opinions Regarding IPR Proceedings .............8

    IV.    The Court Should Preclude Ms. Dwyer From Presenting Opinions About Prosecution History Estoppel to the Jury........................................................................8

CONCLUSION.............................................................................................................................................9

## TABLE OF AUTHORITIES

**Federal Cases**

*Barkan Wireless IP Holdings L.P. v. T-Mobile US, Inc.*,
    No. 2:21-cv-34-JRG-RSP (E.D. Tex. Dec. 16, 2021) ...................................................................7

*Cameco Indus., Inc. v. Louisiana Cane Mfg., Inc.*,
    No. 92-3158, 1995 WL 468234 (E.D. La. July 27, 1995) ............................................................7

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009) ...................................................................................................8

*Ericsson, Inc. v. D-Link Sys., Inc.*,
    773 F.3d 1201 (Fed. Cir. 2014) ...................................................................................................4

*General Access Solutions, Ltd. v. Verizon Wireless*,
    2:22-cv-00394-JRG (E.D. Tex. June 3, 2024) ........................................................................ 1, 8

*Glaros v. H.H. Robertson Co.*,
    797 F.2d 1564 (Fed. Cir. 1986) ............................................................................................. 5, 7

*KAIST IP US LLC v. Samsung Electronics Co., Ltd.*,
    No. 2:16-cv-1314-JRG-RSP (E.D. Tex. May 3, 2018) ................................................................5

*Metaswitch Networks Ltd. v. Genband US LLC*,
    No. 2:14-cv-744-JRG-RSP, 2016 WL 874775 (E.D. Tex. Mar. 7, 2016) ................................ 4, 7

*Netlist, Inc. v. Micron Tech., Inc.*,
    No. 2:22-cv-203-JRG-RSP, 2024 WL 326591 (E.D. Tex. Jan. 27, 2024) ...................................2

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
    No. 6:11-cv-492-RWS-KNM, 2017 WL 4173467 (E.D. Tex. Sept. 21, 2017) ................... 2, 3, 4

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
    No. 2:15-cv-01366-JRG-RSP, 2021 WL 662237 (E.D. Tex. Feb. 20, 2021) .......................... 4, 6

*Simple Air, Inc. v. Google Inc.*,
    No. 2:11-cv-416-JRG (E.D. Tex. Jan. 8, 2014) ...........................................................................5

*TQP Dev., LLC v. 1-800-Flowers.com Inc.*,
    No. 2:11-cv-248-JRG-RSP, 2013 WL 12432371 (E.D. Tex. Nov. 8, 2013) ................................9

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    No. 22:0-cv-00319-JRG-RSP, 2022 WL 1453204 (E.D. Tex. Apr. 17, 2022) ............................8

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ......................................................................................................................8

**INTRODUCTION**

Ms. Dwyer was not asked by T-Mobile to offer opinions about the validity or infringement of the asserted patents. Instead, she provides "background on the technology" and "the patent landscapes," as well as "non-infringing alternatives." Ex. 1, Dwyer Opening Report at ¶ 32; Ex. 2, Dwyer Reply Report at ¶ 32. Her opinions are used by T-Mobile's damages expert, Ms. Melissa Bennis.

General Access moves to exclude four of Ms. Dwyer's opinions. First, Ms. Dwyer offers opinions on the number of standard-essential patents related to 4G and 5G base stations as a royalty-stacking argument. The asserted patents have not been declared standard essential and there is zero argument or evidence from Ms. Dwyer (or any other expert) that any standard-essential patents here caused royalty stacking—or that the referenced patents actually do read on the standard. These opinions about standard-essential patents are irrelevant, unreliable, and meant to mislead the jury into vastly undervaluing the asserted patents.

Second, and similarly, Ms. Dwyer performs searches using broad and general search terms, from which she concludes that the asserted patents are just three within a "thicket." These keyword-search opinions are based on wholly unreliable methodology and are supported by zero technical analysis to support that any of the many patents that hit on various search terms are actually relevant, comparable, or related to the asserted patents. These opinions too would do nothing other than confuse the issues and mislead the jury about the value of the asserted patents.

Third, Ms. Dwyer offers opinions about certain IPR proceedings related to some of the asserted patents. Those opinions would violate the Court's standing motion *in limine* to exclude testimony and evidence about IPR proceedings and the Court's related pretrial order in the *Verizon* case and should be excluded for the plainly prejudicial effect they would have.

