**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., | |
| Plaintiff, | Case No. 2:23-cv-00158 |
| v. | JURY TRIAL DEMANDED |
| T-MOBILE USA, INC., | |
| Defendant, | |
| ERICSSON INC., | |
| Intervenor-Defendant, | |
| NOKIA OF AMERICA CORPORATION, | |
| Intervenor-Defendant. | |

**DEFENDANT'S AND INTERVENORS' RESPONSE TO PLAINTIFF'S MOTION TO
STRIKE PORTIONS OF MS. JOHANNA DWYER'S EXPERT REPORTS**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 1

    A.  The Court Should Not Strike Ms. Dwyer's Opinions on the Number of Standard Essential Patents.................................................................................................... 1

    B.  The Court Should Not Strike Ms. Dwyer's Opinions Regarding Keyword Searches ... 7

    C.  The Court Should Not Strike Ms. Dwyer's Opinions Regarding IPR Proceedings .... 10

    D.  Ms. Dwyer's Opinions About Prosecution History Estoppel Are Proper ................... 11

III.    CONCLUSION...................................................................................................... 12

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| Asserted Patents | U.S. Patent Nos. 7,099,383, 6,947,477, and 7,230,931, collectively |
| T-Mobile | T-Mobile USA, Inc. |
| Ericsson | Ericsson Inc. |
| Nokia | Nokia of America Corporation |
| Defendants | T-Mobile, Nokia, and Ericsson, collectively |
| Plaintiff | General Access Solutions, Ltd. |
| Motion | Plaintiff's Motion to Strike Portions of Ms. Johanna Dwyer's Expert Reports, Dkt. 94 |
| IPR | *Inter Partes* Review |

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
| --- | --- |
| A | Excerpts of Johanna Dwyer Opening Expert Report, dated Sept. 30, 2024 |
| B | Excerpts of Johanna Dwyer Reply Expert Report, dated Oct. 15, 2024 |
| C | Excerpts of Rebuttal Expert Report of Melissa A. Bennis, dated Oct. 15, 2024 |
| D | Excerpts of Expert Report of Mr. David Kennedy, dated Sept. 30, 2024 |

████████████████████████

# TABLE OF AUTHORIITIES

**Page(s)**

CASES

*Barkan Wireless IP Holdings L.P. v. T-Mobile US, Inc.*,
No. 2:21-cv-34-JRG-RSP, Dkt. 227 (E.D. Tex. Dec. 16, 2021)...............................................9

*Cameco Indus., Inc. v. La. Cane Mfg., Inc.*,
No. 92-3158, 1995 WL 468234 (E.D. La. July 27, 1995) ..........................................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).................................................................................................................6

*Estech Sys. IP, LLC v. Mitel Networks, Inc.*,
No. 2:21-cv-473, 2023 WL 4588813 (E.D. Tex. July 18, 2023)...........................................6, 8

*General Access Solutions, Ltd. v. Cellco Partnership d/b/a Verizon Wireless et al.*
No. 2:22-cv-00394-JRG, Dkt. 289-1 (E.D. Tex. Sept. 6, 2024) ................................................5

*Glaros v. H.H. Robertson Co.*,
797 F.2d 1564 (Fed. Cir. 1986)..................................................................................................6

*Immersion Corp. v. Samsung Elecs. Am., Inc.*,
No. 2:17-cv-00572-JRG, Dkt. 188 (E.D. Tex. May 3, 2019) .....................................................8

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
No. 2:12-cv-525, 2015 WL 1518099 (E.D. Va. Mar. 31, 2015).................................................6

*IPCom GMBH & Co. KG v. AT&T Inc. et al.*,
No. 2:20-cv-00322-JRG, Dkt. No. 307 (E.D. Tex. Mar. 15, 2022)..........................................11

*KAIST IP US LLC v. Samsung Elecs. Co., Ltd.*,
No. 2:16-cv-1314-JRG-RSP, Dkt. 416 (E.D. Tex. May 3, 2018)...............................................6

*Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*,
No. 1:16-cv-01904-RM-MJW, Dkt. 29 (D. Colo. Apr. 3, 2017)...............................................8

*Nanoco Techs. Ltd. v. Samsung Elecs. Co., Ltd.*,
No. 2:20-cv-00038-JRG, Dkt. No. 274 (E.D. Tex. Sept 21, 2022) .........................................10

*Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*,
No. 16-284-LPS, 2019 U.S. Dist. LEXIS 27282 (D. Del. Jan. 2, 2019) ...................................8

*Simple Air, Inc. v. Google Inc.*,
No. 2:11-cv-416-JRG, Dkt. 571 (E.D. Tex. Jan. 8, 2014) .........................................................6

*Smart Path Connections, LLC. v. Nokia of Am. Corp.*,
No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 44219 (E.D. Tex. Mar. 13, 2024) ...................................................................................................................10

*Smart Path Connections, LLC v. Nokia of Am. Corp*,
No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 46570 (E.D. Tex. Mar. 6, 2024) ...11, 12

*TQP Dev., LLC v. 1-800-Flowers.com, Inc*.,
No. 2:11-CV-248-JRG-RSP, 2013 U.S. Dist. LEXIS 204650 (E.D. Tex. Nov. 8, 2013) ...................................................................................................................11

*United Servs. Auto. Ass'n v. PNC Bank N.A*.,
No. 22:0-cv-00319-JRG-RSP, 2022 U.S. Dist. LEXIS 82529 (E.D. Tex. Apr. 17, 2022) ...................................................................................................................11

*Wis. Alumni Research Foundation v. Apple, Inc.*,
No. 14-cv-62-WMC, 2015 WL 13547000 (W.D. Wis. Sept. 28, 2015)...............................3, 4

*Wonderland NurseryGoods Co. v. Thorley Indus., LLC*,
No. 12-cv-196, 2014 WL 241751-NBF (W.D. Pa. Jan. 22, 2014) ...........................................6

**RULES**

Fed. R. Evid. 403 ....................................................................................................................10

## I.    INTRODUCTION

Using her significant experience in the wireless communications industry, Ms. Dwyer analyzes the patented technology and landscape. Plaintiff, however, distorts those opinions in an effort to undermine relevant and reliable evidence. Each of the challenges that Plaintiff lodges fails.

First, Plaintiff's request to strike Ms. Dwyer's opinions on the number of standard essential patents is premised on the false notion that Ms. Dwyer performs a royalty stack calculation. But Ms. Dwyer does not undertake such an analysis. Rather, the 5G patent landscape is relevant to understanding Defendants' position in the hypothetical negotiation and the purported benefits of the asserted patents. Second, Plaintiff misrepresents the keyword searches that Ms. Dwyer performs, which too are relevant to describing the landscape that Defendants would consider during the hypothetical negotiation. Third, Ms. Dwyer's references to IPR proceedings do not run afoul of the Court's standing motions *in limine*, and instead inform her opinions on non-infringing alternatives and technical benefits. And finally, Plaintiff has failed to identify a single justification for striking opinions on prosecution history estoppel.

The Motion should be denied.

## II.    ARGUMENT

### A.    The Court Should Not Strike Ms. Dwyer's Opinions on the Number of Standard Essential Patents

Ms. Dwyer opines on the background of the relevant technology and the patent landscape surrounding that technology. *See* Ex. A (Dwyer Opening Report), ¶ 32; Ex. B (Dwyer Reply Report), ¶ 32. Ms. Dwyer "undertake[s] an analysis of the 5G Standard Essential Patents (SEP) landscape," in which she estimates that "the number of SEP patent families that cover different aspects of a 5G NR base station that are actually essential is in the range 2,951 to 8,031." Ex. A

1

(Dwyer Opening Report), ¶¶ 48-49; *see also id.*, ¶ 138. Plaintiff concedes that Ms. Dwyer never uses the term "royalty stacking." Motion at 3. And for good reason: Ms. Dwyer does not perform a royalty stack analysis.

