**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., | |
| Plaintiff, | Case No. 2:23-cv-00158 |
| v. | JURY TRIAL DEMANDED |
| T-MOBILE USA, INC., | |
| Defendant, | |
| ERICSSON INC., | |
| Intervenor-Defendant, | |
| NOKIA OF AMERICA CORPORATION, | |
| Intervenor-Defendant. | |

**DEFENDANT'S AND INTERVENORS' RESPONSE TO PLAINTIFF'S MOTION TO
STRIKE PORTIONS OF MS. MELISSA BENNIS'S EXPERT REPORT**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 1

        A.      The Court Should Not Strike Ms. Bennis's Opinions That Rely on Ms. Dwyer's
                Patent Counting ................................................................................................. 1

        B.      The Court Should Not Strike Ms. Bennis's Opinions Regarding IPR Proceedings . 6

III.    CONCLUSION ............................................................................................................... 8

███████████████████████████████████

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| Asserted Patents | U.S. Patent Nos. 7,099,383, 6,947,477, and 7,230,931, collectively |
| T-Mobile | T-Mobile USA, Inc. |
| Ericsson | Ericsson Inc. |
| Nokia | Nokia of America Corporation |
| Defendants | T-Mobile, Nokia, and Ericsson, collectively |
| Plaintiff | General Access Solutions, Ltd. |
| Motion | Plaintiff's Motion to Strike Portions of Ms. Melissa Bennis's Expert Report, Dkt. 95 |

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|:---:|---|
| A | Excerpts of Rebuttal Expert Report of Melissa A. Bennis, dated Oct. 15, 2024 |
| B | Excerpts of Expert Report of Mr. David Kennedy, dated Sept. 30, 2024 |

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barkan Wireless IP Holdings L.P. v. T-Mobile US, Inc.*,
No. 2:21-cv-34-JRG-RSP, Dkt. 227 (E.D. Tex. Dec. 16, 2021)...............................................6

*Cameco Indus., Inc. v. La. Cane Mfg., Inc.*,
No. 92-3158, 1995 WL 468234 (E.D. La. July 27, 1995) ........................................................6

*Glaros v. H.H. Robertson Co.*,
797 F.2d 1564 (Fed. Cir. 1986)................................................................................................5

*Immersion Corp. v. Samsung Elecs. Am., Inc.*,
No. 2:17-cv-00572-JRG, Dkt. 188 (E.D. Tex. May 3, 2019) ...................................................5

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
No. 2:12-cv-525, 2015 WL 1518099 (E.D. Va. Mar. 31, 2015)...............................................5

*IPCom GMBH & Co. KG v. AT&T Inc. et al.*,
No. 2:20-cv-00322-JRG, Dkt. No. 307 (E.D. Tex. Mar. 15, 2022) ..........................................7

*KAIST IP US LLC v. Samsung Elecs. Co., Ltd.*,
No. 2:16-cv-1314-JRG-RSP, Dkt. 416 (E.D. Tex. May 3, 2018)..............................................5

*Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*,
No. 1:16-cv-01904-RM-MJW, Dkt. 29 (D. Colo. Apr. 3, 2017)...............................................6

*Nanoco Techs. Ltd. v. Samsung Elecs. Co., Ltd.*,
No. 2:20-cv-00038-JRG, Dkt. No. 274 (E.D. Tex. Sept 21, 2022) ..........................................7

*Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*,
No. 16-284-LPS, 2019 U.S. Dist. LEXIS 27282 (D. Del. Jan. 2, 2019) ..................................5

*Simple Air, Inc. v. Google Inc.*,
No. 2:11-cv-416-JRG, Dkt. 571 (E.D. Tex. Jan. 8, 2014) ........................................................5

*Smart Path Connections, LLC. v. Nokia of Am. Corp.*,
No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 44219 (E.D. Tex. Mar. 13, 2024) ...................................................................................................................................7

*Wis. Alumni Research Foundation v. Apple, Inc.*,
No. 14-cv-62-WMC, 2015 WL 13547000 (W.D. Wis. Sept. 28, 2015)..............................3, 4

