## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., | |
| Plaintiff, | Case No. 2:23-cv-00158 |
| v. | JURY TRIAL DEMANDED |
| T-MOBILE USA, INC., | |
| Defendant, | |
| ERICSSON INC., | |
| Intervenor, | |
| NOKIA OF AMERICA CORPORATION, | |
| Intervenor. | |

## DEFENDANT'S AND INTERVENORS' SUR-REPLY TO PLAINTIFF'S
## MOTION TO STRIKE PORTIONS OF MS. JOHANNA DWYER'S EXPERT REPORTS

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 1

     A.     Plaintiff's Mischaracterization of Ms. Dwyer's Opinions on the Number of Standard Essential Patents Is Unfounded. ................................................. 1

     B.     Ms. Dwyer's Opinions on Keyword Searches Are Reliable and Relevant............. 3

     C.     The Court Should Not Strike Ms. Dwyer's Opinions Regarding IPR Proceedings. ........................................................................................ 5

     D.     Ms. Dwyer's Opinions About Prosecution History Estoppel Are Proper. ............. 5

III.   CONCLUSION................................................................................................... 5

████████████████████████████████

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| Asserted Patents | U.S. Patent Nos. 7,099,383, 6,947,477, and 7,230,931, collectively |
| T-Mobile | T-Mobile USA, Inc. |
| Ericsson | Ericsson Inc. |
| Nokia | Nokia of America Corporation |
| Defendants | T-Mobile, Nokia, and Ericsson, collectively |
| Plaintiff | General Access Solutions, Ltd. |
| Motion | Plaintiff's Motion to Strike Portions of Ms. Johanna Dwyer's Expert Reports, Dkt. 94 |
| IPR | *Inter Partes* Review |
| Response | Defendant's and Intervenors' Response to Plaintiff's Motion to Strike Portions of Ms. Johanna Dwyer's Expert Reports, Dkt. 110 |
| Reply | Plaintiff's Reply in Support of Its Motion to Strike Portions of Ms. Johanna Dwyer's Expert Reports, Dkt. 119 |

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ...................................................................................................4

*Estech Sys. IP, LLC v. Mitel Networks, Inc.*,
    No. 2:21-cv-473, 2023 WL 4588813 (E.D. Tex. July 18, 2023) ................................4

*General Access Solutions, Ltd. v. Cellco Partnership d/b/a Verizon Wireless et al.*,
    No. 2:22-cv-00394-JRG (E.D. Tex. Sept. 6, 2024) ...................................................3

*Wis. Alumni Rsch. Found. v. Apple, Inc.*,
    No. 14-cv-62-WMC, 2015 WL 13547000 (W.D. Wis. Sept. 30, 2015)......................2

████████████████████████████████

## I. INTRODUCTION

Plaintiff's Reply merely reiterates the same arguments presented in its Motion, offering no legal or factual support to justify exclusion of Ms. Dwyer's opinions. As Defendants explained in their Response, Plaintiff's request is premised on a distorted interpretation of Ms. Dwyer's opinions. Ms. Dwyer does not perform a royalty stack calculation; she simply analyzes the patented technology and landscape to contextualize Defendants' position in the hypothetical negotiation and the purported benefits of the Asserted Patents. The keyword searches are reliable and provide yet another datapoint to support that analysis. And Ms. Dwyer's opinions related to IPR proceedings and prosecution history estoppel comply with the practices of this Court. In short, Plaintiff's repetition of its prior contentions does not address the fundamental flaws in its Motion or overcome the clear basis for the admissibility of Ms. Dwyer's testimony. Defendants respectfully request that the Court deny the Motion.

## II. ARGUMENT

### A. Plaintiff's Mischaracterization of Ms. Dwyer's Opinions on the Number of Standard Essential Patents Is Unfounded.

Ms. Dwyer provides a background of the relevant technology and the corresponding patent landscape. Dkt. 110-2, ¶ 32; 110-3, ¶ 32. As Defendants explained, this information is necessary to understand Defendants' position and mindset in the hypothetical negotiation, in addition to the purported benefits of the Asserted Patents. Dkt. 110, 2. Ms. Dwyer does not attempt to calculate a royalty rate based on the number of standard essential patents, or the royalty rates associated with any of those patents, because that is not the point of her analysis. Since courts have repeatedly allowed the type of analysis performed by Ms. Dwyer, however, Plaintiff is left to recast it as a deficient royalty stack calculation. That effort should be rejected.

