**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., | |
| Plaintiff, | Case No. 2:23-cv-00158 |
| v. | JURY TRIAL DEMANDED |
| T-MOBILE USA, INC., | |
| Defendant, | |
| ERICSSON INC., | |
| Intervenor, | |
| NOKIA OF AMERICA CORPORATION, | |
| Intervenor. | |

**DEFENDANT'S AND INTERVENORS' SUR-REPLY TO PLAINTIFF'S
MOTION TO STRIKE PORTIONS OF MS. MELISSA BENNIS'S EXPERT REPORT**

███████████████████████

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT............................................................................................................ 1

    A. Ms. Bennis May Rely on Ms. Dwyer's Patent Counting Opinions. ............................ 1

    B. The Court Should Not Strike Ms. Bennis's Opinions Regarding IPR
       Proceedings. ..................................................................................................... 4

III.    CONCLUSION........................................................................................................ 5

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| Asserted Patents | U.S. Patent Nos. 7,099,383, 6,947,477, and 7,230,931, collectively |
| T-Mobile | T-Mobile USA, Inc. |
| Ericsson | Ericsson Inc. |
| Nokia | Nokia of America Corporation |
| Defendants | T-Mobile, Nokia, and Ericsson, collectively |
| Plaintiff | General Access Solutions, Ltd. |
| Motion | Plaintiff's Motion to Strike Portions of Ms. Melissa Bennis's Expert Report, Dkt. 95 |
| Response | Defendant's and Intervenors' Response to Plaintiff's Motion to Strike Portions of Ms. Melissa Bennis's Expert Reports, Dkt. 111 |
| Reply | Plaintiff's Reply in Support of Its Motion to Strike Portions of Ms. Melissa Bennis's Expert Reports, Dkt. 120 |

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Wis. Alumni Rsch. Found. v. Apple, Inc.*,
   No. 14-cv-062-WMC, 2015 WL 13547000 (W.D. Wis. Sept. 30, 2015)..................................3

## I.    INTRODUCTION

Plaintiff's request to strike Ms. Bennis's opinions rests on its unfounded criticisms of Ms. Dwyer's standard essential patent and keyword searches. Because those criticisms lack merit, Plaintiff's challenge to Ms. Bennis's related opinions fails too. Ms. Bennis correctly applies the *Georgia-Pacific* framework to assess how the parties would have acted in the hypothetical negotiation and to evaluate the benefits of the Asserted Patents. Additionally, Ms. Bennis's opinions concerning IPRs are both necessary and consistent with this Court's established practices. Plaintiff's Motion should be denied in its entirety.

## II.    ARGUMENT

### A.    Ms. Bennis May Rely on Ms. Dwyer's Patent Counting Opinions.

Plaintiff discounts the relevance of Ms. Bennis's opinions to the *Georgia-Pacific* factors because certain of the opinions it moves to strike are in the "Background Information" section or included as direct criticisms to Mr. Kennedy's approach to the hypothetical negotiation. Dkt. 120, 1 (citing Dkt. 95, Ex. 1, ¶¶ 46-47, 54-55, 63-65, 72-73, 290, 292-293). In the background section, Ms. Bennis notes that she "present[s] information on the technical aspects of the patents-in-suit, the accused products, and the technical nature of other issues pertinent to damages…," and she then refers to that information throughout her *Georgia-Pacific* analysis as applicable. *See, e.g.*, Dkt. 111-2, ¶¶ 211, 239-240. That Plaintiff takes issue with the *organization* of Ms. Bennis's report demonstrates the fundamental weaknesses in its argument.

Regardless, Ms. Bennis sufficiently explains how the patent counting affects the hypothetical negotiation. Though Defendants' Response walked through Ms. Bennis's application of Ms. Dwyer's analysis to factors 10, 11, and 13—including how that analysis impacted her ultimate conclusions on each factor—Plaintiff blatantly ignores that commentary and instead baselessly remarks that Ms. Bennis "offers no analysis" for the *Georgia-Pacific* factors. *See* Dkt.

