**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., | |
| Plaintiff, | C.A. No. 2:23-158-JRG |
| v. | |
| T-MOBILE USA, INC., | JURY TRIAL DEMANDED |
| Defendant, | |
| ERICSSON INC., | ███████████████ |
| Intervenor-Defendant, | |
| NOKIA OF AMERICA CORP., | |
| Intervenor-Defendant. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF
MS. MELISSA BENNIS'S EXPERT REPORT**

**TABLE OF CONTENTS**

I.     Ms. Bennis Should Not Be Permitted To Rely on Ms. Dwyer's Patent Counting.....................1

II.    Ms. Bennis Should Not Be Permitted to Testify About IPRs Before the Jury...........................4

CONCLUSION.......................................................................................................................................4

## TABLE OF AUTHORITIES

**Cases**

*Eidos Display, LLC v. AU Optronics Corp.*,
 No. 6:11-cv-201-JRG-JDL, 2017 WL 11630428 (E.D. Tex. May 12, 2017) ................................4

*KAIST IP US LLC v. Samsung Electronics Co., Ltd.*,
 No. 2:16-cv-1314-JRG-RSP, Dkt. 416 (E.D. Tex. May 3, 2018) ....................................................4

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
 No. 6:11-cv-492-RWS-KNM, 2017 WL 4173467 (E.D. Tex. Sept. 21, 2017) ............................3

*Seagen Inc. v. Daiichi Sanko Co.*,
 No. 2:20-cv-00337-JRG, 2022 WL 2048206 (E.D. Tex. March 15, 2022) ...................................4

*Simple Air, Inc. v. Google Inc.*,
 No. 2:11-cv-416-JRG, Dkt. 571 (E.D. Tex. Jan. 8, 2014) ..............................................................2

*Wisconsin Alumni Rsch. Found. v. Apple, Inc.*,
 No. 14-cv-062-WMC, 2015 WL 13547000 (W.D. Wis. Sept. 30, 2015) ......................................3

Ms. Bennis's opinions relying on Ms. Dwyer's patent-counting opinions should be excluded for the same reasons that render Ms. Dwyer's analysis improper. Ms. Dwyer's opinion on the number of standard-essential patents is a royalty-stacking opinion in disguise, but without any of the necessary support for royalty-stacking. And Ms. Dwyer's keyword searches are vastly overbroad, capturing irrelevant patents about toy dump trucks, wrist watches, biological sampling plates, and more. *See* Dkt. 94. These opinions are meant to mislead the jury into undervaluing the Asserted Patents merely based on the *number* of other patents that Ms. Dwyer located. Ms. Bennis's recitation of Ms. Dwyer's opinions within the *Georgia-Pacific* framework does not sanitize these irrelevant, unreliable, and misleading patent-counting exercises.

Ms. Bennis's opinions about the IPRs should also be precluded. The details of the IPRs are not necessary for Ms. Bennis to testify about her opinions—again taken from Ms. Dwyer—of the value of Claims 28 and 29 of the '931 Patent.

## I.    Ms. Bennis Should Not Be Permitted To Rely on Ms. Dwyer's Patent Counting

Much of Defendants' response tries to recast Ms. Bennis's opinions relying on Ms. Dwyer's counting exercises as being relevant to *Georgia-Pacific* factors 10, 11, and 13. *See* Dkt. 111 at 1-3. Most of the opinions General Access moves to strike are outside her *Georgia-Pacific* analysis altogether. *See* Dkt. 95, Ex. 1 at ¶¶ 46-47, 54-55, 63-65, 72-73, 290, 292-293. And even the opinions that fall within the *Georgia-Pacific* analysis do nothing more than recite Ms. Dwyer's opinions without explaining how the patent counting affects the hypothetical negotiation. *Id.* at ¶¶ 211, 239-240.

