**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC., <br><br> Defendant, <br><br> ERICSSON INC., <br><br> Intervenor-Defendant, <br><br> NOKIA OF AMERICA CORP., <br><br> Intervenor-Defendant. | C.A. No. 2:23-158-JRG <br><br> JURY TRIAL DEMANDED <br><br> ████████████ |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF
MS. JOHANNA DWYER'S EXPERT REPORTS**

**TABLE OF CONTENTS**

I.     Ms. Dwyer's Standard-Essential Patent Opinions Should Be Excluded ....................................1

II.    Ms. Dwyer's Keyword Searches Should Be Excluded..................................................................3

III.   Ms. Dwyer Should Not Be Permitted to Testify About IPRs Before the Jury...........................4

IV.    Prosecution History Estoppel Is Not For the Jury .......................................................................5

CONCLUSION.................................................................................................................................................5

**TABLE OF AUTHORITIES**

**Cases**

*Eidos Display, LLC v. AU Optronics Corp.*,
    No. 6:11-cv-201-JRG-JDL, 2017 WL 11630428 (E.D. Tex. May 12, 2017) ...............................4

*KAIST IP US LLC v. Samsung Electronics Co., Ltd.*,
    No. 2:16-cv-1314-JRG-RSP, Dkt. 416 (E.D. Tex. May 3, 2018) ...................................................3

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
    No. 6:11-cv-492-RWS-KNM, 2017 WL 4173467 (E.D. Tex. Sept. 21, 2017)...........................2

*TQP Dev., LLC v. 1-800-Flowers.com Inc.*,
    No. 2:11-cv-248-JRG-RSP, 2013 WL 12432371 (E.D. Tex. Nov. 8, 2013) ...............................5

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
    No. 2:21-cv-00246-JRG, 2022 WL 19227587 (E.D. Tex. Sept. 1, 2022)....................................5

*Wisconsin Alumni Rsch. Found. v. Apple, Inc.*,
    No. 14-cv-062-WMC, 2015 WL 13547000 (W.D. Wis. Sept. 30, 2015) ....................................2

Ms. Dwyer's patent-counting opinions should be excluded. Her two methods of counting patents—estimating the number of standard-essential patents for 5G base stations and performing keyword searches to find patents related to the technology of the Asserted Patents—are irrelevant, unreliable, and meant to mislead the jury. Ms. Dwyer's opinion on the number of standard-essential patents is a royalty-stacking opinion in disguise, but without any of the necessary support for royalty-stacking. And her keyword searches are no better. Those searches are vastly overbroad, capturing irrelevant patents about toy dump trucks, wrist watches, biological sampling plates, and more. Both of these opinions are meant to mislead the jury into undervaluing the Asserted Patents merely based on the *number* of other patents that Ms. Dwyer located.

Ms. Dwyer's opinions about the IPRs and prosecution history estoppel should also be excluded. Ms. Dwyer's value-related opinions can be made without reference to the IPRs, like they were in *Verizon*. And her opinions about prosecution history estoppel should not be for the jury, as that legal bar to DOE is for the Court to decide.

## I.    Ms. Dwyer's Standard-Essential Patent Opinions Should Be Excluded

Defendants concede that "Ms. Dwyer does not perform a royalty stacking analysis." Dkt. 110 at 2. Yet her opinions plainly invoke royalty-stacking issues: She says that "the large number of patent families that a base station manufacturer is likely to need to license" impacts the value of the Asserted Patents. Dkt. 94, Ex. 1 at ¶ 49. And she says that companies like Defendants would need to license patents that are compliant with the 4G and 5G standards. *Id.* at ¶ 116. In other words, Ms. Dwyer suggests that the Asserted Patents are worth less because there are other standard-essential patents in the area that Defendants would have had to license. That is the very essence of royalty stacking. The fact that Ms. Dwyer has avoided using the words "royalty stacking" (and then avoided undertaking the actual analysis necessary to support a royalty stacking opinion) should not give her freedom to offer these unsupported opinions. *See Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-

1

492-RWS-KNM, 2017 WL 4173467, at *3 (E.D. Tex. Sept. 21, 2017) (excluding opinions where Defendant offered "no evidence that it has received requests for multiple royalties, or that it considers royalty stacking in real-world licensing negotiations").

Ms. Dwyer's opinions are merely theoretical and divorced from real-world evidence. In *WARF*, for example, the defendant "direct[ed] the court to deposition testimony" describing the "practice when negotiating licenses of considering the number of patents in the relevant technical space, and specifically explaining [t]he practice of not paying a 'disproportionately high' royalty for any one patent in a very crowded field, because it 'would make it prohibitively expensive to create'" the accused device. *Wisconsin Alumni Rsch. Found. v. Apple, Inc.*, No. 14-cv-062-WMC, 2015 WL 13547000, at *7 (W.D. Wis. Sept. 30, 2015). Ms. Dwyer does not rely on any such evidence from T-Mobile, Ericsson, or Nokia here. *See* Dkt. 93, Ex. 1 at ¶¶ 115-139 (citing no deposition testimony).

