**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

GENERAL ACCESS SOLUTIONS, LTD.,

        Plaintiff,

    v.

T-MOBILE USA, INC.,

        Defendant,

ERICSSON INC.,

        Intervenor-Defendant,

NOKIA OF AMERICA CORP.,

        Intervenor-Defendant

Case No. 2:23-cv-00158 JRG

JURY TRIAL DEMANDED

**JOINT AMENDED PROPOSED PRETRIAL ORDER FOR TRIAL IN
*GENERAL ACCESS SOLUTIONS, LTD. V. T-MOBILE USA, INC.*[1]**

Plaintiff General Access Solutions, Ltd. ("General Access") and Defendant T-Mobile USA,

Inc. ("T-Mobile" or "Defendant") and Intervenors Ericsson Inc. ("Ericsson") and Nokia of America,

---

[1] Submissions that are agreed to by both General Access and T-Mobile, Ericsson, and Nokia are not highlighted.

Submissions proposed by General Access that are not agreed to by T-Mobile, Ericsson, and Nokia are bracketed and highlighted in teal. Submissions proposed by T-Mobile, Ericsson, and Nokia that are not agreed to by General Access are bracketed and highlighted in yellow. The parties have entered their objections, explanations, citations, and commentary in footnotes only.

The parties have filed motions for summary judgment, *Daubert* motions, and motions *in limine* on many issues in this case. The outcomes of these pending motions may affect portions of these instructions and the parties' proposals. The parties reserve the right to amend these instructions and proposals prior to the Court's charge conference, and nothing within these proposed instructions should be construed as a waiver of the parties' positions, arguments, or objections to the proposed instructions.

Inc. ("Nokia") (collectively, Intervenors) respectfully submit this Joint Proposed Pretrial Order. This

case is scheduled for a pre-trial management conference on December 17, 2024, pursuant to Local

Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure.

## I.    COUNSEL FOR THE PARTIES

**Plaintiff:**

> Glen E. Summers (CO Bar No. 30635)
> LEAD ATTORNEY
> John M. Hughes (CO Bar No. 38295)
> Nosson D. Knobloch (CO Bar No. 42134)
> Giovanni J. Sanchez (CO Bar No. 59696)
> Taylor Kelson (CO Bar No. 56910)
> **BARTLIT BECK LLP**
> 1801 Wewatta Street, Suite 1200
> Denver, CO 80202
> Telephone: (303) 592-3100
> glen.summers@bartlitbeck.com
> john.hughes@bartlitbeck.com
> nosson.knobloch@bartlitbeck.com
> giovanni.sanchez@bartlitbeck.com
> taylor.kelson@bartlitbeck.com
>
> Michael J. Valaik (IL Bar No. 6276086)
> Luke C. Beasley (IL Bar No. 6334359)
> Meg E. Fasulo (IL Bar No. 6320595)
> **BARTLIT BECK LLP**
> 54 West Hubbard Street, Suite 300
> Chicago, IL 60654
> Telephone: (312) 494-4400
> michael.valaik@bartlitbeck.com
> luke.beasley@bartlitbeck.com
> meg.fasulo@bartlitbeck.com
>
> Andrea L. Fair (TX Bar No. 24078488)
> Charles Everingham IV (TX Bar No. 00787447)
> **MILLER FAIR HENRY PLLC**
> 1507 Bill Owens Pkwy.
> Longview, TX 75604
> Telephone: (903) 757-6400
> andrea@millerfairhenry.com
> ce@millerfairhenry.com

**Defendant T-Mobile and Intervenor Ericsson and Nokia:**

John D. Haynes (GA Bar No. 340599)
Wesley C. Achey (GA Bar No. 141284)
Michael C. Deane (GA Bar No. 497195)
Emily Chambers Welch (GA Bar No. 606071)
Kyle A. Ceuninck (GA Bar No. 915189)
John.Haynes@alston.com
Wes.Achey@alston.com
Michael.Deane@alston.com
Emily.Welch@alston.com
Kyle.Ceuninck@alston.com
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

M. Scott Stevens (NC Bar No. 37828)
Mary I. Riolo (NC Bar No. 59644)
Scott.Stevens@alston.com
Mary.Riolo@alston.com
**ALSTON & BIRD LLP**
Vantage South End
1120 S. Tryon Street
Suite 300
Charlotte, NC 28203
Telephone: (704) 444-1000
Facsimile: (704) 444-1111

Theodore Stevenson, III (TX Bar No. 19196650)
Emily A. Fitzgerald (TX Bar No. 24097690)
Ted.Stevenson@alston.com
Emily.Fitzgerald@alston.com
**ALSTON & BIIRD LLP**
2200 Ross Ave.
Suite 2300
Dallas, TX 75201
Phone: (214) 922-3507
Fax: (214) 922-3899

Thomas W. Davison (FL Bar No. 55687)
Tom.Davison@alston.com
**ALSTON & BIRD LLP**
950 F St NW
Washington, DC 20004

Phone: (202) 239-3300
Fax: (202) 239-3333

Natalie C. Clayton (NY Bar No.4409538)
Natalie.clayton@alston.com
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9400
Fax: (212) 210-9444

Melissa R. Smith (State Bar No. 24001351)
Andrew Thompson ("Tom") Gorham
(State Bar No. 24012715)
melissa@gillamsmithlaw.com
tom@gillamsmithlaw.com
**GILLAM & SMITH LLP**
102 N. College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257

Deron R. Dacus
Texas Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323,
Suite 430
Tyler, Texas 75701
903-705-1117 (phone & fax)
E-mail: ddacus@dacusfirm.com

## II.    STATEMENT OF JURISDICTION

This is an action under the patent laws of the United States, 35 U.S.C. § 271, et. seq. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b). Defendant and Intervenors do not contest jurisdiction or venue for the purpose of this action.