Finally, Ms. Dwyer's opinions about prosecution-history estoppel are inappropriate for the jury. Prosecution-history estoppel is a legal issue that the Court, not the jury, must resolve.

## ARGUMENT

**I.      The Court Should Strike Ms. Dwyer's Opinions on the Number of Standard-Essential Patents**

Ms. Dwyer offers opinions about the number of standard-essential patents that may exist for 5G base stations. *See* Ex. 1, Dwyer Opening Report at ¶¶ 48-49, 115-139, 381-382. The Court should exclude these opinions, as they are neither reliable nor relevant to any issue in this case. *See Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4173467, at *1 (E.D. Tex. Sept. 21, 2017) (excluding expert opinions on royalty stacking). Apart from supplying an estimated number of standard-essential patents to Defendants' damages expert Ms. Bennis, Ms. Dwyer has no analysis of why this number matters. And Ms. Bennis does not add to that analysis—she just repeats Ms. Dwyer's conclusion.

As an initial matter, Ms. Dwyer's opinions about standard essential patents are entirely irrelevant to this case. None of the asserted patents have been declared to be standard essential, none of the parties have asserted such a position, and Ms. Dwyer does not contend they are. These opinions should be precluded on that basis alone. *See Netlist, Inc. v. Micron Tech., Inc.*, No. 2:22-cv-203-JRG-RSP, 2024 WL 326591, at *3 (E.D. Tex. Jan. 27, 2024) (striking expert opinions about standard essential patents "as being irrelevant in light of the ruling that the asserted patents are not standard essential").

But even setting aside that basic failure, Ms. Dwyer's opinions are unreliable and irrelevant for other reasons. Ms. Dwyer concludes that there must be thousands of standard-essential patents for 5G base stations. *See* Ex. 1, Dwyer Opening Report at ¶ 138. Ms. Dwyer has not performed an analysis to determine that any of these patents are actually standard-essential ones or even practiced by T-Mobile. She has simply estimated how many standard-essential patents there are based on the

2

number that have been declared. *See id.* at ¶¶ 137-138. Ms. Dwyer's opinions are intended to mislead the jury into believing that T-Mobile's base stations must practice thousands of other patents. But the mere fact that these patents have been declared essential to the standard does not mean that they are used by T-Mobile. In fact, it is common for companies to declare patents "essential" to the standards even where the standards can be practiced without infringing.

Without undertaking any real analysis, Ms. Dwyer uses the specter of standard-essential patents to suggest that the result of the hypothetical negotiation would be affected by these other patents. *See* Ex. 1, Dwyer Opening Report at ¶¶ 49, 139. Ms. Dwyer says, without explanation, "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." Ex. 1, Dwyer Opening Report at ¶ 139; *see also id.* at ¶ 49 ("████████████████████████████████████████████████████████████████████████████████████████████████████."). Ms. Bennis repeats this conclusion in her own report but does not use the number of standard-essential patents as a quantitative input in the damages.[1]

Ms. Dwyer implies—without saying it—that there may be a royalty-stacking issue. Even if that potential were to exist, Ms. Dwyer's implication does not "tie royalty stacking to the facts of *this case.*" *Network-1*, 2017 WL 4173467, at *2. She "has identified no evidence that [Defendant] has received requests for multiple royalties, or that it considers royalty stacking in real-world licensing negotiations." *Id.* at *3. Indeed, Ms. Dwyer cannot even bring herself to use the term "royalty stacking," let alone connect the number of standard-essential patents to any evidence of royalty

---

[1] General Access moves to exclude Ms. Bennis's standard-essential patents opinions for similar reasons.

stacking in this case. Ms. Dwyer's implicit royalty-stacking allegation, untethered to any facts in this case, is another reason to exclude these opinions. *Id.* at *2-3.