Rather, this information is relevant to understanding Defendants' position and mindset in the hypothetical negotiation and contextualizes the purported benefits of the asserted patents. As Ms. Dwyer explains, the asserted patents are just three among a crowded technology field. Ex. A (Dwyer Opening Report), ¶ 115. And it is her expert opinion that "[w]hen assessing patent value…it is important to consider the large number of patent families that a base station manufacturer is likely to need to license." Ex. A (Dwyer Opening Report), ¶¶ 49, 116, 139. Specifically here, Plaintiff accuses "Defendants' 4G and 5G base station equipment" of infringing the asserted patents, and points to Defendants' 5G network to satisfy the claim language. *See, e.g.*, Dkt. 1, ¶¶ 23, 25-26, 35-48, 62, 77-78. Ms. Dwyer opines that "[t]he Nokia and Ericsson equipment that is deployed in T-Mobile's cellular network is compliant with 4G and 5G Technical Specifications developed by 3GPP," and "[a]s a consequence, companies like Nokia and Ericsson will need to consider licensing patent families for the technology incorporated in the Technical Specifications . . . ." Ex. A (Dwyer Opening Report) at ¶ 116. Defendants' damages expert, Ms. Melissa Bennis, then relies on these opinions to assess how the parties would have behaved during the hypothetical negotiation considering the patent landscape, along with the purported benefits of the asserted patents, in accordance with the *Georgia-Pacific* factors. *See, e.g.*, Dkt. 95, Ex. C (Bennis Rebuttal Report), ¶¶ 239-240.[1]

---

[1] Plaintiff also moves to strike Ms. Bennis's reliance on Ms. Dwyer's opinions. Dkt. 95. Both motions should be denied.

2

This is precisely the type of analysis that other courts have allowed. In *Wisconsin Alumni Research Foundation ("WARF") v. Apple, Inc.*, for example, the patent owner moved to exclude the defendant's witnesses from testifying or suggesting that there were a large number of patents that cover the accused products as a basis for the jury to discount the royalty rate (including because the defendant had not established the factual predicates for a "royalty stacking" argument). No. 14-cv-62-WMC, 2015 WL 13547000, at *7 (W.D. Wis. Sept. 28, 2015). In denying that request, the court credited the defendant's position that "this information [was] useful for the jury to understand [defendant's] position going into the hypothetical negotiation" and concluded that the patent owner "failed to come forward with a valid basis for excluding this testimony." *Id.* at *8.

Plaintiff mischaracterizes Ms. Dwyer's opinions as royalty stacking so it can argue the requirements to prove a royalty stack are not met. As previously discussed, Ms. Dwyer has not attempted to prove up a royalty stack. Further, Plaintiff's threshold argument that Ms. Dwyer's opinions are "entirely irrelevant" to this case because "[n]one of the asserted patents have been declared to be standard essential," is not correct.[2] Courts have allowed such evidence even outside of the RAND context. *See WARF*, 2015 WL 13547000, at *7 (rejecting patent holder's argument that "the royalty stacking theory only applies to certain technical standards (or RAND) cases not applicable [in that matter]"). Plaintiff's reliance on *Netlist, Inc. v. Micron Technology Inc.*, is misplaced because there the defendant's damages expert considered patent hold-up and royalty stacking *as part of* determining a *RAND* royalty for the asserted patents, but the court separately

---

[2] Also, this argument is directly undermined by Plaintiff's own damages expert, who opines on the value of 4G and 5G to justify his proposed damages figures. *See infra* § II.B.

determined the patents were not standard essential. No. 2:22-cv-203-JRG-RSP, 2024 WL 326591, at *3 (E.D. Tex. Jan. 27, 2024). Here, *RAND* royalties are not at issue.

Moreover, in *Network-1 Technologies, Inc. v. Alcatel-Lucent USA*, *Inc.*, the defendant's expert proffered abstract recitations of royalty stacking theory without any evidence tied to the case, such as whether it considers royalty stacking in real-world negotiations (unlike the present case). No. 6:11-cv-492, 2017 WL 4173467, at *2-3 (E.D. Tex. Sept. 21, 2017). And *Ericsson, Inc. v. D-Link Sys., Inc.*, did not bar evidence of royalty stacking at trial. The dispute concerned the district court's refusal to charge the jury with a specific royalty stacking instruction based on the evidence in the trial record. 773 F.3d 1201, 1233-34 (Fed. Cir. 2014). Here, Defendants do not intend to request a jury instruction on royalty stacking.