*Wonderland NurseryGoods Co. v. Thorley Indus., LLC*,
No. 12-cv-196, 2014 WL 241751-NBF (W.D. Pa. Jan. 22, 2014) ...........................................5

████████████████████████████████

**RULES**

Fed. R. Evid. 403 ...............................................................................................................................3

## I.    INTRODUCTION

Ms. Bennis relies on Ms. Dwyer's standard essential patent and keyword searches to assess how the parties would have behaved during the hypothetical negotiation, along with the purported benefits of the Asserted Patents, in accordance with the *Georgia-Pacific* factors. *See, e.g.*, Ex. A (Bennis Rebuttal Report), ¶¶ 239-240. Plaintiff's request to strike Ms. Bennis's opinions largely rehashes gripes with Ms. Dwyer's analysis. For the same reasons that Plaintiff's challenges to Ms. Dwyer's opinions fail, its objections to Ms. Bennis relying on those opinions also fall short. *See* Defendant's and Intervenors' Response to Plaintiff's Motion to Strike Portions of Ms. Johanna Dwyer's Expert Reports.[1] The Motion should be denied.

## II.    ARGUMENT

### A.  The Court Should Not Strike Ms. Bennis's Opinions That Rely on Ms. Dwyer's Patent Counting

Plaintiff erroneously contends that Ms. Bennis "does not offer any real analysis of how the number of patents affects her damages analysis." Motion at 1. But it simultaneously recognizes that Ms. Bennis provides a background overview, and then discusses the searches as part of her *Georgia-Pacific* analysis. *Id.* (citing Ex. A (Bennis Rebuttal Report), ¶¶ 46-47, 54-55, 63-64, 72-73, 211, 239-240, 290, 292-293). As Ms. Bennis explains, this information is relevant to understanding Defendants' position and mindset in the hypothetical negotiation and contextualizes the purported benefits of the Asserted Patents and the relative importance of the patented technology to the accused products.

In particular, *Georgia-Pacific* factor 10 encompasses the benefits to those who have used the invention. Ms. Bennis recognizes that Ms. Dwyer disagrees with Dr. Madisetti (Plaintiff's

---

[1] Defendants are filing their Response to Plaintiff's Motion to Strike Portions of Ms. Johanna Dwyer's Expert Reports concurrently herewith.

technical expert) on the benefits of the asserted patents, as he attributes the entire value of certain features to the asserted claims even though there are many patents in the same technology space. Ex. A (Bennis Rebuttal Report), ¶¶ 215, 221, 227. This factors into her conclusion that "a license to patented technology that does not provide significant benefits and does not represent a substantial improvement over the prior art would command a lower royalty than a license for one that does…" *Id.*, ¶ 232. Relatedly, *Georgia-Pacific* factor 11 relates to the value of the invention. Here, Ms. Bennis discusses that Mr. Kennedy (Plaintiff's damages expert) attributes the benefits of 4G and 5G to apply upward pressure on the hypothetical negotiation. *Id.*, ¶ 209; *see also id.*, ¶ 210 ("Mr. Kennedy's discussions . . . rely largely on industry-wide network statistics, industry-wide infrastructure and spectrum investments, and 4G and 5G statistics in general, without any specific analysis of the impact—if any—from the alleged use of the patents-in-suit."). Ms. Bennis responds to that position, including by relying on Ms. Dwyer's analysis that demonstrated there are numerous other patents related to the relevant technologies. *Id.*, ¶ 211.

Additionally, *Georgia-Pacific* factor 13 is utilized to assess the value of the patented technology as distinguished from other attributes of the product or company that sells it. Ms. Bennis opines that "[t]he benefits the patents-in-suit convey should be balanced with the fact that the accused base stations are understood to practice numerous patented technologies, many of which are essential to the various standards." *Id.*, ¶ 239. She explains that "[t]he hypothetical negotiators would consider Ericsson's and Nokia's contributions to the accused products, which they manufacture," and that "the consideration paid by T-Mobile for a license to the patents-in-suit would need to be considered relative to any role and royalty burden of the tens of thousands of other patents that have been declared to the 4G and 5G standards and other technologies embodied in the products that have not been declared to the 4G or 5G standards." *Id.*, ¶ 239; *see*

2

*also id.*, ¶ 240 (discussing the overall patent landscape using Ms. Dwyer's keyword searches). Ms. Bennis concludes that "the lower the value that can be credited to the invention, the lower the royalty." *Id.*, ¶ 242; *see also id.*, ¶ 346.