██████████████████████████████████

Unlike *Network-1 Technologies, Inc. v. Alcatel-Lucent USA, Inc.*, Ms. Dwyer's opinions are based on real-world evidence that Defendants would consider the patent landscape in the hypothetical negotiation. No. 6:11-cv- 492-RWS-KNM, 2017 WL 4173467, at *3 (E.D. Tex. Sept. 21, 2017); *see Wis. Alumni Rsch. Found. v. Apple, Inc.*, No. 14-cv-62-WMC, 2015 WL 13547000, at *8 (W.D. Wis. Sept. 30, 2015) (allowing defendant to present evidence that "there are a large number of patents that cover the accused products" because "this information [was] useful for the jury to understand [defendant's] position going into the hypothetical negotiation"). In fact, Ms. Dwyer is one of the leading IP strategists in the world, having extensive experience in providing technical support to licensing programs. *See, e.g.*, Dkt. 110-2, ¶¶ 18-23. Her expert opinion—in light of this experience—is that "it is important to consider the large number of patent families that a base station manufacturer is likely to need to license" and "companies like Nokia and Ericsson will need to consider licensing patents families for the technology incorporated in the Technical Specifications that govern the use of Nokia and Ericsson's equipment, but which are owned by other companies." *Id.*, ¶¶ 49, 116, 139. In turn, Ms. Bennis relies on Ms. Dwyer's opinions and her own discussions with fact witnesses to analyze how the patent landscape would impact Defendants' positioning in the hypothetical negotiation. *See* Dkt. 111, 1-6; Dkt. 95-1, ¶¶ 239-240.

Plaintiff next reiterates its complaint that Ms. Dwyer did not determine any of the patents "are actually standard essential" to tie the patents to Defendants' use of those patents in the accused 4G and 5G base station equipment. Dkt. 119, 2. That is wrong. As Defendants explained (and Plaintiff ignored), Ms. Dwyer's estimation reflects the findings of numerous published studies that *did* take a deep dive into the rates of essentiality of declared patents based on a technical assessment. Dkt. 110, 5. One of those rigorous studies was conducted by Ms. Dwyer herself, and "involved the creation (as primary reviewer) or validation (as peer reviewer) of 200 claim charts

demonstrating essentiality or proving non-essentiality." Dkt. 110-2, ¶¶ 22, 135.[1] Ms. Dwyer's opinion regarding the large number of essential patents is just that, an opinion that these patents are essential to the practice of 5G technologies by the accused products.

Ms. Dwyer does not offer a royalty stacking opinion "in disguise." Dkt. 119, 2. Rather, she assesses the applicable patent landscape, concludes there are thousands of standard essential patents relevant to the products accused of infringement in this case (using reliable data and methodology), and finds that, in her expert experience, this data point would be relevant to Defendants in the hypothetical negotiation. Dkt. 110-2, ¶¶ 32, 48-49, 115-116, 138-139. Plaintiff's challenge is without merit.

**B.  Ms. Dwyer's Opinions on Keyword Searches Are Reliable and Relevant.**

Plaintiff again cherry picks pieces of Ms. Dwyer's opinions to paint a false picture of unreliability. Dkt. 110, 3-4. This is no more apparent than in its reference to the '383 Patent search listed in Figure 12. *See id.*, 3. In actuality, Ms. Dwyer ran *two* queries for that patent, where the second search narrowed the findings to address the presence of a controller:

A.  The U.S. '383 Patent

| Figure 12 | ((( ( country_search:( "US" ) )<br>AND ( granted:( TRUE ) )<br>AND ( title_abstract_claims_english_search:(<br>( wireless )<br>AND ( communication )<br>AND ( demodulat* )<br>NOT ( medic* OR insur* OR audio* OR food OR temperature )<br>) ) ))) |
|---|---|
| Figure 13 | ( ( country_search:( "US" ) )<br>AND ( granted:( TRUE ) )<br>AND ( title_abstract_claims_english_search:(<br>( wireless )<br>AND ( communication )<br>AND ( data )<br>AND ( /demodulator[s]?/ OR /modem[s]?/ OR /receiver[s]?/ )<br>AND ( /controller[s]?/ )<br>NOT ( medic* OR insur* OR audio* OR food OR temperature )<br>) ) ) |

---

[1]Plaintiff also ignores that Ms. Dwyer relied on a recent report from the USPTO that was previously admitted in *General Access Solutions, Ltd. v. Cellco Partnership d/b/a Verizon Wireless et al.*, No. 2:22-cv-00394-JRG (E.D. Tex. Sept. 6, 2024), Dkt. 289-1, 1027:14-1028:2.