1

111, 1-3; Dkt. 120, 1-3. As an initial matter, Plaintiff does not even attempt to respond on factors

10 and 11, where Defendants explained:

> In particular, *Georgia-Pacific* factor 10 encompasses the benefits to those who have used the invention. Ms. Bennis recognizes that Ms. Dwyer disagrees with Dr. Madisetti (Plaintiff's technical expert) on the benefits of the asserted patents, as he attributes the entire value of certain features to the asserted claims even though there are many patents in the same technology space. Ex. A (Bennis Rebuttal Report), ¶¶ 215, 221, 227. This factors into her conclusion that "a license to patented technology that does not provide significant benefits and does not represent a substantial improvement over the prior art would command a lower royalty than a license for one that does…" *Id.*, ¶ 232. Relatedly, *Georgia-Pacific* factor 11 relates to the value of the invention. Here, Ms. Bennis discusses that Mr. Kennedy (Plaintiff's damages expert) attributes the benefits of 4G and 5G to apply upward pressure on the hypothetical negotiation. *Id.*, ¶ 209; *see also id.*, ¶ 210 ("Mr. Kennedy's discussions . . . rely largely on industry-wide network statistics, industry-wide infrastructure and spectrum investments, and 4G and 5G statistics in general, without any specific analysis of the impact—if any—from the alleged use of the patents-in-suit."). Ms. Bennis responds to that position, including by relying on Ms. Dwyer's analysis that demonstrated there are numerous other patents related to the relevant technologies. *Id.*, ¶ 211.

Instead, Plaintiff focuses only on factor 13 (i.e., the value of the patented technology as

distinguished from other attributes of the product or company that sells it). Dkt. 120, 1-3. Here,

Plaintiff claims that Ms. Bennis does not analyze or offer independent conclusions on how the

standard essential patent numbers or keyword searches would affect the hypothetical negotiation.

*Id.*, 1-2. But this requires a very selective reading of Ms. Bennis's report. That information is

directly relevant to Ms. Bennis's opinion that "[t]he benefits the patents-in-suit convey should be

balanced with the fact that the accused base stations are understood to practice numerous patented

technologies, many of which are essential to the various standards." Dkt. 111-2, ¶ 239. She goes

on to explain that "[t]he hypothetical negotiators would consider Ericsson's and Nokia's

contributions to the accused products, which they manufacture," that "the consideration paid by

T-Mobile for a license to the patents-in-suit would need to be considered relative to any role and

royalty burden of the tens of thousands of other patents that have been declared to the 4G and 5G

standards and other technologies embodied in the products that have not been declared to the 4G or 5G standards," and that, based on Ms. Dwyer's keyword searches, the Asserted Patents "are just three patents in a thicket of patents related to the same technologies." *Id.*, ¶ 239-240. From this, Ms. Bennis concludes that "the lower the value that can be credited to the invention, the lower the royalty." *Id.*, ¶ 242; *see also id.*, ¶ 346.

Plaintiff's critique boils down to the fact that neither Ms. Dwyer nor Ms. Bennis calculated a royalty stack by adding together all the individual royalty payments due to different patent holders for each of the accused products. That simply is not the methodology Ms. Bennis used to calculate a reasonable royalty, but the patent landscape is relevant to understanding Defendants' position and mindset in the hypothetical negotiation and contextualizes the relative importance of the patented technology to the accused products.

Plaintiff's attempt to distinguish *WARF* falls flat. Dkt. 120, 3. Just as in *WARF*, Ms. Bennis's opinions (and Ms. Dwyer's) are based on real-world evidence that Defendants would consider the patent landscape in the hypothetical negotiation. *Wis. Alumni Rsch. Found. v. Apple, Inc.*, No. 14-cv-062-WMC, 2015 WL 13547000, at *7 (W.D. Wis. Sept. 30, 2015) (allowing defendant to present evidence that "there are a large number of patents that cover the accused products" because "this information [was] useful for the jury to understand [defendant's] position going into the hypothetical negotiation"). As also discussed in Defendants' Sur-Reply to Plaintiff's Motion to Strike Portions of Ms. Dwyer's Expert Reports, filed concurrently herewith, Ms. Dwyer is a leading IP strategist with extensive experience in providing technical support to licensing programs. Dkt. 94, Ex. 1, ¶¶ 18-23. Based on that experience, her expert opinion is that "it is important to consider the large number of patent families that a base station manufacturer is likely to need to license" and that Defendants here would do so. *Id.*, ¶¶ 49, 116, 139. Ms. Bennis relies