For example, in her factor 13 analysis, Ms. Bennis starts by saying that "[t]he hypothetical negotiators would recognize the need to determine the importance of the patented technology to the licensee and its products." *Id.* at ¶ 235. After stating that it would be necessary to apportion the value of the patented technology "from all other value drivers," *id.* at ¶ 236-238, Ms. Bennis turns to Ms. Dwyer's standard essential patent search. She says:

> While I understand [General Access] has not declared that the patents-in-suit are essential to 4G or 5G, the consideration paid by T-Mobile for a license to the patents-in-suit would need to be considered relative to any role and royalty burden of the tens of thousands of other patents that have been declared to the 4G and 5G standards, and other technologies embodied in the products that have not been declared to the 4G or 5G standards.

*Id.* at ¶ 239. Other than this statement, Ms. Bennis offers no analysis. What is the role of the "tens of thousands of other patents that have been declared to the 4G and 5G standards?" What is the royalty burden of those patents? Is there even one? What are the "other technologies embodied in the products that have not been declared to the 4G or 5G standards"? Is there a royalty burden of those? Neither Ms. Bennis nor Ms. Dwyer say. While Ms. Bennis appears to imply that the royalty for the Asserted Patents would be lower than it would be in the absence of these patents, she does not even say that clearly.

Ms. Bennis's use of Ms. Dwyer's keyword searches is similar. In the very next paragraph of her report, Ms. Bennis summarizes Ms. Dwyer's searches. *Id.* at ¶ 240. Ms. Bennis does not offer any independent conclusion of how the patents located by Ms. Dwyer's keyword searches would affect the hypothetical negotiation. This simply appears to be a vehicle for putting in front of the jury the fact that the Defendants have patents that are within Ms. Dwyer's search parameters. *See, e.g., id.* ("Ms. Dwyer also performed additional analysis to determine how many of these patents were currently assigned to the USPTO 6 (Ericsson, Nokia, Qualcomm, Huawei, Samsung, and LG). This analysis showed that 1,751 patents are assigned to one of these six companies with Ericsson having 317 and Nokia having 40."). But Ms. Dwyer did not analyze those patents to confirm they actually cover any aspect of the accused base stations, let alone technology related to that of the Asserted Patents. Both experts simply recited naked facts. And even had Ms. Dwyer or Ms. Bennis attempted to do so, it would still be improper to parade these patents before the jury. *See, e.g., Simple Air, Inc. v. Google Inc.,* No. 2:11-cv-416-JRG, Dkt. 571 at 5 (E.D. Tex. Jan. 8, 2014) (granting MIL to exclude evidence or

argument that the "accused instrumentalities practice the claims of any of [Defendant's] own patents or patents of third parties")

Additionally, neither patent-counting exercise is used to quantitatively move the needle on Ms. Bennis's hypothetical negotiation. Indeed, Ms. Bennis hardly explains how the patent numbers would qualitatively move the needle.

Contrary to Defendants' suggestion, this case is nothing like *WARF*. There, the Court declined to exclude expert testimony about royalty stacking because the defendant specifically tied royalty stacking opinions to the facts of the case. Specifically, the defendant "direct[ed] the court to deposition testimony" describing the "practice when negotiating licenses of considering the number of patents in the relevant technical space, and specifically explaining [t]he practice of not paying a 'disproportionately high' royalty for any one patent in a very crowded field, because it 'would make it prohibitively expensive to create'" the accused device. *Wisconsin Alumni Rsch. Found. v. Apple, Inc.*, No. 14-cv-062-WMC, 2015 WL 13547000, at *7 (W.D. Wis. Sept. 30, 2015). Even setting aside the flawed nature of Ms. Dwyer's searches, Ms. Bennis does not cite any such testimony that would connect the number of patents to the real-world effect that would be expected. These patent-counting opinions should be excluded because Defendants lack that real-world evidence. *See Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4173467, at *3 (E.D. Tex. Sept. 21, 2017) (excluding opinions where Defendant offered "no evidence that it has received requests for multiple royalties, or that it considers royalty stacking in real-world licensing negotiations").