On top of this, Defendants have not tied any of the supposedly standard-essential patents to Defendants' use of those patents. Defendants have a whole page justifying Ms. Dwyer's conclusion that there are somewhere between 2,951 and 8,031 standard-essential patents. *See* Dkt. 110 at 5. But none of that explanation addresses General Access's point. Ms. Dwyer did not determine that any of the patents in that range are actually standard essential. And she did not determine that any of those patents are actually practiced by T-Mobile. All she did was apply a set of filters to narrow the enormous number of patent families declared as standard essential to a smaller, but still large, number of patents that cover 5G base stations. Ms. Dwyer did not review any patents, did not evaluate any claims, and did not make any determinations that any particular patents are, in fact, standard essential and practiced by Defendants. *See* Dkt. 93, Ex. 1 at ¶¶ 115-139 (discussing no patents). And Defendants do not claim that she did. *See* Dkt. 110 at 5.

Ms. Dwyer's opinions on the number of standard-essential patents that may exist for 5G base stations should be excluded. This royalty-stacking opinion in disguise is not supported by actual

2

evidence of royalty stacking or evidence that Defendants would have considered the number of standard-essential patents to be relevant during the hypothetical negotiation. And it will do nothing other than distract. *See, e.g.*, *KAIST IP US LLC v. Samsung Electronics Co., Ltd.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 416 at 2 (E.D. Tex. May 3, 2018) (excluding evidence or argument "[t]hat the Accused Instrumentalities practice other patents").

## II.    Ms. Dwyer's Keyword Searches Should Be Excluded

Defendants insist that Ms. Dwyer ran searches "targeted to the subject matter of the" Asserted Patents. Dkt. 110 at 7. But Ms. Dwyer's search for the '383 Patent shows just how broad these searches are. Dkt. 94, Ex. 1 at ¶ 380. The first two lines do nothing other than limit the search results to granted US patents. Then the search terms are "wireless" and "communication" and "demodulat*." Then, because these terms are so pervasive, some irrelevant categories are excluded.

| Figure 12 | `(((( country_search:( "US" ))`<br>`AND ( granted:( TRUE ))`<br>`AND ( title_abstract_claims_english_search:(`<br>`( wireless )`<br>`AND ( communication )`<br>`AND ( demodulat* )`<br>`NOT ( medic* OR insur* OR audio* OR food OR temperature )`<br>`)))))` |
| --- | --- |

But even with those exclusions, this search returns a number of irrelevant patents. *See, e.g.*, Ex. 1, U.S. Pat. No. 7,187,908 (wristwatch); Ex. 2, U.S. Pat. No. 10,261,102 (biosample plate); Ex. 3, U.S. Pat. No. 10,514,803 (digital stylus); Ex. 4, U.S. Pat. No. 9,393,977 (train viewing system); Ex. 5, U.S. Pat. No. 5,964,640 (toy dump truck). These irrelevant patents do not "exist in the relevant technology fields" and Defendants make no effort to justify why such technologies "would [be] take[n] into account during the hypothetical negotiation." Dkt. 110 at 8. Rather, these false positives simply bloat the number of patents purportedly related to the subject matter of the '383 Patent.

That Ms. Dwyer can hand-select a few "specific examples" is not surprising. Dkt. 110 at 7 n.3. These searches are overly broad, so of course Ms. Dwyer will be able to find patents she likes from

within the results. But that does not indicate in the slightest that Ms. Dwyer's searches are narrowly tailored, because they are not.

Defendants contend that Ms. Dwyer's keyword searches are "directly responsive" to the benefits of the Asserted Patents, on which General Access's expert Dr. Madisetti opines, and to the history of success and profitability of 4G and 5G, on which General Access's expert Mr. Kennedy opines. Dkt. 110 at 9-10. But as with the *number* of standard essential patents, the *number* of issued patents that hit on these keywords does not elucidate the benefits of the Asserted Patents or the profitability of 4G and 5G. The benefits of the Asserted Patents are determined by looking at the Asserted Patents, not how many other patents may exist. Similarly, these patents do not indicate why 4G and 5G has been successful and profitable. To actually be responsive to either expert, Ms. Dwyer would have needed to review the *substance* of the patents—what they claim, what they disclose. But she did that for only a handful of patents. Otherwise, she simply assumed that patents granted at the time of the hypothetical negotiation would have driven down the value. As before, Ms. Dwyer's opinions are intended to suggest that the Asserted Patents are worth less because they "are just three patents in a thicket of patents related to the same technologies." Dkt. 94, Ex. 1 at ¶ 114.