## III.    NATURE OF ACTION

### A.    General Access's Statement

Plaintiff General Access contends that Defendant T-Mobile USA, Inc. and Intervenors Ericsson Inc. and Nokia of America, Inc. have infringed and/or infringe U.S. Patent No. 6,947,477

(the '477 Patent) and U.S. Patent No. 7,099,383 (the '383 Patent). The '477 Patent and '383 Patent are referred to collectively as the Asserted Patents.

General Access seeks damages representing a reasonable royalty for Defendants' infringement of the Asserted Patents, plus pre-judgment and post-judgment interest. General Access further contends that Defendants' infringement of the '477 Patent was willful and seeks enhanced damages for Defendants' willful infringement.

General Access accuses T-Mobile's 4G and 5G TDD and FDD base stations of infringing Claims 1, 3, 4, 6, and 7 of the '477 Patent, and Claims 5-10, 13, and 16 of the '383 Patent. T-Mobile's 4G and 5G base stations include baseband units, digital units, radio, antennas, and other equipment to receive and process subscriber transmissions in a cell site. Some of T-Mobile's infringing base stations are manufactured by Ericsson or Nokia. Additional information concerning the infringing base stations can be found in the expert reports of Dr. Madisetti and Mr. Kennedy.

### B.  Defendant and Intervenors' Statement

Plaintiff's infringement allegations, and all related allegations, are meritless. Defendant T-Mobile and Intervenors Ericsson and Nokia contend that the Asserted Patents are not infringed and are invalid.

T-Mobile does not infringe Asserted Claims 5, 6, 7, 8, 9, 10, 13, and/or 16 of the '383 Patent. Ericsson and Nokia's products do not infringe Asserted Claims 5, 6, 7, 8, 9, 10, 13, and/or 16 of the '383 Patent. T-Mobile does not infringe Asserted Claims 1, 3, 4, 6, and/or 7 of the '477 Patent. Ericsson and Nokia's products do not infringe Asserted Claims 1, 3, 4, 6, and/or 7 of the '477 Patent. The Asserted Claims of the '383 Patent are invalid for lack of adequate written description under 35 U.S.C. § 112. The Asserted Claims of the '383 Patent are anticipated and/or obvious under 35 U.S.C. §§ 102 and/or 103. Plaintiff's allegations of infringement under the doctrine of equivalents for the

5

Asserted Claims of the '383 Patent are barred by prosecution history estoppel.[2] Plaintiff's allegations of infringement under the doctrine of equivalents for the Asserted Claims of the '383 Patent ensnare the prior art. The Asserted Claims of the '477 Patent are invalid for lack of enablement and adequate written description under 35 U.S.C. § 112. The Asserted Claims of the '477 Patent are anticipated and/or obvious under 35 U.S.C. §§ 102 and/or 103.

Because the Asserted Patents are not infringed and/or are invalid, Plaintiff is not entitled to any damages. Plaintiff has no evidence that T-Mobile's alleged infringement of the '477 Patent has been willful, and thus, Plaintiff is not entitled to enhanced damages.[3] Further, this case is exceptional under 35 U.S.C. § 285, and T-Mobile, Ericsson, and Nokia seek their attorneys' fees and costs thereunder, and any other relief the Court deems appropriate.

---

[2] Defendants' arguments regarding prosecution history estoppel and ensnarement for the '383 Patent are not for the jury to decide. Prosecution history estoppel and ensnarement will not be raised, discussed, or testified to in front of the jury without express prior leave of the Court.

**General Access's Position:** The Court has already determined that prosecution history estoppel does not preclude General Access's doctrine of equivalents theories. Dkt. 187 at 2. Additionally, the Court stated that "[i]f, having allowed DOE to be a part of the trial, if there is a finding for the plaintiff, based on the doctrine of equivalence, then the Court can, and likely will, take up these ensnarement arguments subsequently. . . . And if it's not mooted by the verdict, we can certainly take it up subsequent to the verdict." Pretrial Conference Tr. Volume I 37:21-38:5 (Dec. 17, 2024). The Court did not similarly indicate that T-Mobile would be permitted to re-raise its prosecution history estoppel argument.

**Defendant and Intervenors' Position**: The Court denied Defendant and Intervenors request for an affirmative ruling in their favor on the question of prosecution history estoppel, it did not issue an affirmative ruling in Plaintiff's favor. The Court stated that Defendant and Intervenors' motion on prosecution history estoppel did not warrant a dispositive ruling in part because "there were some underlying disputes that would benefit and require testimony from experts regarding the scope of the prosecution history." Pretrial Conference Tr. Volume I 37:9-18 (Dec. 17, 2024). Defendant and Intervenors reserve the right to re-raise their prosecution history estoppel argument, outside of the presence of the jury.

[3] Plaintiff does not allege willful infringement of the '383 Patent.

6

## IV.    CONTENTIONS OF THE PARTIES

The parties provide the following statement of contentions without waiver of any right, affirmative defense, response given during discovery, or opinion expressed by their experts. By providing these contentions, the parties do not waive any of its motions *in limine*, motions for summary judgment, *Daubert* motions, motions to strike, or any other relevant motion.