In addition, "[t]he mere fact that thousands of patents are declared to be essential to a standard does not mean that a standard-compliant company will necessarily have to pay a royalty to each SEP holder." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1234 (Fed. Cir. 2014). Like the expert in *Ericsson*, Ms. Dwyer has not "attempted to determine the actual amount of royalties Defendants are currently paying" on patents related to 4G and 5G base stations. *Id.* Nor has Ms. Dwyer done any analysis to determine the scope, comparability, or relative value of any of the patents she says are standard essential. *See Ericsson*, 773 F.3d at 1232 ("SEPs can, and, often do, claim only limited aspects of the overall standard."); *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-cv-01366-JRG-RSP, 2021 WL 662237, at *7 (E.D. Tex. Feb. 20, 2021) ("However, assuming *arguendo* that each patent of the fifty Apple DRM patents were practiced in the FairPlay functionality at the time of infringement, Mr. Thomas cannot assume that each patent has equal value."); *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-744-JRG-RSP, 2016 WL 874775, at *3 (E.D. Tex. Mar. 7, 2016) (excluding expert who "count[ed] the number of companies that provided intellectual property disclosures to the IETF standard setting organization, and assuming that the value of each participant company's patent portfolio is the same"). Ms. Dwyer cannot assume—without *any* analysis—the sheer number of standard-essential patents matters and then create the unsupported implication that those patents would impact the hypothetical negotiation. Her analysis is unreliable for that reason too.

Ms. Dwyer's opinions that there are thousands of standard-essential patents here is nothing more than a distraction from the real issues in the case and should be excluded. Introducing evidence of other patents—let alone *thousands* of other patents—will only serve to distract the jury, which is why courts routinely exclude this sort of evidence. *See Glaros v. H.H. Robertson Co.*, 797 F.2d

4

1564, 1572-73 (Fed. Cir. 1986) (affirming exclusion of "other patent applications and other patents, all with claims differing in language and scope from" the asserted patent because "[i]ntroduction of that evidence would have injected frolics and detours and would have required introduction of counter-evidence, all likely to create side issues that would have unduly distracted the jury from the main issues."); *KAIST IP US LLC v. Samsung Electronics Co., Ltd.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 416 at 2 (E.D. Tex. May 3, 2018) (granting MIL No. 8 to exclude evidence or argument "[t]hat the Accused Instrumentalities practice other patents"); *Simple Air, Inc. v. Google Inc.*, No. 2:11-cv-416-JRG, Dkt. 571 at 5 (E.D. Tex. Jan. 8, 2014) (granting MIL No. 6 to exclude evidence or argument that the "accused instrumentalities practice the claims of any of [Defendant's] own patents or patents of third parties").

## II.    The Court Should Strike Ms. Dwyer's Opinions Regarding Keyword Searches

T-Mobile seeks to introduce a similar side-show through Ms. Dwyer. She performed "simple keyword search[es]" to find patents that were filed before the priority dates of the asserted patents but has no treatment or analysis of the resulting patents. Ex. 1, Dwyer Opening Report at ¶¶ 46-47, 88-91, 96, 102, 105-114, 380; Ex. 2, Dwyer Reply Report at ¶¶ 300-303, 353-358, 436-440, 710. These keyword-search opinions should be excluded—they are unreliable, irrelevant to the issues of this case, and would do nothing other than mislead and confuse the jury.

Ms. Dwyer's search methodology is questionable at best. Ms. Dwyer crafted keyword searches using generic terms like "wireless," "communication," and "data." *See, e.g.*, Ex. 1, Dwyer Opening Report at ¶ 380. Searches like these are so overinclusive that what is captured by them is meaningless. The searches are not narrowly tailored to locate references similar to the asserted patents generally or the asserted claims of those patents specifically. And the only thing she did to try to exclude irrelevant references was to exclude a handful of terms like "food," "ultrasound," or "optical." *Id.* This methodology totally fails to support the conclusion Ms. Dwyer then draws from

5

them: that "█████████████████████████████████████████████████████████
███████" *Id.* at 114. These opinions are unreliable, confuse the issues, and would be highly prejudicial.

Ms. Dwyer's opinions are also irrelevant to the issues in this case. Ms. Dwyer's opinions are not related to invalidity. She does not offer any analysis of the patents she found. She does not assert they are prior art. She does not compare them to the claims of the asserted patents. She does not opine that these patents invalidate the asserted patents in any way. Nor would she be permitted to. Defendants have committed not to pursue in this litigation invalidity based on "the grounds raised" in the petitions, as well as "any other grounds that could have been reasonably raised before the PTAB." Ex. 3, IPR2023-01416, Petitioner's Reply to Patent Owner's Preliminary Response at 4; Ex. 4, IPR2024-00392, Petition for Inter Partes Review at 81; Ex. 5, IPR2024-00461, Petition for Inter Partes Review at 80. Yet Ms. Dwyer's opinions will create the impression that the asserted patents are somehow invalid because Ms. Dwyer found patents in her "basic keyword search."