The remaining cases upon which Plaintiff relies involved experts who erred in their application of royalty stacking principles to calculate proposed royalties. In *Personalized Media Communications, LLC v. Apple, Inc.*, the expert calculated the value of the patents-in-suit by "[a]ssuming equal value of the [defendant's 50 patents related to the accused functionality] and the [three] patents-in-suit . . . divid[ing] the three patents-in-suit by 53 (50 [of defendant's] patents plus the three patents-in-suit)." No. 2:15-cv-01366-JRG-RSP, 2021 WL 662237, at *6 (E.D. Tex. Feb. 20, 2021). And in *Metaswitch Networks Ltd. v. Genband US LLC*, the expert employed a top-down approach in which he determined the proportion of the asserted patent to total SEPs by counting the number of *companies* that provided intellectual property disclosures to the standard setting organization—not even the number of patents that were declared. No. 2:14-cv-744-JRG-RSP, 2016 WL 874775, at *3 (E.D. Tex. Mar. 7, 2016). This is not an exercise Ms. Dwyer (or Ms. Bennis) even contemplated.

4

Plaintiff also claims that Ms. Dwyer's opinions are "unreliable" because she "concludes there must be thousands of standard-essential patents for 5G base stations" without "perform[ing] an analysis to determine that any of these patents are actually standard-essential ones or even practiced by T-Mobile." Motion at 2. Not so. Ms. Dwyer met with individuals at Bird & Bird who extensively analyzed intellectual property rights disclosures made to the standard-setting body (ETSI) and produced a census, which in turn allowed Ms. Dwyer to consider the total number of declared patent families associated with 5G cellular technology (78,500). Ex. A (Dwyer Opening Report), ¶¶ 127-128. Ms. Dwyer then filtered that data to extract only those patents relevant to a 5G NR base station, i.e., patent families declared against the "38 series" of 3GPP Technical Specifications (68,648). *Id.*, ¶¶ 128-129. Then, Ms. Dwyer acknowledged the "common understanding and agreement in the industry that there is substantial over declaration," and so reviewed multiple published studies—including one she co-authored—to correct for over declaration, resulting in an estimation of the number of SEP patent families that cover different aspects of a 5G NR base station in the range of 2,951 to 8,031. *Id.*, ¶¶ 132-138. Ms. Dwyer also considered a recent report from the United States Patent and Trademark Office ("USPTO"), which found over 42,000 patent families had been declared relevant to 5G by May 2021. *Id.*, ¶ 131. Notably, this report was previously admitted in *General Access Solutions, Ltd. v. Cellco Partnership d/b/a Verizon Wireless et al.*, No. 2:22-cv-00394-JRG, Dkt. 289-1 at 1027:14-1028:2 (E.D. Tex. Sept. 6, 2024). In short, the information Ms. Dwyer relies on to arrive at her conclusions about the number of relevant patents to the 5G landscape is sufficiently reliable and the type of information courts have previously allowed experts to rely on.

Regardless, Plaintiff's catalog of complaints simply does not reflect the realities of proof that Defendants intend to offer. Whether there are 3,000 or 8,000 patents related to the accused

5

products is not the point. What matters is that Defendants would have considered the fact that there are a large number of patents related to the accused products as part of the hypothetical negotiation. To the extent Plaintiff disagrees with Ms. Dwyer's methodology, that can appropriately be addressed by cross examination and contrary evidence, if any such evidence exists. *Estech Sys. IP, LLC v. Mitel Networks, Inc.*, No. 2:21-cv-473, 2023 WL 4588813, at *3 (E.D. Tex. July 18, 2023) ("The inquiry on the correctness of the methodology and the results produced in [the expert's] report can be properly explored through vigorous cross-examination and presentation of contrary evidence.") (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

Finally, Ms. Dwyer's opinions are unlike those that courts have excluded as "distract[ing]." Motion at 4-5 (citing *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564 (Fed. Cir. 1986); *KAIST IP US LLC v. Samsung Elecs. Co., Ltd.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 416 at 2 (E.D. Tex. May 3, 2018); *Simple Air, Inc. v. Google Inc.*, No. 2:11-cv-416-JRG, Dkt. 571 at 5 (E.D. Tex. Jan. 8, 2014)). Defendants are not introducing specific patents that would complicate infringement or invalidity issues in the case by creating "side issues." As discussed above, the number of patents is relevant to how Defendants would have approached the hypothetical negotiation. Indeed, other courts have allowed such evidence. *See, e.g.*, *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, No. 12-cv-196-NBF, 2014 WL 241751, at *2 (W.D. Pa. Jan. 22, 2014) (finding the defendants' patents admissible and relevant to *Georgia-Pacific* factor 13); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2015 WL 1518099, at *11 (E.D. Va. Mar. 31, 2015) (denying motion *in limine* to exclude evidence of the defendants' patents, and noting that "any relevance to the development process and damages defense will be determined based on the [d]efendants' factual context and proffered purpose of the evidence at trial").