This is precisely the type of analysis that other courts have allowed. In *Wisconsin Alumni Research Foundation ("WARF") v. Apple, Inc.*, for example, the patent owner moved to exclude the defendant's witnesses from testifying or suggesting that there were a large number of patents that cover the accused products as a basis for the jury to discount the royalty rate (including because the defendant had not established the factual predicates for a "royalty stacking" argument). No. 14-cv-62-WMC, 2015 WL 13547000, at *7 (W.D. Wis. Sept. 28, 2015). In denying that request, the court credited the defendant's position that "this information [was] useful for the jury to understand [defendant's] position going into the hypothetical negotiation" and concluded that the patent owner "failed to come forward with a valid basis for excluding this testimony." *Id.* at *8.

While Plaintiff attempts to discredit this analysis as "irrelevant" because Plaintiff "has not declared that the patents-in-suit are essential to 4G or 5G," that is immaterial. As an initial matter, this sentiment is directly undermined by Plaintiff's own expert, who highlights the value of 4G and 5G to justify his proposed damages figures. *See, e.g.*, Ex. B (Kennedy Opening Report), ¶¶ 388-461, 426. Mr. Kennedy, for example, dedicates an entire section of his report to the "Success and Profitability of Cellular Data Services," in which he details the history, success, and profitability of 4G and 5G, including the general benefits to consumers and carriers. Ex. B (Kennedy Opening Report), ¶¶ 388-461. He also includes sweeping statements such as "5G provides a significantly enhanced consumer experience through faster speeds and reduced latency." *Id.*, ¶ 426. Allowing Plaintiff to claim credit for the general benefits of 5G—divorced

3

from the patent landscape surrounding 5G—would be highly prejudicial to Defendants. Fed. R. Evid. 403.

Moreover, although Ms. Bennis is not offering a royalty stacking opinion, it is incorrect that the Asserted Patents must be RAND for such an argument to be available. *See WARF*, 2015 WL 13547000, at *7 (rejecting patent holder's argument that "the royalty stacking theory only applies to certain technical standards (or RAND) cases not applicable [in that matter]"). Plaintiff's reliance on *Netlist, Inc. v. Micron Technology Inc.*, is misplaced because there the defendant's damages expert considered patent hold-up and royalty stacking *as part of* determining a *RAND* royalty for the Asserted Patents, but the court separately determined the patents were not standard essential. No. 2:22-cv-203-JRG-RSP, 2024 WL 326591, at *3 (E.D. Tex. Jan. 27, 2024). Here, RAND royalties are not at issue.

Nor is this case analogous to *Network-1 Technologies, Inc. v. Alcatel-Lucent USA, Inc.*, where the defendant's expert proffered abstract recitations of royalty stacking theory without any evidence tied to the case, such as whether it considers royalty stacking in real-world negotiations (unlike the present case). No. 6:11-cv-492, 2017 WL 4173467, at *2-3 (E.D. Tex. Sept. 21, 2017). And *Ericsson, Inc. v. D-Link Sys., Inc.*, did not bar evidence of royalty stacking at trial. The dispute concerned the district court's refusal to charge the jury with a specific royalty stacking instruction based on the evidence in the trial record. 773 F.3d 1201, 1233-34 (Fed. Cir. 2014). Here, Defendants do not intend to request a jury instruction on royalty stacking.