███████████████████

Dkt. 110-2, ¶ 380 (annotated). Ms. Dwyer confirms that the refined search still found a large population of patents (over 4,100 U.S. granted patents, with 700 of those having a priority date earlier than the '383 Patent). *Id.*, ¶ 110-111. And notably, the examples Plaintiff identified were not present in this second search. That there may be a handful of irrelevant results in the first search—most of which were categorically controlled for—amongst a group of several thousand is simply immaterial to Ms. Dwyer's opinions. To the extent Plaintiff still believes the searches are overbroad, it is welcome to explore those criticisms on cross examination. *Estech Sys. IP, LLC v. Mitel Networks, Inc.*, No. 2:21-cv-473, 2023 WL 4588813, at *3 (E.D. Tex. July 18, 2023) ("The inquiry on the correctness of the methodology and the results produced in [the expert's] report can be properly explored through vigorous cross-examination and presentation of contrary evidence.") (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

As Defendants explained, the keyword searches are relevant to the issues in this case because they "provide yet another datapoint demonstrating just how many patents exist in the relevant technology fields, a landscape that the Defendants would take into account during the hypothetical negotiation." Dkt. 110, 8. Plaintiff tries to discount that relevance, simultaneously implying that the number of patents is not relevant to the benefits whatsoever but also that Ms. Dwyer should have reviewed the technical substance of the results. Dkt. 119, 4. If "[t]he benefits of the Asserted Patents are determined by looking at the Asserted Patents," why do Plaintiff's experts rely on the success and profitability of 4G and 5G to define those purported benefits? Plaintiff does not and cannot reconcile its own sweeping characterizations of the technical relevance of the patents with its present position that the patent landscape is irrelevant. Nor does Plaintiff even attempt to distinguish the numerous cases where courts have allowed similar evidence. *See* Dkt. 110, 8-9.

**C.    The Court Should Not Strike Ms. Dwyer's Opinions Regarding IPR Proceedings.**

Plaintiff changes course, tacitly admitting its interpretation of the Court's standing order was wrong. Now, it asks that Ms. Dwyer be prohibited from discussing the IPRs before the jury. Dkt. 119, 4. In support of this misplaced request, Plaintiff cites to the motion *in limine* ruling in *Verizon* concerning the IPRs and claims 1 and 19 of the '931 Patent. *Id.*, 5. But this Court permitted discussion of those claims as being "within the public domain." Dkt. 118-1, 84:19-21, 85:15-19. Plaintiff's wholesale attempt to exclude discussion of IPRs is inconsistent with the very ruling on which it relies. *See also* Dkt. 110, 10-11 (collecting cases allowing alternative terminology). While Ms. Dwyer will comply with any forthcoming *in limine* rulings on this issue, the IPRs properly informed her analysis, and there is no cause to strike or limit her testimony at this time.

**D.    Ms. Dwyer's Opinions About Prosecution History Estoppel Are Proper.**

Plaintiff reiterates its position that "[p]rosecution history estoppel is a legal issue reserved exclusively for the Court." Dkt. 119, 5. Again, while true, Plaintiff has provided *no* support for *striking* expert testimony. *See* Dkt. 110, 11-12. Plaintiff's request is improper, and should be rejected.

**III.    CONCLUSION**

Plaintiff's Motion to Strike Portions of Ms. Johanna Dwyer's Expert Reports should be denied.

Dated: November 26, 2024                    Respectfully submitted,

*/s/ Michael C. Deane*
John D. Haynes (GA Bar No. 340599)
Wesley C. Achey (GA Bar No. 141284)
Michael C. Deane (GA Bar No. 498195)
Kyle A. Ceuninck (GA Bar No. 915189)
**ALSTON & BIRD LLP**

1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
John.Haynes@alston.com
Wes.Achey@alston.com
Michael.Deane@alston.com
Kyle.Ceuninck@alston.com

Mary I. Riolo (NC Bar No. 59644)
**ALSTON & BIRD LLP**
Vantage South End
1120 S. Tryon Street
Suite 300
Charlotte, NC 28203
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Mary.Riolo@alston.com

Thomas W. Davison (FL Bar No. 55687)
**ALSTON & BIRD LLP**
950 F St NW
Washington, DC 20004
Phone: (202) 239-3300
Fax: 202.239.3333
Tom.Davison@alston.com

*Attorneys for Defendant T-Mobile USA,
Inc. and Intervenors Ericsson Inc. and
Nokia of America Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on November 26, 2024, on all counsel who have consented to electronic service.

/s/ Michael C. Deane
Michael C. Deane