3

on Ms. Dwyer's opinion, along with her own discussions with fact witnesses, to analyze how the patent landscape would impact Defendants' positioning in the hypothetical negotiation. Dkt. 111, 1-6; Dkt. 111-2, ¶¶ 239-240.

Finally, Plaintiff argues that, even if Ms. Dwyer's and Ms. Bennis's opinions "have some probative value, that is outweighed by their potential prejudice." Dkt. 120, 3. Not so. The opinions demonstrate that the Asserted Patents are three amongst a crowded patent landscape. This context is necessary to respond to Plaintiff's experts, who broadly attribute the success of cellular data services to the Asserted Patents. *See, e.g.*, Dkt. 111-3, ¶¶ 388-461 (entire section of Plaintiff's damages expert report dedicated to the history, success, and profitability of 4G and 5G, including the general benefits to consumers and carriers); *id.*, ¶ 426 (claiming that "5G provides a significantly enhanced consumer experience through faster speeds and reduced latency"); *see also* Dkt. 111-2, ¶¶ 54-55, 63-65, 72-73 (detailing Plaintiff's technical expert's overstatement of benefits of the Asserted Patents). Excluding Ms. Dwyer's and Ms. Bennis's opinions—while simultaneously allowing Plaintiffs to paint the picture that the Asserted Patents are to credit for the advances of 5G—would be highly prejudicial *to Defendants*.

## B.    The Court Should Not Strike Ms. Bennis's Opinions Regarding IPR Proceedings.

Plaintiff changes course, tacitly admitting its interpretation of the Court's standing order was wrong. Now, it asks that Ms. Bennis be prohibited from discussing the IPRs before the jury. Dkt. 120, 4. In support of this misplaced request, Plaintiff cites to the motion *in limine* ruling in *Verizon* concerning the IPRs and claims 1 and 19 of the '931 Patent. *Id.* But this Court permitted discussion of those claims as being "within the public domain." Dkt. 118-1, 84:19-21, 85:15-19. Plaintiff's wholesale attempt to exclude discussion of IPRs is inconsistent with the very ruling on which it relies. *See also* Dkt. 110, 10-11 (collecting cases allowing alternative terminology). While

4

Ms. Bennis will comply with any forthcoming *in limine* rulings on this issue, the IPRs properly informed her analysis, and there is no cause to strike or limit her testimony at this time.

## III.  CONCLUSION

The Court should deny Plaintiff's Motion to Strike Portions of Ms. Melissa Bennis's Expert Report.

Dated: November 26, 2024                          Respectfully submitted,

*/s/ Michael C. Deane*

John D. Haynes (GA Bar No. 340599)
Wesley C. Achey (GA Bar No. 141284)
Michael C. Deane (GA Bar No. 498195)
Kyle A. Ceuninck (GA Bar No. 915189)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
John.Haynes@alston.com
Wes.Achey@alston.com
Michael.Deane@alston.com
Kyle.Ceuninck@alston.com

Mary I. Riolo (NC Bar No. 59644)
**ALSTON & BIRD LLP**
Vantage South End
1120 S. Tryon Street
Suite 300
Charlotte, NC 28203
Telephone: (704) 444-1000
Facsimile: (704) 444-1111
Mary.Riolo@alston.com

Thomas W. Davison (FL Bar No. 55687)
**ALSTON & BIRD LLP**
950 F St NW
Washington, DC 20004
Phone: (202) 239-3300
Fax: 202.239.3333

5

Tom.Davison@alston.com

*Attorneys for Defendant T-Mobile USA, Inc. and Intervenors Ericsson Inc. and Nokia of America Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served electronically on November 26, 2024, on all counsel who have consented to electronic service.

/s/ Michael C. Deane
Michael C. Deane

7