Finally, even assuming Ms. Dwyer's patent-counting opinions, and Ms. Bennis's paragraphs repeating those opinions, have some probative value, that is outweighed by their potential prejudice. These opinions incorrectly imply that the pure number of other patents—without any care or analysis about the substance of the inventions of those patents or scope of their claims—lowers the value of the Asserted Patents. And these opinions are unreliable, as there is little analysis linking the fact that

other patents exist to the ultimate conclusions about the value of the Asserted Patents. They would merely create a sideshow that would take significant effort to untangle. *See, e.g.*, *KAIST IP US LLC v. Samsung Electronics Co., Ltd.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 416 at 2 (E.D. Tex. May 3, 2018) (excluding evidence or argument "[t]hat the Accused Instrumentalities practice other patents").

## II.    Ms. Bennis Should Not Be Permitted to Testify About IPRs Before the Jury

Defendants' complaint that a motion to strike is not the right procedural vehicle to preclude expert opinions about IPRs is incorrect. "[T]here is ample support that Rule 702 in many ways incorporates Rule 403." *Eidos Display, LLC v. AU Optronics Corp.*, No. 6:11-cv-201-JRG-JDL, 2017 WL 11630428, at *1 (E.D. Tex. May 12, 2017). The same considerations that animate the Court's standing MIL apply to T-Mobile's expert opinions—it would be highly prejudicial, confusing, and misleading to elicit expert opinions about IPR proceedings to the jury. Whether an expert should be permitted to present such opinions to a jury is the proper subject for a motion to strike. *See, e.g.*, *Seagen Inc. v. Daiichi Sanko Co.*, No. 2:20-cv-00337-JRG, 2022 WL 2048206 (E.D. Tex. March 15, 2022) (granting motion to strike opinions "related to proceedings before the European Patent Office").

As Defendants seem to recognize, there is no reason why Ms. Bennis needs to discuss the IPRs before the jury at all. Her opinion is that, based on Ms. Dwyer's analysis, the two dependent claim of the '931 Patent that are at issue "do not provide any benefit" and instead "decrease network performance." Dkt. 111 at 7. Ms. Bennis need not invoke the IPR proceedings to make that point. As in *Verizon*, the Court should prohibit "any statement before the jury that [Claims 1 and 19] have been invalidated or canceled," as well as any "mention of the PTAB or the IPR proceeding." Ex. 1, *Verizon* Pretrial Hearing Tr. at 84:13-16.

## CONCLUSION

General Access respectfully requests that the Court grant this motion.

4

Dated: November 19, 2024

Respectfully submitted,

*/s/ Glen E. Summers*

Glen E. Summers (CO Bar No. 30635)
LEAD ATTORNEY
Nosson D. Knobloch (CO Bar No. 42134)
John M. Hughes (CO Bar No.
Giovanni J. Sanchez (CO Bar No. 59696)
Taylor Kelson (CO Bar No. 56910)
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com
nosson.knobloch@bartlitbeck.com
giovanni.sanchez@bartlitbeck.com
taylor.kelson@bartlitbeck.com

Michael J. Valaik (IL Bar No. 6276086)
Luke C. Beasley (IL Bar No. 6334359)
Meg E. Fasulo (IL Bar No. 6320595)
**BARTLIT BECK LLP**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
michael.valaik@bartlitbeck.com
luke.beasley@bartlitbeck.com
meg.fasulo@bartlitbeck.com

Andrea L. Fair (TX Bar No. 24078488)
Charles Everingham IV (TX Bar No. 00787447)
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Telephone: (903) 757-6400
andrea@millerfairhenry.com
ce@millerfairhenry.com

*Attorneys for Plaintiff General Access Solutions, Ltd.*

5

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on November 19, 2024, which will send a notification of such filing to all counsel of record.

/s/ Glen E. Summers
Glen E. Summers

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order in the above-captioned case, this motion contains confidential information. Accordingly, this document is to be filed under seal.

/s/ Glen E. Summers
Glen E. Summers

6