## III.    Ms. Dwyer Should Not Be Permitted to Testify About IPRs Before the Jury

Defendants' complaint that a motion to strike is not the right procedural vehicle to preclude expert opinions about IPRs rings hollow. "[T]here is ample support that Rule 702 in many ways incorporates Rule 403." *Eidos Display, LLC v. AU Optronics Corp.*, No. 6:11-cv-201-JRG-JDL, 2017 WL 11630428, at *1 (E.D. Tex. May 12, 2017). The same considerations that animate the Court's standing MIL apply to T-Mobile's expert opinions—it would be highly prejudicial, confusing, and misleading to elicit expert opinions about IPR proceedings to the jury. Whether an expert should be permitted to present such opinions to a jury is fairly addressed using a motion to strike.

There is no reason why Ms. Dwyer needs to discuss the IPRs before the jury. Ms. Dwyer's opinions fall into two categories—the value of claims 28 and 29, and supposedly non-infringing alternatives. The former—an opinion she feeds to Ms. Bennis—can be easily made without invoking the IPR proceedings, as it was in *Verizon*. Likewise, Ms. Dwyer can opine on what she views as appropriate non-infringing alternatives without mentioning the IPRs. Ms. Dwyer also presents a recounting of the '931 IPR proceedings, untied to any actual opinions. Like in *Verizon*, the Court should prohibit "any statement before the jury that [Claims 1 and 19] have been invalidated or canceled," as well as any "mention of the PTAB or the IPR proceeding." Ex. 6, *Verizon* Pretrial Hearing Tr. at 84:13-16.

## IV.    Prosecution History Estoppel Is Not For the Jury

Whether Ms. Dwyer was required to offer opinions about prosecution history estoppel is irrelevant to General Access's motion.[1] General Access asks the Court to preclude Ms. Dwyer from presenting those opinions *to the jury*. Prosecution history estoppel is a legal issue reserved exclusively for the Court. Indeed, Defendants recognize as much in their own DOE motion. *See* Dkt. 97 at 8. For that reason, courts routinely keep opinions about prosecution history estoppel from the jury. *See, e.g.*, *United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:21-cv-00246-JRG, 2022 WL 19227587, at *3 (E.D. Tex. Sept. 1, 2022) ("neither party shall raise prosecution history estoppel before the jury"); *TQP Dev., LLC v. 1-800-Flowers.com Inc.*, No. 2:11-cv-248-JRG-RSP, 2013 WL 12432371, at *6 (E.D. Tex. Nov. 8, 2013) (prosecution history estoppel "will not be presented to the jury").

## CONCLUSION

General Access respectfully requests that the Court grant this motion.

---

[1] In fact, Ms. Dwyer's opinions about prosecution history estoppel are not necessary. Ms. Dwyer is not Defendants' non-infringement expert. She only uses the doctrine in analyzing non-infringing alternatives. *See* Dkt. 94, Ex. 1 at ¶¶ 42-43, 207-208.

Dated: November 19, 2024

Respectfully submitted,

*/s/ Glen E. Summers*

Glen E. Summers (CO Bar No. 30635)
LEAD ATTORNEY
Nosson D. Knobloch (CO Bar No. 42134)
John M. Hughes (CO Bar No.
Giovanni J. Sanchez (CO Bar No. 59696)
Taylor Kelson (CO Bar No. 56910)
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com
nosson.knobloch@bartlitbeck.com
giovanni.sanchez@bartlitbeck.com
taylor.kelson@bartlitbeck.com

Michael J. Valaik (IL Bar No. 6276086)
Luke C. Beasley (IL Bar No. 6334359)
Meg E. Fasulo (IL Bar No. 6320595)
**BARTLIT BECK LLP**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
michael.valaik@bartlitbeck.com
luke.beasley@bartlitbeck.com
meg.fasulo@bartlitbeck.com

Andrea L. Fair (TX Bar No. 24078488)
Charles Everingham IV (TX Bar No. 00787447)
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Telephone: (903) 757-6400
andrea@millerfairhenry.com
ce@millerfairhenry.com

*Attorneys for Plaintiff General Access Solutions, Ltd.*

6

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on November 19, 2024, which will send a notification of such filing to all counsel of record.

*/s/ Glen E. Summers*
Glen E. Summers

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order in the above-captioned case, this motion contains confidential information. Accordingly, this document is to be filed under seal.

*/s/ Glen E. Summers*
Glen E. Summers