### A.    General Access's Contentions

1.    General Access owns all right, title, and interest to the Asserted Patents, including all rights to seek past and future damages for infringement by Defendant and Intervenors.

2.    The '477 Patent and '383 Patent were assigned to General Access on August 15, 2011. The assignment included all rights to sue for past or future infringement.

3.    Defendant and Intervenors have directly infringed the following claims of the Asserted Patents: Claims 1, 3, 4, 6, and 7 of the '477 Patent; and Claims 5-10, 13, and 16 of the '383 Patent.

4.    To the extent Defendant and Intervenors have not literally infringed the Asserted Claims of the '383 Patent, they have infringed those Asserted Claims under the doctrine of equivalents.

5.    T-Mobile's 4G and 5G TDD and FDD base stations infringe Claims 1, 3, 4, 6, and 7 of the '477 Patent and Claims 5-10, 13, and 16 of the '383 Patent. Some of T-Mobile's infringing base stations are manufactured—and imported into and/or sold in the United States—by Ericsson or Nokia.

6.    Defendant and Intervenors have willfully infringed the Asserted Claims of the '477 Patent.

7.    General Access is entitled to reasonable royalty damages for T-Mobile's infringement of the Asserted Patents, plus pre-judgment and post-judgment interest. In support of its claim for damages, General Access contends that T-Mobile's infringement of the '477 and '383 Asserted Claims contributes significantly to the performance of T-Mobile's 4G and 5G networks.

8.      General Access seeks its costs and expenses for this action, and a finding that this is an exceptional case under 35 U.S.C. § 285, warranting an award of General Access's attorneys' fees, plus any further and additional relief that the Court deems just and proper.

9.      Defendant's and Intervenors' defenses are without merit.

**B.      Defendant's and Intervenors' Contentions**

1.      T-Mobile does not infringe, and has not infringed, any of the Asserted Claims of the Asserted Patents.

2.      None of the Accused Products, or any other product, infringe Asserted Claims 5, 6, 7, 8, 9, 10, 13, or 16 of the '383 Patent, either literally and/or under the doctrine of equivalents.

3.      None of the Accused Products, or any other product, infringe Asserted Claims 1, 3, 4, 6, or 7 of the '477 Patent.[4]

4.      T-Mobile does not indirectly infringe, and has not indirectly infringed, the Asserted Claims of the '383 or '477 Patents under 35 U.S.C. § 271. T-Mobile has not induced infringement of or contributorily infringed the Asserted Claims of the '383 or '477 Patents.

5.      The '383 Patent expired prior to the filing of the complaint against T-Mobile.

6.      The '477 Patent expired prior to trial against T-Mobile.

7.      T-Mobile has not willfully infringed the '477 Patent.

8.      The Asserted Claims of the '383 and '477 Patents are invalid as anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103 in view of the following prior art:[5]

- For the '383 Patent:

---

[4] Plaintiff's infringement allegations regarding the doctrine of equivalents are limited to the '383 Patent. Plaintiff is not asserting infringement of the '477 Patent under the doctrine of equivalents.

[5] Plaintiff has moved to strike and preclude T-Mobile, Ericsson, and Nokia from relying on prior art references. *See* Dkt. 93. The identified prior art includes art that is subject to these motions.

- U.S. Patent No. 7,158,493 to Uhlik ("Uhlik") anticipates and/or renders the Asserted Claims obvious;

- Uhlik in view of U.S. Patent No. 5,909,470 ("Barratt '470") renders the Asserted Claims obvious;

- The Radio Base Station 2000 ("RBS 2000") anticipates the Asserted Claims and/or renders the Asserted Claims obvious either alone or in view of a POSITA's knowledge;

- The RBS 2000 in view of Barratt '470 renders the Asserted Claims obvious; and

- The RBS 2000 in view of Uhlik renders the Asserted Claims obvious.

- For the '477 Patent:

  - The RBS 2000 anticipates the Asserted Claims and/or renders the Asserted Claims obvious either alone or in view of a POSITA's knowledge; and

  - The RBS 2000 in view of U.S. Patent No. 6,643,321 to Genossar ("Genossar") renders the Asserted Claims obvious.

  - The RBS 2000 in view of U.S. Patent No. 5,592,490 ("Barratt '490") renders the Asserted Claims obvious.

9. The Asserted Claims of the '383 and '477 Patents are invalid for lack of written description under 35 U.S.C. § 112.

10. The Asserted Claims of the '477 Patent are invalid for lack of enablement under 35 U.S.C. § 112.

11. Plaintiff's infringement allegations under the doctrine of equivalents for the '383

Patent are precluded by prosecution history estoppel.[6]

12.     Plaintiff's infringement allegations under the doctrine of equivalents for the '383 Patent ensnare the following prior art:

- For the '383 Patent:
    - o   Uhlik;
    - o   Uhlik in view of Barratt '470; and
    - o   The RBS 2000 in view of Barratt '470.

13.     Plaintiff is not entitled to any damages, including a reasonable royalty.

14.     Plaintiff is not entitled to any damages, including any interest or damages sought under 35 U.S.C. §§ 284 and 285.

15.     Even if infringement of any valid Asserted Claim of the Asserted Patents is found, Plaintiff's proposed lump sum royalty and royalty rate is excessive and unsupported.