Ms. Dwyer's opinions are also not related to the value of the asserted patents. She has not analyzed whether any of the patents she located through her generic and overbroad searches are technically or economically comparable. Indeed, it's not clear that Ms. Dwyer reviewed any of the patents found by the search at all. She does not contend that these patents are part of any relevant licensing agreements. And she has not incorporated these patents in her analysis of non-infringing alternatives.

As with Ms. Dwyer's standard-essential patent counting, Defendants here want to imply to the jury that the asserted patents have little value, or some substantially lesser value than what Plaintiff claims, because other presumably similar patents exist. But without any analysis, Ms. Dwyer cannot assume all of these patents have equal or similar value or that these other patents say anything about the value of the asserted patents. *See, e.g.*, *Personalized Media Commc'ns*, 2021 WL

6

662237, at *7 (expert "cannot assume that each patent has equal value"); *Metaswitch*, 2016 WL 874775, at *3 (excluding expert who "count[ed] the number of companies that provided intellectual property disclosures" without more). And Defendants' damages expert uses the number of patents in a similar way—with a cursory treatment to suggest the damages should be lower.

Rebutting these implications will require General Access to spend a considerable amount of time discussing patents that are irrelevant to the issues. This distraction is why courts routinely exclude opinions and evidence of other patents. *See, e.g.*, *Glaros*, 797 F.2d at 1572-73 (affirming exclusion of "other patent applications and other patents, all with claims differing in language and scope from" the asserted patent because "[i]ntroduction of that evidence would have injected frolics and detours and would have required introduction of counter-evidence, all likely to create side issues that would have unduly distracted the jury from the main issues.").

Ms. Dwyer's opinions about these other patents are all the more problematic, as she specifically counts the number assigned to Nokia and Ericsson, defendants in this case. *See* Ex. 2, Dwyer Reply Report at ¶¶ 302-303, 358, 438, 440. Courts regularly exclude such patents—particularly when they are untethered from any actual analysis and irrelevant to the issues in the case—because of their plainly prejudicial effect. *See, e.g.*, *id.*; *Barkan Wireless IP Holdings L.P. v. T-Mobile US, Inc.*, No. 2:21-cv-34-JRG-RSP, Dkt. 227 at 8, (Plaintiff's MIL No. 8) (E.D. Tex. Dec. 16, 2021) (granting in part "Motion to exclude Defendants' patents" by excluding "any argument that ownership of a patent is a defense to infringement"); *Cameco Indus., Inc. v. Louisiana Cane Mfg., Inc.*, No. 92-3158, 1995 WL 468234, at *6 (E.D. La. July 27, 1995) ("admission of [defendant's] patent or patent application . . . is likely to give the jury the false impression that a patent on the accused machine means that it is substantially different from the machine claimed in plaintiff's patent . . . [and] would be only distracting and confusing to the jury, while providing little, if any, relevant information.").

**III.    The Court Should Strike Ms. Dwyer's Opinions Regarding IPR Proceedings**

The Court should strike portions of Ms. Dwyer's reports that rely on prosecution history and IPR proceedings, including Ex. 1, Dwyer Opening Report at ¶¶ 29 & n.2, 348-349, 361-362; Ex. 2, Dwyer Reply Report at ¶¶ 29 & n.2, 42, 51, 71, 74-78, 134, 136, 159, 166, 197, 217, 259, 260, 262, 297. This Court has a standing motion *in limine* prohibiting parties "from introducing evidence, testimony, or argument concerning the Patent Trial and Appeal Board [and] inter partes review." Court MIL No. 6. And in the related *Verizon* case, the Court granted a motion *in limine* to exclude evidence, testimony, or argument related "to the IPR review process and any post-issuance matters" of the '931 patent. *See General Access Solutions, Ltd. v. Verizon Wireless*, 2:22-cv-00394-JRG, Dkt. 240 at 6 (E.D. Tex. June 3, 2024). T-Mobile should not be permitted to put this same type of evidence before the jury through Ms. Dwyer.