6

█████████████████████████████████

### B.    The Court Should Not Strike Ms. Dwyer's Opinions Regarding Keyword Searches

Plaintiff also challenges Ms. Dwyer's opinions regarding keyword searches as unreliable, irrelevant, and prejudicial. Motion at 5-7. Plaintiff is wrong.

As an initial matter, the methodology Ms. Dwyer employed is reliable. Contrary to Plaintiff's misrepresentations, Ms. Dwyer identified conjunctive search terms tailored to each of the asserted patents. Those searches were run only against the title, abstract, and claims of granted U.S. patents, and the results then audited by Ms. Dwyer to determine additional filtering to remove false positives.[3] Ex. A (Dwyer Opening Report), ¶ 108. For example, the query for the '477 Patent is below:

| Figure 14 | ( ( country_search:( "US" ) )<br>AND ( granted:( TRUE ) )<br>AND ( title_abstract_claims_english_search:(<br>( wireless )<br>AND ( communicat* )<br>AND ( data )<br>AND ( reception OR receiv* OR demodulat* OR /modem[s]?/ )<br>AND ( /profile[s]?/ OR /parameter[s]?/ OR weight* OR /characteristic[s]?/ OR /coefficient[s]?/ OR estimate* )<br>AND ( store OR storing OR stored OR storage OR memory OR maintain* OR save OR saved OR saving )<br>AND ( subsequent* OR successive* OR sequential* )<br>NOT ( medic* OR insur* OR audio* OR food OR temperature )<br>) ) ) |
|---|---|

*Id.*, ¶ 380 (annotated). As can be seen, Ms. Dwyer did not simply run searches for generic terms like "communication" and "data"; those concepts were targeted to the subject matter of the patent (yellow), run against only the title, abstract, and claims (green) of granted U.S. patents (blue), and further narrowed to remove false positives following Ms. Dwyer's review and analysis of the

---

[3] That the resulting patents are relevant to the accused technologies is further demonstrated by the specific examples Ms. Dwyer provided as part of her analysis. *See, e.g.*, Ex. A (Dwyer Opening Report), ¶¶ 88-91, 96, 102, 105-106.

patent results (pink). Any purported criticisms of the search methodology can be addressed during cross examination. *Estech*, 2023 WL 4588813, at *3.

Moreover, as discussed above, the patent landscape is highly relevant to the issues in this case. *See supra*, § II.A. Ms. Dwyer does not perform this analysis to opine on patent validity or comparable licenses or to support her opinions on non-infringing alternatives, and so Plaintiff's criticisms on that basis are simply immaterial. Motion at 6. Rather, the keyword searches provide yet another datapoint demonstrating just how many patents exist in the relevant technology fields, a landscape that the Defendants would take into account during the hypothetical negotiation. Unlike the expert in *Personalized Media*, Ms. Dwyer is not "re-calculating the percentage of value added by the patents-in-suit by '[a]ssuming equal value[']'" of the keyword results. 2021 WL 662237, at *6. Nor is Ms. Dwyer calculating patent value by looking at the number of companies who hold the patents, like the expert in *Metaswitch*. 2016 WL 874775, at *3. *See also supra,* § II.A. Plaintiff's suggestion that "[r]ebutting these implications will require [it] to spend a considerable amount of time discussing [irrelevant] patents" falls flat. Motion at 7.

Finally, Plaintiff contends that the opinions have a "plainly prejudicial effect" because Ms. Dwyer recognizes that a number of patents are assigned to Defendants. Motion at 7. But "a blanket exclusion of such evidence is unwarranted." *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, No. 16-284-LPS, 2019 U.S. Dist. LEXIS 27282, at *3 (D. Del. Jan. 2, 2019) (denying motion *in limine* to exclude a defendant's patents because "there may well be proper purposes for introducing [such] evidence"); *see also Immersion Corp. v. Samsung Elecs. Am., Inc.*, No. 2:17-cv-00572-JRG, Dkt. 188 at 7-8 (E.D. Tex. May 3, 2019) (denying motion *in limine* to preclude defendants from presenting evidence relating to defendants' own patents, even those that related to the accused technology); *Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*, No. 1:16-

8

cv-01904-RM-MJW, Dkt. 29 at 4 (D. Colo. Apr. 3, 2017) (denying without prejudice plaintiff's motion *in limine* to preclude "any and all reference to [d]efendant's patents" based on defendant's representation that "its patents are relevant on the issues of willfulness and reasonable royalty determinations as well as for providing background for its products").