The remaining cases upon which Plaintiff relies involved experts who erred in their application of royalty stacking principles to calculate proposed royalties. In *Personalized Media Communications, LLC v. Apple, Inc.*, the expert calculated the value of the patents in suit by "[a]ssuming equal value of the [defendant's 50 patents related to the accused functionality] and

the [three] patents-in-suit . . . divid[ing] the three patents-in-suit by 53 (50 [of defendant's] patents plus the three patents-in-suit)". No. 2:15-cv-01366-JRG-RSP, 2021 WL 662237, at *6 (E.D. Tex. Feb. 20, 2021). And in *Metaswitch Networks Ltd. v. Genband US LLC*, the expert employed a top-down approach in which he determined the proportion of the asserted patent to total SEPs by counting the number of *companies* that provided intellectual property disclosures to the standard setting organization—not even the number of patents that were declared. No. 2:14-cv-744-JRG-RSP, 2016 WL 874775, at *3 (E.D. Tex. Mar. 7, 2016). This is not an exercise Ms. Bennis undertook.

Ms. Bennis's opinions are also unlike those that courts have excluded as "distract[ing]." Motion at 3-4 (citing *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564 (Fed. Cir. 1986); *KAIST IP US LLC v. Samsung Elecs. Co., Ltd.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 416 at 2 (E.D. Tex. May 3, 2018); *Simple Air, Inc. v. Google Inc.*, No. 2:11-cv-416-JRG, Dkt. 571 at 5 (E.D. Tex. Jan. 8, 2014)). Defendants are not introducing specific patents that would complicate infringement or invalidity issues in the case by creating "side issues." As discussed above, the number of patents is relevant to how Defendants would have approached the hypothetical negotiation. Indeed, other courts have allowed such evidence. *See, e.g.*, *Wonderland NurseryGoods Co. v. Thorley Indus., LLC*, No. 12-cv-196-NBF, 2014 WL 241751, at *2 (W.D. Pa. Jan. 22, 2014) (finding the defendants' patents admissible and relevant to *Georgia-Pacific* factor 13); *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2015 WL 1518099, at *11 (E.D. Va. Mar. 31, 2015) (denying motion *in limine* to exclude evidence of the defendants' patents, and noting that "any relevance to the development process and damages defense will be determined based on the [d]efendants' factual context and proffered purpose of the evidence at trial").

5

Finally, Plaintiff contends that the opinions are "all the more problematic" because Ms. Bennis recognizes that a number of patents are assigned to Defendants. Motion at 4. Not so. Courts have repeatedly recognized that "a blanket exclusion of such evidence is unwarranted." *Siemens Mobility, Inc. v. Westinghouse Air Brake Techs. Corp.*, No. 16-284-LPS, 2019 U.S. Dist. LEXIS 27282, at \*3 (D. Del. Jan. 2, 2019) (denying motion *in limine* to exclude a defendant's patents because "there may well be proper purposes for introducing [such] evidence"); *see also Immersion Corp. v. Samsung Elecs. Am., Inc.*, No. 2:17-cv-00572-JRG, Dkt. 188 at 7-8 (E.D. Tex. May 3, 2019) (denying motion *in limine* to preclude defendants from presenting evidence relating to defendants' own patents, even those that related to the accused technology); *Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*, No. 1:16-cv-01904-RM-MJW, Dkt. 29 at 4 (D. Colo. Apr. 3, 2017) (denying without prejudice plaintiff's motion *in limine* to preclude "any and all reference to [d]efendant's patents" based on defendant's representation that "its patents are relevant on the issues of willfulness and reasonable royalty determinations as well as for providing background for its products").

The *Barkan* and *Cameco* cases are inapposite, as both involved whether the defendant's patent ownership was *a relevant defense to patent infringement*. *Barkan Wireless IP Holdings L.P. v. T-Mobile US, Inc.*, No. 2:21-cv-34-JRG-RSP, Dkt. 227 at 8 (E.D. Tex. Dec. 16, 2021); *Cameco Indus., Inc. v. La. Cane Mfg., Inc.*, No. 92-3158, 1995 WL 468234, at \*6 (E.D. La. July 27, 1995). There is no similar issue here.