16.     Plaintiff is not entitled to any costs.

17.     T-Mobile, Ericsson, and Nokia contend that this is an exceptional case warranting

---

[6] **General Access's Position:** The Court has already determined that prosecution history estoppel does not preclude General Access's doctrine of equivalents theories. Dkt. 187 at 2. Additionally, the Court stated that "[i]f, having allowed DOE to be a part of the trial, if there is a finding for the plaintiff, based on the doctrine of equivalence, then the Court can, and likely will, take up these ensnarement arguments subsequently. . . . And if it's not mooted by the verdict, we can certainly take it up subsequent to the verdict." Pretrial Conference Tr. Volume I 37:21-38:5 (Dec. 17, 2024). The Court did not similarly indicate that T-Mobile would be permitted to re-raise its prosecution history estoppel argument.

**Defendant and Intervenors' Position**: The Court denied Defendant and Intervenors request for an affirmative ruling in their favor on the question of prosecution history estoppel, it did not issue an affirmative ruling in Plaintiff's favor. The Court stated that Defendant and Intervenors' motion on prosecution history estoppel did not warrant a dispositive ruling in part because "there were some underlying disputes that would benefit and require testimony from experts regarding the scope of the prosecution history." Pretrial Conference Tr. Volume I 37:9-18 (Dec. 17, 2024). Defendant and Intervenors reserve the right to re-raise their prosecution history estoppel argument, outside of the presence of the jury.

award of their attorneys' fees and costs, and any other relief the Court deems appropriate.

18.    Plaintiff is not entitled to any finding in Plaintiff's favor that this case is exceptional, or to any damages, attorneys' fees, or costs.

19.    Plaintiff is not entitled to attorneys' fees.

20.    Plaintiff is not entitled to pre-judgment and post-judgment interest.

**C.    General Access's Rebuttal Contentions**

1.    Defendants have not shown that any version of the RBS 2000 that included the features Defendants allege are invalidating was available before the priority date of the '477 and '383 Patents.

2.    The Asserted Claims of the '477 Patent are not invalid as anticipated under 35 U.S.C. § 102.

3.    The Asserted Claims of the '477 Patent are not invalid for obviousness under 35 U.S.C. § 103.

4.    The Asserted Claims of the '477 Patent are not invalid for lack of written description under 35 U.S.C. § 112.

5.    The Asserted Claims of the '477 Patent are not invalid for lack of enablement under 35 U.S.C. § 112.

6.    The Asserted Claims of the '383 Patent are not invalid as anticipated under 35 U.S.C. § 102.

7.    The Asserted Claims of the '383 Patent are not invalid for obviousness under 35 U.S.C. § 103.

8.    The Asserted Claims of the '383 Patent are not invalid for lack of written description under 35 U.S.C. § 112.

9.      General Access's infringement allegations under the doctrine of equivalents for the '383 Patent are not precluded by prosecution history estoppel. The Court, not the jury, should address this issue, and the Court has already determined that prosecution history estoppel does not preclude General Access's doctrine of equivalents theories. Dkt. 187 at 2.

10.     General Access's infringement allegations under the doctrine of equivalents for the '383 Patent do not ensnare the prior art. The Court, not the jury, should address this issue.

11.     Defendants are not entitled to any costs, expenses, or attorneys' fees.

12.     Defendants' counterclaims are without merit.

13.     Defendants are not entitled to any relief.

## V.      STIPULATIONS AND UNCONTESTED FACTS

### A.      Stipulations

1.      The parties request that the Court present the Federal Judicial Center's tutorial video regarding the U.S. Patent Office.

2.      The parties have provided their proposed trial management procedures in Section VI below.

### B.      Uncontested Facts

1.      General Access is a domestic limited partnership organized under the laws of the State of Texas with its principal place of business in Dallas, TX.

2.      T-Mobile USA, Inc. is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

3.      Ericsson is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, TX 75024.

4.      Nokia is a Delaware corporation with its principal place of business at 600 Mountain Avenue, Suite 700, Murray Hill, NJ 07974.

5.      The '477 Patent is titled "Apparatus and Method for Creating Signal and Profiles at a Receiving Station." It claims priority to 17 provisional applications dated January 19, 2001 to March 5, 2001, and was issued by the US Patent Office on September 20, 2005. The '477 Patent expired on June 30, 2023.

6.      The named inventors of the '477 Patent are Paul F. Struhsaker and Russell C. McKown.

7.      The '383 Patent is titled "Apparatus and Associated Method for Operating upon Data Signals Received at a Receiving Station of a Fixed Wireless Access Communication System." It claims priority to a provisional application dated January 19, 2001, and was issued by the US Patent Office on August 29, 2006. The '383 Patent expired on March 6, 2023.

8.      The named inventors of the '383 Patent are Paul F. Struhsaker and Russell C. McKown.

9.      General Access is the assignee and owner of all right, title and interest in and to the '477 and '383 Patents, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of those patents.

10.     General Access filed this action on April 6, 2023.

## VI.    Trial Management Procedures

### A.    Testimony

11.     <u>Witness Identification</u>. The parties will identify by email to the opposing party the witnesses they intend to call and the order by which they expect to call the witnesses by 7:00 p.m.[7] two calendar days before the witnesses will be called to testify. The identification of the witnesses shall include both live witnesses and witnesses whose testimony is provided by deposition. The parties agree

---

[7] All listed times are Central Time.

that for any witnesses that both sides intend to use in their case-in-chief, that witness need only be called once. Any objection to the witness must be made by 8:00 p.m. two nights before the intended testimony. The parties will exchange on January 13, 2025 (or two weeks before jury selection) a list of the witnesses the parties then believe in good faith they will actually call live.