**IV.    The Court Should Preclude Ms. Dwyer From Presenting Opinions About Prosecution History Estoppel to the Jury**

Ms. Dwyer has opinions relating to General Access's allegations of infringement under the doctrine of equivalents that should not be presented to the jury. Specifically, Ms. Dwyer opines that General Access's doctrine of equivalents theories are barred by prosecution history estoppel. *See* Ex. 1, Dwyer Opening Report at ¶¶ 42-43, 207-208.

Prosecution history estoppel is a legal issue reserved solely for the Court to decide. "[P]rosecution history estoppel[] is 'to be determined by the court, either on a pretrial motion for partial summary judgment or on a motion for judgment as a matter of law at the close of the evidence and after the jury verdict.'" *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997)). Accordingly, Ms. Dwyer should be precluded from presenting her opinions about prosecution history estoppel to the jury. *See United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 22:0-cv-00319-JRG-RSP, 2022 WL 1453204, at *5 (E.D. Tex. Apr. 17, 2022), report and recommendation

8

adopted, No. 22:0-cv-00319-JRG-RSP, 2022 WL 1463984 (E.D. Tex. May 6, 2022) (experts "may not testify about any matter-of-law bars to DOE he or she may believe are applicable"); *TQP Dev., LLC v. 1-800-Flowers.com Inc.*, No. 2:11-cv-248-JRG-RSP, 2013 WL 12432371, at *6 (E.D. Tex. Nov. 8, 2013) (granting motion *in limine* to exclude prosecution history estoppel from being presented to the jury).

## CONCLUSION

General Access respectfully requests that the Court grant this motion and strike these portions of Ms. Dwyer's reports.

Dated: October 28, 2024                        Respectfully submitted,

                                               */s/ Glen E. Summers*
                                               ─────────────────────────
                                               Glen E. Summers (CO Bar No. 30635)
                                               LEAD ATTORNEY
                                               Nosson D. Knobloch (CO Bar No. 42134)
                                               John M. Hughes (CO Bar No.
                                               Giovanni J. Sanchez (CO Bar No. 59696)
                                               Taylor Kelson (CO Bar No. 56910)
                                               **BARTLIT BECK LLP**
                                               1801 Wewatta Street, Suite 1200
                                               Denver, CO 80202
                                               Telephone: (303) 592-3100
                                               glen.summers@bartlitbeck.com
                                               nosson.knobloch@bartlitbeck.com
                                               giovanni.sanchez@bartlitbeck.com
                                               taylor.kelson@bartlitbeck.com

                                               Michael J. Valaik (IL Bar No. 6276086)
                                               Luke C. Beasley (IL Bar No. 6334359)
                                               Meg E. Fasulo (IL Bar No. 6320595)
                                               **BARTLIT BECK LLP**
                                               54 West Hubbard Street, Suite 300
                                               Chicago, IL 60654
                                               Telephone: (312) 494-4400
                                               michael.valaik@bartlitbeck.com
                                               luke.beasley@bartlitbeck.com
                                               meg.fasulo@bartlitbeck.com

                                               Andrea L. Fair (TX Bar No. 24078488)
                                               Charles Everingham IV (TX Bar No. 00787447)
                                               T. John Ward, Jr. (TX Bar No. 00794818)
                                               **MILLER FAIR HENRY PLLC**
                                               1507 Bill Owens Pkwy.
                                               Longview, TX 75604
                                               Telephone: (903) 757-6400
                                               andrea@millerfairhenry.com
                                               ce@millerfairhenry.com
                                               jw@millerfairhenry.com

                                               *Attorneys for Plaintiff General Access Solutions, Ltd.*

10

## CERTIFICATE OF CONFERENCE

The undersigned certifies that the Parties have complied with the requirements of Local Rule CV-7(h) and that Defendants oppose this motion.

/s/ Glen E. Summers
Glen E. Summers

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on October 28, 2024, which will send a notification of such filing to all counsel of record.

/s/ Glen E. Summers
Glen E. Summers

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order in the above-captioned case, this motion contains confidential information. Accordingly, this document is to be filed under seal.

/s/ Glen E. Summers
Glen E. Summers