The *Barkan* and *Cameco* cases are inapposite, as both involved whether the defendant's patent ownership was *a relevant defense to patent infringement*. *Barkan Wireless IP Holdings L.P. v. T-Mobile US, Inc.*, No. 2:21-cv-34-JRG-RSP, Dkt. 227 at 8 (E.D. Tex. Dec. 16, 2021); *Cameco Indus., Inc. v. La. Cane Mfg., Inc.*, No. 92-3158, 1995 WL 468234, at *6 (E.D. La. July 27, 1995). Here, Ms. Dwyer is not using her analysis to make such an argument.

In contrast, excluding these opinions would be highly prejudicial *to Defendants*. Plaintiff's damages expert, Mr. David Kennedy, dedicates an entire section of his report to the "Success and Profitability of Cellular Data Services," in which he details the history, success, and profitability of 4G and 5G, including the general benefits to consumers and carriers. Ex. D (Kennedy Opening Report), ¶¶ 388-461. Mr. Kennedy, for example, includes sweeping statements such as "5G provides a significantly enhanced consumer experience through faster speeds and reduced latency." *Id.*, ¶ 426. Similarly, Plaintiff's technical expert, Dr. Vijay Madisetti, greatly overstates the benefits of the asserted patents. Ex. B (Dwyer Reply Report), ¶¶ 300, 353-356, 434-436; *see also* Ex. C (Bennis Rebuttal Report), ¶¶ 54-55, 63-65, 72-73. He attributes the benefits in general of transmit beamforming, using uplink beamforming in a system performing adaptive modulation / utilizing signal processing based on signal- and channel-related parameters in a system that is performing adaptive modulation, and iterative channel estimation using stored parameters, to the claims of the respective asserted patents, even though there are many technologies that contribute to those benefits (as evidenced by the keyword search results). *See id.* Ms. Dwyer's analysis is

9

directly responsive to those assertions. Allowing Plaintiff to claim credit for the general benefits of 5G—divorced from the patent landscape surrounding 5G—would be highly prejudicial to Defendants. Fed. R. Evid. 403.

### C. The Court Should Not Strike Ms. Dwyer's Opinions Regarding IPR Proceedings

Plaintiff also requests that the Court strike dozens of paragraphs across Ms. Dwyer's reports that rely on IPR proceedings. Motion at 8. Because this Court has a standing motion *in limine* prohibiting parties from introducing "evidence, testimony, or argument concerning the Patent Trial and Appeal Board [and] inter partes review" in front of a jury, Plaintiff broadly argues that all of Ms. Dwyer's opinions related to the same should be stricken. *Id.* But this argument is plainly incorrect and misinterprets the Court's standing order.

The Court's standing order on motions *in limine* begins that "the Parties, their witnesses, and counsel shall not raise, discuss, or argue the following *before the venire panel or the jury* without prior leave of the Court . . . ." E.D. Tex. Standing Order on MILs at 1 (emphasis added). Indeed, the full context of MIL No. 6 precludes discussion of *inter partes* review proceedings *in front of the jury*, not in an expert witness's report discussing, for example, the background and procedural history of a patent used to inform opinions on non-infringing alternatives and technical benefits.

Regardless, to the extent Plaintiff is concerned with Defendants' experts making explicit references to terms such as "IPR" or "PTAB" in front of a jury, Ms. Dwyer may permissibly use alternative terminology, a practice this Court has frequently permitted. *See, e.g.*, *Smart Path Connections, LLC. v. Nokia of Am. Corp.*, No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 44219, at \*2 (E.D. Tex. Mar. 13, 2024) (declining to strike portions of expert reports discussing IPRs because any issues "will be addressed through *in limine* rulings"); *Nanoco Techs. Ltd. v.*

10

███████████████████████

*Samsung Elecs. Co., Ltd.*, No. 2:20-cv-00038-JRG, Dkt. No. 274 at 9 (E.D. Tex. Sept 21, 2022) (permitting impeachment with statements made during IPR so long as "such impeachment shall not refer to, show, or mention" the IPR proceeding or the PTAB, "but may be referred to as a statement to the Patent Office"); *see also IPCom GMBH & Co. KG v. AT&T Inc. et al.*, No. 2:20-cv-00322-JRG, Dkt. No. 307 at 7 (E.D. Tex. Mar. 15, 2022).