**B. The Court Should Not Strike Ms. Bennis's Opinions Regarding IPR Proceedings**

Plaintiff also requests that the Court strike portions of Ms. Bennis's report that rely on IPR proceedings. Motion at 5. Because this Court has a standing motion *in limine* prohibiting parties from introducing "evidence, testimony, or argument concerning the Patent Trial and Appeal Board

6

[and] inter partes review" in front of a jury, Plaintiff broadly argues that all of Ms. Bennis's opinions related to the same should be stricken. *Id.* But this argument is plainly incorrect and misinterprets the Court's standing order.

The Court's standing order on motions *in limine* begins that "the Parties, their witnesses, and counsel shall not raise, discuss, or argue the following *before the venire panel or the jury without prior leave of the Court . . . ."* E.D. Tex. Standing Order on MILs at 1 (emphasis added). Indeed, the full context of MIL No. 6 precludes discussion of *inter partes* review proceedings *in front of the jury*, not in an expert witness's report discussing, for example, the background and procedural history of a patent used to inform opinions on damages. Here, Ms. Bennis relies on Ms. Dwyer's opinions that the dependent claims of invalid independent claims do not provide any benefit, and that the purportedly inventive aspects actually *decrease* network performance. Ex. A (Bennis Rebuttal Report), ¶¶ 57, 332.

Regardless, to the extent Plaintiff is concerned with Defendants' experts making explicit references to terms such as "IPR" or "PTAB" in front of a jury, Ms. Bennis may permissibly use alternative terminology, a practice this Court has frequently permitted. *See, e.g.*, *Smart Path Connections, LLC. v. Nokia of Am. Corp.*, No. 2:22-cv-0296-JRG-RSP, 2024 U.S. Dist. LEXIS 44219, at *2 (E.D. Tex. Mar. 13, 2024) (declining to strike portions of expert reports discussing IPRs because any issues "will be addressed through *in limine* rulings"); *Nanoco Techs. Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:20-cv-00038-JRG, Dkt. No. 274 at 9 (E.D. Tex. Sept 21, 2022) (permitting impeachment with statements made during IPR so long as "such impeachment shall not refer to, show, or mention" the IPR proceeding or the PTAB, "but may be referred to as a statement to the Patent Office"); *see also IPCom GMBH & Co. KG v. AT&T Inc. et al.*, No. 2:20-cv-00322-JRG, Dkt. No. 307 at 7 (E.D. Tex. Mar. 15, 2022).

███████████████████████████████████

## III.      CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Strike Portions of

Ms. Melissa Bennis's Expert Report.


Dated: November 12, 2024                    Respectfully submitted,

                                            */s/ Michael C. Deane*
                                            John D. Haynes (GA Bar No. 340599)
                                            Wesley C. Achey (GA Bar No. 141284)
                                            Michael C. Deane (GA Bar No. 498195)
                                            Kyle A. Ceuninck (GA Bar No. 915189)
                                            **ALSTON & BIRD LLP**
                                            1201 West Peachtree Street
                                            Atlanta, GA 30309-3424
                                            Telephone: (404) 881-7000
                                            Facsimile: (404) 881-7777
                                            John.Haynes@alston.com
                                            Wes.Achey@alston.com
                                            Michael.Deane@alston.com
                                            Kyle.Ceuninck@alston.com

                                            Mary I. Riolo (NC Bar No. 59644)
                                            **ALSTON & BIRD LLP**
                                            Vantage South End
                                            1120 S. Tryon Street
                                            Suite 300
                                            Charlotte, NC 28203
                                            Telephone: (704) 444-1000
                                            Facsimile: (704) 444-1111
                                            Mary.Riolo@alston.com

                                            Thomas W. Davison (FL Bar No. 55687)
                                            **ALSTON & BIRD LLP**
                                            950 F St NW
                                            Washington, DC 20004
                                            Phone: (202) 239-3300
                                            Fax: 202.239.3333
                                            Tom.Davison@alston.com

                                            *Attorneys for Defendant T-Mobile USA,*
                                            *Inc. and Intervenor-Defendants Ericsson*
                                            *Inc. and Nokia of America Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on November 12, 2024, on all counsel who have consented to electronic service.

*/s/ Michael C. Deane*
Michael C. Deane

9

10