12.    <u>Deposition Testimony</u>. Unless otherwise agreed between the parties, the party offering deposition testimony (other than for impeachment purposes) shall identify the deposition testimony to be offered from previously exchanged designations by 7:00 p.m. at least three calendar days prior to the testimony being offered into the record. The party receiving the designations shall inform the opposing party of any counter-designations and objections by 6:30 p.m. two days prior to the testimony being offered into the record, and the parties will meet and confer by 8:30 p.m. that same day. Any unresolved objections must be emailed to the Court's law clerks, along with a copy of the relevant portions of the deposition transcript, by 10:00 p.m. two nights before the deposition will be played, to permit the Parties to address any such objections with the Court the next morning (i.e., the day before the testimony is to be played).

13.    <u>Deposition Exhibits</u>. If an exhibit was actually used during a deposition, and if a party seeks to present the deposition testimony about that same exhibit during the examination of any witness appearing by deposition designation, the exhibit will be admitted into evidence.

14.    <u>Deposition Testimony Chronology</u>. All designations and counter-designations will be read or played in the order in which the testimony occurred in the deposition unless another order is agreed to by the parties or ordered by the Court. Counter-designations in this context are limited only to those parts of a deposition that an adverse party may require the offeror to introduce because, in fairness, they should be considered with the part introduced. *See* Fed. R. Civ. P. 32(a)(6). An adverse party has no right to require that parts of a deposition outside that limited scope be played during the other party's case. Unless otherwise agreed, both sides' designations will be read or played together in

the chronological order in which designations occurred during the deposition, as discussed below. This limitation does not prevent the parties from mutually agreeing to play other parts of a deposition even if it is outside the scope of a counter-designation.

15. <u>Deposition Testimony Preparation</u>. To the extent possible, all colloquy between counsel and objections will be eliminated when deposition testimony is presented at trial, unless it is necessary context for the witness's answer. The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony, and remove any attorney objections and for providing a timed report of deposition designations for each party (i.e., initial and counter-designations) prior to the designations being played at trial. The introducing party shall provide the edited video clip to the opposing party as soon as practicable but no later than 8:00 p.m. the night before the deposition is to be played. Each party reserves the right to use deposition designations from the other party's designations, even if not separately listed on its own list.

16. <u>Reservation of Rights</u>. Each party also reserves the right to use deposition counter designations as part of its affirmative designations, and any initial or counter-counter designations as counter designations.

17. <u>Deposition Testimony Time</u>. Only the deposition testimony designated by each party will be subtracted from that party's trial time. The other party's responsive designations shall be deducted from that party's trial time (i.e., affirmative designations will be deducted from the designating party's trial time and counter-designations will be subtracted from the counter-designating party's trial time).

18. <u>Impeachment</u>. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose. Deposition

testimony used for impeachment purposes does not need to be disclosed prior to its use. When a party uses deposition testimony for impeachment, the party may elect to either play the deposition testimony by video or to read the deposition testimony live (in either case the transcript may be displayed to the jury), unless the Court orders otherwise.

**B.** **Exhibits**

1.      <u>Pre-Admitted Exhibits</u>. Each party may use an exhibit that is preadmitted, whether it is listed on the joint exhibit list or on either party's exhibit list.

2.      <u>Objections to Exhibits</u>. A party's inclusion of an exhibit on its exhibit list does not waive any evidentiary or other objections to that exhibit if the opposing party attempts to offer it into evidence.

3.      <u>Disclosure of Exhibits for Opening Statements</u>. The parties agree that any exhibit pre-admitted at the time of opening statements may be shown to the jury during opening statements, if the exhibit will be admitted and used during trial. The parties will identify any pre-admitted exhibit that will be shown to the jury during opening statements by 4:00 p.m. the day before Opening Statements.

4.      <u>Disclosure of Exhibits for Direct Examination.</u> Each party will provide a list of trial exhibits to be used in connection with direct examination of each witness whether live or by designation, on a witness-by-witness basis, by 7:00 p.m. the night before their intended use. The parties will exchange objections to exhibits (to the extent the exhibit is not pre-admitted or objections are not resolved at the pretrial conference) by 8:00 p.m. on the same day, the night before their intended use. The parties will provide a joint email to the Court on any remaining disputes by 10:00 p.m. Any exhibits to be used during cross-examination or examination of a witness a party calls adversely need not be disclosed under this provision.

5.      <u>Demonstratives</u>. The parties agree that the demonstratives the parties intend to use at trial do not need to be included on their respective trial exhibit lists, but instead, will be subject to the applicable procedures set forth below.

6.      <u>Exhibit List Descriptions</u>. The parties agree that any description of an exhibit on an exhibit list is provided for convenience only and shall not be used as an admission by the applicable party, or otherwise as evidence regarding that exhibit. Neither parties' exhibit list nor any portion thereof is admissible or may be presented to the jury without leave of Court.

7.      <u>Dates Listed on Exhibit List</u>. The parties agree that any date listed on the exhibit list is not evidence or an admission of the exhibit's date. The parties further agree that failing to list a date is not evidence or an admission of whether the document is dated.

8.      <u>Physical Exhibits</u>. Any preadmitted physical exhibits may be inspected by the other party. Any such physical exhibits must be made available for inspection at a mutually convenient time and place in advance of the pretrial conference, again (if requested) at least 48 hours before the beginning of trial, and again (if requested) no later than 7:00 p.m. the night before their intended use at trial.