### D. Ms. Dwyer's Opinions About Prosecution History Estoppel Are Proper

Plaintiff further argues that this Court should preclude Ms. Dwyer from presenting to the jury her opinions relating to Plaintiff's allegations of infringement under the doctrine of equivalents because "[p]rosecution history estoppel is a legal issue reserved solely for the Court to decide." Motion at 8. While this is true, it is not grounds for striking Ms. Dwyer's opinions (which Plaintiff seemingly concedes, as its motion refers only to presentation before the jury). Indeed, not a single case cited by Plaintiff in support of this argument is related to *striking* expert testimony. *See United Servs. Auto. Ass'n v. PNC Bank N.A*., No. 22:0-cv-00319-JRG-RSP, 2022 U.S. Dist. LEXIS 82529, at \*14-15 (E.D. Tex. Apr. 17, 2022) (merely stating that "[t]he Court will take up matter-of-law bars to DOE post-trial"); *see also TQP Dev., LLC v. 1-800-Flowers.com, Inc*., No. 2:11-CV-248-JRG-RSP, 2013 U.S. Dist. LEXIS 204650 (E.D. Tex. Nov. 8, 2013) (related to a motion *in limine* to exclude prosecution history estoppel from being presented to the jury).

Further, reports of expert witnesses serve as important evidence in informing a court as to the merits of the affirmative defenses of prosecution history estoppel. In fact, this Court has in the past granted summary judgment of no prosecution history estoppel because parties failed to provide sufficient expert testimony on the subject. *Smart Path Connections, LLC v. Nokia of Am. Corp*, No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 46570, at \*6 (E.D. Tex. Mar. 6, 2024)

11

(stating that an affirmative defense of prosecution history estoppel "will almost always need opinion testimony provided by an expert" and granting a motion for summary judgment rejecting such a defense where "sufficient expert testimony" was not identified). Importantly, the Court has stated that a party "is obligated to provide the expert testimony it intends to rely on in support of its theories during expert discovery." *Id*. It is not only entirely proper, but necessary for an expert to provide written testimony in support of affirmative defenses, such as prosecution history estoppel, related to a plaintiff's claim of infringement under the doctrine of equivalents. Plaintiff cannot argue that these supporting opinions should be struck from the record where this Court has in the past *required* they be *included* in the record for a party's affirmative defenses to stand. Further, to the extent the Court were to hold a hearing on prosecution history estoppel, Defendants intend to call Ms. Dwyer as a witness. Thus, Ms. Dwyer was required to submit these opinions in her reports.

## III.      CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Strike Portions of Ms. Johanna Dwyer's Expert Reports.

Dated: November 12, 2024                    Respectfully submitted,

                                            */s/ Michael C. Deane*
                                            John D. Haynes (GA Bar No. 340599)
                                            Wesley C. Achey (GA Bar No. 141284)
                                            Michael C. Deane (GA Bar No. 498195)
                                            Kyle A. Ceuninck (GA Bar No. 915189)
                                            **ALSTON & BIRD LLP**
                                            1201 West Peachtree Street
                                            Atlanta, GA 30309-3424
                                            Telephone: (404) 881-7000
                                            Facsimile: (404) 881-7777

12

John.Haynes@alston.com
Wes.Achey@alston.com
Michael.Deane@alston.com
Kyle.Ceuninck@alston.com

Mary I. Riolo (NC Bar No. 59644)
**ALSTON & BIRD LLP**
Vantage South End
1120 S. Tryon Street
Suite 300
Charlotte, NC 28203
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Mary.Riolo@alston.com

Thomas W. Davison (FL Bar No. 55687)
**ALSTON & BIRD LLP**
950 F St NW
Washington, DC 20004
Phone: (202) 239-3300
Fax: 202.239.3333
Tom.Davison@alston.com

*Attorneys for Defendant T-Mobile USA,*
*Inc. and Intervenor-Defendants Ericsson*
*Inc. and Nokia of America Corporation*

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on November 12, 2024, on all counsel who have consented to electronic service.

/s/ Michael C. Deane
Michael C. Deane

14

15