9.      <u>Source Code and Confidential Material</u>. With respect to source code, only the specific printouts of pages of source code discussed by a Party's expert or witness during direct or cross examination will be made a part of the evidentiary record and sent back to the jury. Source code printout pages that are not discussed during the trial will not be made part of the evidentiary record or sent back to the jury. The parties anticipate that additional highly confidential and competitively sensitive information, including source code and financial data (including revenue data), and license information will be presented at trial. Any party wishing to introduce such confidential information shall do so in accordance with the Stipulated Protective Order (Dkt. 37), including, at the appropriate time, requesting for the courtroom to be sealed if the party desires to introduce such confidential

information. The parties agree not to oppose the other side's reasonable request to seal the courtroom when confidential information, including, but not limited to, source code, financial data, and license information, is presented.

### C. Demonstratives

10. <u>Demonstratives</u>. "Demonstrative(s)" are exhibits specifically created for the purpose of the trial and for illustrative purposes, and do not include (1) demonstratives created in the courtroom during testimony or opening at trial (such as by writing on a white board or flip chart); or (2) the enlargement, highlighting, ballooning, underlining, or the like, of pre-admitted exhibits, transcripts of trial testimony, or transcripts of deposition testimony for which objections have been cleared. "Demonstratives" includes non-documentary demonstratives or live demonstratives, such as physical exhibits, that a party plans to use during direct examination or during opening or closing statements—but not for cross-examination or a party's examination of its own witness that the opposing party has called adversely. Any physical Demonstratives must be made available for inspection at a time pre-arranged by the parties. Photos or electronic images of the physical Demonstratives must also be disclosed at the same time along with other Demonstratives. For videos or animations, the party seeking to use the Demonstrative exhibit shall provide it to the other side in digital interactive format, including, as applicable, flash format, PPT format, MPG, or other video format.

11. <u>Disclosure of Demonstratives for Opening Statements</u>. Absent further agreement of the parties, the parties will exchange Demonstratives for use in opening statements by 4:00 p.m. on the day before openings. The parties will provide any objections to the Demonstratives by 5:00 p.m. on the same day. The parties will meet and confer on any objections to the Demonstratives by 6:00 p.m. on the same day. The parties will provide a joint email to the Court on any remaining disputes by 8:00 p.m.

12.     <u>Disclosure of Demonstratives for Use in Direct Examinations</u>. Absent further agreement of the parties, the parties will provide Demonstratives for use in direct examinations of their own witnesses by 7:00 p.m. the night before their intended use. The parties will provide any objections to such Demonstratives by 8:00 p.m. The parties will meet and confer by 9:00 p.m. The parties will provide a joint email to the Court on any remaining disputes by 10:00 p.m.

13.     <u>Disclosure of Demonstratives for Closing Arguments</u>. Absent any other agreement of the parties, the parties shall exchange any newly created or modified Demonstratives for use in closing argument by 8:00 p.m. the night before closings are held or at another mutually agreeable time. Objections will be raised by 9:00 p.m. the same day or at another mutually agreeable time, and the parties will notify the Court of any remaining objections by 10:00 p.m. or at another mutually agreeable time. In no event will newly created or modified demonstratives be used in closing arguments that have not been provided to the other party. Excerpts of exhibits admitted during trial, and excerpts of trial testimony, do not constitute newly created Demonstratives under this provision.

14.     <u>File Types for Demonstrative Disclosures</u>. For videos or animations, the Party seeking to use the demonstrative shall provide to the other side a PDF file or other file type, showing the stages of the animation that shows the build across the animation. The parties will exchange color representations of such non-documentary and/or live demonstratives. Demonstratives exchanged will not be used by an opposing party before being used by the disclosing party. A party who has a demonstrative created in the courtroom must provide the other party with a photograph of the demonstrative by 7:00 p.m. the same day.

15.     <u>Edits and Corrections to Demonstrative Disclosures</u>. Reasonable, non-substantive edits or corrections of typographical and similar errors may be made after the disclosure deadlines set forth above, provided that the corrected Demonstrative must be promptly disclosed reasonably in advance of its first use.

16.    <u>Disclosure of Demonstratives for Cross-Examination</u>. The parties agree that they need not identify trial exhibits or provide a copy of demonstratives to be used during cross-examination or a party's examination of a witness that it calls adversely.

17.    <u>Objections to Demonstratives</u>. The parties will meet and confer to resolve objections at 9:00 p.m. after the trial disclosures and objections contained in the preceding subsections have been exchanged that evening. Any unresolved objections will be raised with the Court by email directed to the Court's law clerk(s) no later than 10:00 p.m. for resolution the next morning outside the presence of the jury. If there are no objections, the parties shall so inform the Court.

**D.    Discovery Responses**

1.    If a party seeks to read discovery responses into the record, the party seeking to read the discovery response into the record shall disclose the discovery it proposes to read into the record by 7:00 p.m. CT the night before such a reading. The parties will provide any objections and counters to such discovery responses by 8:00 p.m. The parties will meet and confer by 9:00 p.m. The parties will provide a joint email to the Court on any remaining disputes by 10:00 p.m. The parties agree that discovery responses can be read into the record and shall count against the time of the proposing party.

**E.    Witness Binders and Juror Notebooks**

1.    <u>Witness Binders</u>. The parties agree that there is no requirement to prepare a binder of evidence or demonstratives for a witness. However, if a party provides a binder, the party will provide at the same time to the witness, opposing side, the Court, and court reporter a tabbed binder containing all exhibits and deposition testimony that the party plans in good faith to use during its examination of that witness. Similarly, if counsel conducting a cross-examination of a witness chooses to prepare a binder for use in the cross-examination, upon beginning its cross-examination of a witness, the party conducting the cross-examination shall provide at least the witness, opposing

20

counsel, the Court, and court reporter with a tabbed binder containing all exhibits and deposition testimony that the side plans in good faith to use during its cross-examination of that witness. The binders may be supplemented during the examination or cross-examination, for example, with materials necessary to impeach a witness's unexpected testimony.

2. <u>Juror Notebooks</u>. The parties shall deliver to the Court before jury selection twelve (12) copies of an agreed juror notebook, containing lined witness sheets with names, titles, and head-and-shoulders color photos, a copy of any agreed-upon documents (including the '477 and '383 Patents and a chart of the claim constructions), a legal pad, a pen, and a highlighter. If unexpected, additional depositions will be played, additional witnesses sheets may be added on the morning before the unexpected depositions are played as long as the sheets are provided to the courtroom deputy sufficiently prior to when court is supposed to start.

3. <u>Notes</u>. The jurors may take handwritten notes during the parties' presentations.

**F. Notice of Intent to Rest**

4. <u>Notice of Intent to Rest</u>. A party will provide to the Court and the other party a good-faith notice that it expects to rest by 7:00 p.m. or prior to leaving court, whichever is later, the day before that party expects to rest and provide a good-faith estimate of how much additional trial time the party expects to use before resting.

5. <u>Fact Witness Sequestration</u>. The parties request that the fact witnesses will be sequestered so that they cannot hear other witnesses' testimony pursuant to Federal Rule of Evidence 615. This stipulation does not apply to a party's corporate trial representative.

**VII. CONTESTED ISSUES OF FACT AND LAW**

The parties identify the following issues of fact and law that remain to be litigated at trial. To the extent any issue of law discussed below is deemed to be an issue of fact, it is expressly designated as such, and vice versa. The parties do not waive any of their pending or anticipated motions, and

each party incorporates by reference the contested issues raised in its respective pending motions. The parties reserve the right to identify additional factual or legal issues that may arise, including issues raised in any motions in limine.

### A.    Plaintiff's Statement of its Contested Issues of Fact and Law

1.    Whether the Asserted Claims are infringed, literally and/or under the doctrine of equivalents.

2.    Whether the Asserted Claims are valid under 35 U.S.C. §§ 102, 103, and 112.

3.    If the Asserted Patents are infringed, the amount of damages to which General Access is entitled, including any pre-judgment or post-judgment interest.

4.    If Defendant is found to have willfully infringed the Asserted Patents, whether the Court should enhance damages under 35 U.S.C. § 284 and, if it does, the extent of that increase.

5.    Whether this is an exceptional case under 35 U.S.C. § 285.

6.    If this is an exceptional case under 35 U.S.C. § 285, whether costs, expenses, and/or attorneys' fees should be awarded to General Access and, if so, in what amount.

### B.  Defendant and Intervenor's Statement of its Contested Issues of Fact and Law

7.    Whether T-Mobile has infringed the Asserted Claims of the '383 Patent either literally or under the doctrine of equivalents.

8.    Whether Plaintiff's infringement allegations under the doctrine of equivalents for the '383 Patent are precluded by prosecution history estoppel.[8]

---

[8] *See supra* fn. 2. **General Access's Position:** The Court has already determined that prosecution history estoppel does not preclude General Access's doctrine of equivalents theories. Dkt. 187 at 2. Additionally, the Court stated that "[i]f, having allowed DOE to be a part of the trial, if there is a finding for the plaintiff, based on the doctrine of equivalence, then the Court can, and likely will, take

9. Whether Plaintiff's infringement allegations under the doctrine of equivalents for the '383 Patent ensnare the Uhlik, Barratt '470, and/or RBS 2000 system prior art references.

10. Whether the Asserted Claims of the '383 Patent are invalid.

11. Whether T-Mobile has literally infringed the Asserted Claims of the '477 Patent.

12. Whether T-Mobile's infringement, if any, of the Asserted Claims of the '477 Patent was willful, and if Plaintiff is entitled to enhanced damages.

13. Whether the Asserted Claims of the '477 Patent are invalid.

14. Whether Plaintiff is entitled to damages for the '383 Patent and, if so, the dollar amount adequate to compensate Plaintiff for T-Mobile's alleged infringement of the '383 Patent.

15. Whether Plaintiff is entitled to damages for the '477 Patent and, if so, the dollar amount adequate to compensate Plaintiff for T-Mobile's alleged infringement of the '477 Patent.

16. Whether this is an exceptional case that entitles any party to their attorneys' fees, costs and other appropriate relief and, if so, the amount of attorneys' fees, costs and other relief.

17. Whether Plaintiff is entitled to pre- and post-judgment interest and, if so, in what amount.

18. Whether and which party or parties is/are entitled to costs.

---

up these ensnarement arguments subsequently. . . . And if it's not mooted by the verdict, we can certainly take it up subsequent to the verdict." Pretrial Conference Tr. Volume I 37:21-38:5 (Dec. 17, 2024). The Court did not similarly indicate that T-Mobile would be permitted to re-raise its prosecution history estoppel argument.

**Defendant and Intervenors' Position**: The Court denied Defendant and Intervenors request for an affirmative ruling in their favor on the question of prosecution history estoppel, it did not issue an affirmative ruling in Plaintiff's favor. Further, the Court stated that Defendant and Intervenors' motion on prosecution history estoppel did not warrant a dispositive ruling in part because "there were some underlying disputes that would benefit and require testimony from experts regarding the scope of the prosecution history." Pretrial Conference Tr. Volume I 37:9-18 (Dec. 17, 2024). Defendant and Intervenors reserve the right to re-raise their prosecution history estoppel argument, outside of the presence of the jury.

## VIII.    LIST OF WITNESSES

1.      General Access's trial witness list is attached as Exhibit A to Dkt. 170.

2.      Defendant's and Intervenors' trial witness list is attached as Exhibit B to Dkt. 170.

## IX.    EXHIBIT LISTS

1.      The Parties will file updated exhibits lists by January 20, 2025. *See* Dkt. 187 at 5.

## X.    DEPOSITION DESIGNATIONS

1.      General Access's affirmative deposition designations (including counter designations and all objections) are attached as Exhibit F.

2.      Defendant's and Intervenors' affirmative deposition designations (including counter designations and all objections) are attached as Exhibit G.

## XI.    JURY INSTRUCTIONS AND VERDICT FORM

3.      The Parties' Proposed Final Jury Instructions are attached as Exhibit H.

4.      General Access's Proposed Verdict Form is attached as Exhibit I to Dkt. 170.

5.      Defendant's and Intervenors' Proposed Verdict Form is attached as Exhibit J to Dkt. 170.

## XII.    LIST OF PENDING MOTIONS

### A.    Plaintiff's Pending Motions

The Court has resolved or carried all currently pending Pretrial Motions. *See* Dkt. 187, Order on Pretrial Motions, Motions *In Limine*, and Exhibits.

### B.    Defendant's and Intervenors' Pending Motions

The Court has resolved or carried all currently pending Pretrial Motions. *See* Dkt. 187, Order on Pretrial Motions, Motions *In Limine*, and Exhibits.

## XIII.  LENGTH OF TRIAL

The parties request 11 hours per side for direct, cross, and rebuttal examination. The parties further request 30 minutes per side for voir dire sessions, 30 minutes per side for opening statements, and 40 minutes per side for closing arguments.

## XIV.  MANAGEMENT CONFERENCE

The parties request that their respective pending motions and objections to exhibits and witnesses be heard at the final pretrial conference, as they would directly impact trial.

## XV.  CERTIFICATIONS

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

1.    Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

2.    Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

3.    Each exhibit in the List of Exhibits herein:

   A.    is in existence;

   B.    is numbered; and

   C.    has been disclosed and shown to opposing counsel.

Approved as to form and substance:


Attorneys for Plaintiff(s):        _/s/ Glen E. Summers_____


Attorneys for Defendant(s):     _/s/ John D. Haynes_____

Dated: January 13, 2025                    Respectfully submitted,

*/s/ Glen E. Summers*
Glen E. Summers (CO Bar No. 30635)
LEAD ATTORNEY
John M. Hughes (CO Bar No. 38295)
Nosson D. Knobloch (CO Bar No. 42134)
Giovanni J. Sanchez (CO Bar No. 59696)
Taylor Kelson (CO Bar No. 56910)
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com
john.hughes@bartlitbeck.com
nosson.knobloch@bartlitbeck.com
giovanni.sanchez@bartlitbeck.com
taylor.kelson@bartlitbeck.com

Michael J. Valaik (IL Bar No. 6276086)
Luke C. Beasley (IL Bar No. 6334359)
Meg E. Fasulo (IL Bar No. 6320595)
**BARTLIT BECK LLP**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
michael.valaik@bartlitbeck.com
luke.beasley@bartlitbeck.com
meg.fasulo@bartlitbeck.com

Andrea L. Fair (TX Bar No. 24078488)
Charles Everingham IV (TX Bar No. 00787447)
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy.
Longview, TX 75604
Telephone: (903) 757-6400
andrea@millerfairhenry.com
ce@millerfairhenry.com

*Attorneys for Plaintiff General Access Solutions, Ltd.*

26

Dated: January 13, 2025

*/s/ John D. Haynes*
John D. Haynes (GA Bar No. 340599)
Wesley C. Achey (GA Bar No. 141284)
Michael C. Deane (GA Bar No. 497195)
John.Haynes@alston.com
Wes.Achey@alston.com
Michael.Deane@alston.com
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Mary I. Riolo (NC Bar No. 59644)
Mary.Riolo@alston.com
**ALSTON & BIRD LLP**
Vantage South End
1120 S. Tryon Street
Suite 300
Charlotte, NC 28203
Telephone: (704) 444-1000
Facsimile: (704) 444-1111

Thomas W. Davison (FL Bar No. 55687)
**ALSTON & BIRD LLP**
950 F St NW
Washington, DC 20004
Phone: (202) 239-3300
Fax: 202.239.3333
Email: tom.davison@alston.com

Melissa R. Smith (State Bar No. 24001351)
Andrew Thompson ("Tom") Gorham
(State Bar No. 24012715)
melissa@gillamsmithlaw.com
tom@gillamsmithlaw.com
**GILLAM & SMITH LLP**
102 N. College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257

*Attorneys for Defendant and Intervenors*

27

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on January 13, 2025, which will send a notification of such filing to all counsel of record.

*/s/ Glen E. Summers*

Glen E. Summers