# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

GENERAL ACCESS SOLUTIONS, LTD.,

       Plaintiff,

   v.

T-MOBILE USA, INC.,

       Defendant,

ERICSSON INC.,

       Intervenor-Defendant,

NOKIA OF AMERICA CORP.,

       Intervenor-Defendant

Case No. 2:23-cv-00158 JRG

JURY TRIAL DEMANDED

## [PROPOSED] FINAL JURY INSTRUCTIONS[1]

---

[1] Submissions that are agreed to by both General Access and T-Mobile, Ericsson, and Nokia are not highlighted.

Submissions proposed by General Access that are not agreed to by T-Mobile, Ericsson, and Nokia are bracketed and highlighted in teal. Submissions proposed by T-Mobile, Ericsson, and Nokia that are not agreed to by General Access are bracketed and highlighted in yellow.

The parties reserve the right to amend these instructions and proposals prior to the Court's charge conference, and nothing within these proposed instructions should be construed as a waiver of the parties' positions, arguments, or objections to the proposed instructions.

## 1.1. INTRODUCTION

Ladies and gentlemen of the jury, you have now heard all the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so. My preference is that you listen carefully while I give them to you orally, understanding you'll have your own written copy to review when you get to the jury room.

## 1.2. STATEMENTS OF THE COURT AND COUNSEL

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

## 1.3. VERDICT FORM AND RELATED PROCEDURE

A verdict form has been prepared for you. You will take this verdict form to the jury room when you retire to deliberate. When you have reached a unanimous agreement as to the questions in the verdict form, you will have your foreperson fill in those unanimous answers in the blanks provided in the verdict form. Then your foreperson will sign the verdict form, date it, and then notify the Court security officer that you have reached a verdict. You should answer the questions in the verdict form from the facts as you find them to be. You should not decide who you think should win this case and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

## 2.1. CREDIBILITY OF WITNESSES AND EVIDENCE

In deciding whether any facts have been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, you may consider all the exhibits received and admitted into evidence over the course of the trial, regardless of who may have introduced that exhibit or those exhibits, and you may consider the stipulations of the parties.

You, the jury, are the sole judges of the credibility of all the witnesses and the weight and effect to give to all the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony considered in the light of the circumstances, including whether the witness has been contradicted by other evidence or made statements at other times and places contrary to what he or she said on the witness stand.

You must give the testimony of each witness the amount of credibility that you think it deserves. You must also keep in mind that a simple mistake does not mean the witness is not telling the truth as he or she remembers it. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

## 2.2. OBJECTIONS OF COUNSEL

As I have told you, the attorneys in this case are acting as advocates for their clients, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate

about what the witness would have said if he or she had been permitted by the Court to answer the question. On the other hand, if the objection was overruled by the Court, then you must treat the answer to that question just as you would if no objection had been made, like any other question and answer. Allowing testimony or other evidence to be introduced over the objection of an attorney is not an indication that the Court has any opinion as to the weight or effect of that evidence. That decision is yours and yours alone as the jury.

At times during the trial, it was necessary for the Court to talk with the lawyers outside of your hearing either by calling a recess and talking to them while you were outside of the courtroom, or by calling them to the bench and talking to them outside of your hearing. This happened because during trials things arise that do not involve the jury. You should not speculate about what was said during such discussions that took place outside of your hearing or presence.

### 2.3. DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct evidence or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

### 2.4. STIPULATED FACTS

The parties in this case have stipulated or agreed to some certain facts in this case. When the lawyers on both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept that stipulation as evidence and regard that fact as proven. These facts are not disputed between the parties, and they have stipulated as follows:

1.  General Access is a domestic limited partnership organized under the laws of the State of Texas with its principal place of business in Dallas, TX.

2.  T-Mobile USA, Inc. is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

3.  Ericsson is a Delaware corporation with its principal place of business at 6300 Legacy Drive, Plano, TX 75024.

4.  Nokia is a Delaware corporation with its principal place of business at 600 Mountain Avenue, Suite 700, Murray Hill, NJ 07974.

5.  The '477 Patent is titled "Apparatus and Method for Creating Signal and Profiles at a Receiving Station." It claims priority to 17 provisional applications dated January 19, 2001 to March 5, 2001, and was issued by the US Patent Office on September 20, 2005. The '477 Patent expired on June 30, 2023.

6.  The named inventors of the '477 Patent are Paul F. Struhsaker and Russell C. McKown.

7.  The '383 Patent is titled "Apparatus and Associated Method for Operating upon Data Signals Received at a Receiving Station of a Fixed Wireless Access Communication System." It claims priority to a provisional application dated January 19, 2001, and was issued by the US Patent Office on August 29, 2006. The '383 Patent expired on March 6, 2023.

8.  The named inventors of the '383 Patent are Paul F. Struhsaker and Russell C. McKown.

9.  General Access is the assignee and owner of all right, title and interest in and to the '477 and '383 Patents, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of those patents.

10. General Access filed this action on April 6, 2023.

## 2.5. TESTIMONY BY DEPOSITION

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented under oath in the form of a deposition. Before the trial began, attorneys representing the parties in this case questioned these deposition witnesses under oath. A court reporter was present and recorded the witness's sworn testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand. Accordingly, you should determine the credibility and importance of deposition testimony to the very best of your ability, just as if the witness had testified in open court.

## 2.6. REASONABLE INFERENCES FROM EVIDENCE

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, and said another way, you may make deductions and you may reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in this case. However, you should not base your decisions on any evidence not presented by the parties during this case, including your own personal experience with any of the parties, products, or services that are at issue in this case.

## 2.7. SUFFICIENCY OF TESTIMONY

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary if, after considering all of the evidence, you believe that single witness.

## 2.8. EXPERT WITNESSES

When knowledge of a technical or otherwise specialized subject may be helpful to the jury, a person who has special training and experience in that technical or specialized field—called an expert witness—is permitted to state his or her opinions on those matters. However, you are not required to accept any expert witness's opinion. As with all the witnesses, it is solely up to you to decide who you believe and who you do not believe, whether or not to accept an opinion given, and whether to rely on it or how much to rely upon it.

## 2.9. DEMONSTRATIVES

Certain exhibits have been shown to you during the trial that were illustrations. We call these types of exhibits "demonstrative exhibits" or sometimes simply "demonstratives." Demonstrative exhibits are a party's depiction, picture, or model to describe something involved in the trial. If your recollection of the evidence differs from these demonstratives, you should rely on your recollection of the evidence. Demonstrative exhibits are sometimes called jury aides. Demonstratives themselves are not evidence, but the witness's testimony concerning a demonstrative exhibit is evidence. These demonstratives will not be available for you to review during your deliberations.

## 2.10. BURDENS OF PROOF

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof. The burden of proof in this case is on Plaintiff for some issues and on Defendant for other issues. There are two burdens of proof that you will apply in this case. They are the preponderance of the evidence and clear and convincing evidence.

The Plaintiff in this case, General Access Solutions, Ltd., who you have heard referred to collectively throughout the trial as "General Access" or "Plaintiff," has the burden of proving patent infringement by a preponderance of the evidence. General Access also has the burden of proving damages for any patent infringement by a preponderance of the evidence. A preponderance of the

7

evidence means the evidence that persuades you that their claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

As you have heard, the Defendant in this case is T-Mobile USA, Inc. In addition to T-Mobile, Ericsson and Nokia have intervened in this case on the side of T-Mobile, and they intervened after the case was filed. Technically, this means that Ericsson and Nokia are known as "Intervenors." As Intervenors, Ericsson and Nokia are working cooperatively with T-Mobile to defend against the allegations brought by General Access, which have been brought against T-Mobile.

T-Mobile may be referred to as "Defendant," while Ericsson and Nokia may be referred to as "Intervenors." Together, Defendant and Intervenors have the burden of proving invalidity of Plaintiff's patent claims by clear and convincing evidence.

Clear and convincing evidence means evidence that produces, in your mind, an abiding conviction that the truth of the party's factual contentions is highly probable. It is evidence so clear, direct, and weighty and convincing as to enable you to come to a clear conviction without hesitancy.

As I have previously told you, these two burdens of proof are not to be confused with the separate and different burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case and which has no application whatsoever in a civil case such as this. Beyond a reasonable doubt is a higher burden of proof than both the clear and convincing evidence and the preponderance of the evidence standards.

### 3. CONTENTIONS OF THE PARTIES

As I did at the beginning of the case, I will first give you a summary of each side's contentions in this case, and I will then provide you with detailed instructions on what each side must prove in order to win on each of its contentions.

As I previously told you, this is an action for patent infringement. Remember, there are two "Patents-in-Suit" or "Asserted Patents": U.S. Patent No. 6,947,477, which you have heard referred to

as the '477 Patent, and U.S. Patent No. 7,099,383, which you have heard referred to as the '383 Patent. General Access contends that Defendants infringe Claims 1, 3, 4, 6, and 7 of the '477 Patent; and Claims 5-10, 13, and 16 of the '383 Patent. These are the Asserted Claims.

General Access contends that T-Mobile has infringed the Asserted Claims of the '477 Patent and '383 Patent by making, using, offering for sale, selling, or importing in the United States certain base stations used in T-Mobile's 4G and 5G networks, including T-Mobile's TDD and FDD networks (the "Accused Products").

General Access contends that it is entitled to money damages in the form of a reasonable royalty for T-Mobile's infringement. General Access has the burden to prove both infringement and damages by a preponderance of the evidence.

T-Mobile denies that it infringes any of the Asserted Claims. Intervenors deny that their Accused Products infringe any of the Asserted Claims. T-Mobile denies that it makes, uses, offers for sale, sells, or imports into the United States any Accused Product that infringes any of the Asserted Claims. T-Mobile and Intervenors also deny that General Access is entitled to any money damages.

Defendant and Intervenors contend that the Asserted Claims of the '477 Patent and '383 Patent are invalid for anticipation, obviousness, lack of adequate written description, and for lack of enablement. Defendant and Intervenors have the burden to prove invalidity by clear and convincing evidence.

Invalidity and infringement are separate and distinct issues. Your job is to decide whether Defendant has infringed the Asserted Claims and whether any of the Asserted Claims are invalid. If you decide that any Asserted Claim has been infringed and is not invalid, you will then need to decide the amount of money damages, if any, to be awarded to General Access to compensate it for the infringement of any such Asserted Claims.

## 4.1. THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of the patent claims. The patent claims are those numbered sentences contained at the end of the patent. The claims are important because it is the words of the claims that define what the claim covers. The figures and the text in the rest of the patent provide a description and/or examples of the invention and they provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage. [Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.][2] Therefore, what a patent covers depends, in turn, upon what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim or whether the claim is invalid or not eligible for patent protection. The law says it is my role as the Judge to define the terms of the claims and it is your role as the jury to apply my definitions to the issues that you are asked to decide in this case.

Therefore, as I have explained to you at the beginning of the case, I have already determined the meaning of the claims and I have provided you with my definitions of certain claim terms, and those definitions are in your juror notebooks. I incorporate those definitions by reference into my jury instructions. You must accept my definitions of these words from the claims as being correct. It is your job to take the definitions that I have provided and apply them to the issues that you are deciding, including the issues of infringement, invalidity, and patent eligibility.

---

[2] **General Access's Position**: This language does not seek to confuse the jury, and rather clarifies the independent significance of each patent claim. This is the Court's standard instruction on this topic. *See Koninklijke KPN N.V. v. Telefonaktiebolaget LM*, 21-cv-113-JRG (E.D. Tex.), Dkt. 254 at 16:24; *Constellation Designs, LLC v. LG Electronics, Inc.*, 21-cv-448 (E.D. Tex.), Dkt. 309-10 at 31:13-14; *Finesse Wireless LLC v. AT&T Mobility LLC*, 21-cv-316 (E.D. Tex.), Dkt. 286 at 15:6-7.

**Defendant's and Intervenors' Position**: This language is not included in the Federal Circuit Bar Association's model patent instructions and seeks to confuse the jury.

For claim terms that I have not construed or defined, you are to use the plain and ordinary meaning of that term as it would have been understood by a person of ordinary skill in the art at the time of the invention.

[You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and the definitions that I have given you and that are in your juror notebooks. For claim limitations that I have not construed, that is, limitations that I have not interpreted or defined, you are to use the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of the technology of the patent at the time of the alleged invention.][3]

### 4.2. HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers. A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. Claims may describe apparatuses, devices, or products such as machines. Such claims are called apparatus claims. Claims may also describe processes or methods for making or using a product. Those claims are called method claims. If a product satisfies each of the requirements of an apparatus claim, or if a product [or method][4] performs each of the steps of a method claim, then it is said to be covered by the claim. There can be several claims in a patent, and each claim may be narrower or broader than any other

---

[3] **General Access's Position**: This instruction is neither redundant nor inconsistent, and it is essential to address the key point that the jury should disregard evidence that contradicts the Court's claim constructions. This is consistent with the Court's standard instruction on this matter. *See Koninklijke KPN N.V. v. Telefonaktiebolaget LM*, 21-cv-113-JRG (E.D. Tex.), Dkt. 254 at 18:9-11; *Finesse Wireless LLC v. AT&T Mobility LLC*, 21-cv-316 (E.D. Tex.), Dkt. 286 at 16:1-3; *Seagen, Inc. v. Daiichi Sankyo Co.*, 20-cv-337 (E.D. Tex.), Dkt. 378 at 68:2-8.

**Defendant's and Intervenors' Position**: This paragraph is duplicative in parts and inconsistent with the prior instructions in part.

[4] *See infra*, fn. 5

claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis.

In patent law, the requirements of a claim are often referred to as the claim elements or the claim limitations. When a product meets all the requirements of a claim, the claim is said to cover the product, and that product is said to fall within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If the product is not covered by the claim, the product cannot infringe that claim. [When a process or method meets all requirements of a claim, the claim is said to cover the process or method, and that process or method is said to fall within the scope of that claim. In other words, a claim covers a process or method where each of the claim elements or limitations is present in that process or method. If a process or method is missing even one limitation or element of a claim, the process or method is not covered by the claim. If the process or method is not covered by the claim, the product cannot infringe that claim.][5]

The beginning portion or preamble of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means including but not limited to or containing but not limited to. When "comprising" is used in the preamble of a claim, if you decide that an accused product [or method][6] includes all the elements or requirements of that claim, the claim is infringed. That is

---

[5] **Defendant's and Intervenors' Position:** This addition is specific to method/process claims. The proposed jury instructions otherwise lack a proper instruction as to what a method/process claim is. Given General Access's infringement assertions concerning method/process claims, such an instruction is necessary.

**General Access's Position:** The instruction preceding the proposed insertion concerns "[w]hen a product meets all the requirements of a claim," and is not specific to apparatus or method claims. The proposed insertion is therefore unnecessary, redundant, and potentially confusing.

[6] **Defendant's and Intervenors' Position:** *see supra* fn. 5.

true even if the accused product [or method][7] contains additional elements or can perform additional steps. [A claim's use of the "comprising" term does not change the requirement that the accused product must include each and every claim limitation to be infringing.][8] [For example, a claim to a table comprising a table top, legs, and glue, would be infringed by a table that includes a table top, legs, and glue, even if the table also includes other structures, such as leaves to expand the size of the table top or wheels to go on the ends of the legs.][9]

## 4.3. INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

Claim 1 of the '477 Patent is an independent claim, and Claims 3, 4, 6, and 7 of the '477 Patent are dependent claims that depend upon Claim 1.

Claims 5 and 16 of the '383 Patent are independent claims, and Claims 6-10 and 13 of the '383 Patent are dependent claims that depend upon Claim 5.

---

[7] **Defendant's and Intervenors' Position:** *see supra* fn. 5.

[8] **Defendant's and Intervenors' Position:** Further clarifies that the use of "comprising" does not allow the jury to ignore express claim terms, and that the jury follows Federal Circuit precedent. *See, e.g., Raytheon Co. v. Sony Corp.*, 727 F. App'x 662, 672 (Fed. Cir. 2018) ("A 'comprising' transition . . . while permitting additional elements not required by a claim, does not remove the limitations that are present.").

**General Access's Position**: This instruction is duplicative of the instruction provided two sentences previously, explaining that in order to find infringement of a "comprising" claim, the jury must find "that an accused product [or method] includes all the elements or requirements of that claim." Defendants' addition is unnecessary and potentially confusing.

[9] **General Access's Position**: This has long been the Court's standard example to explain the meaning of a "comprising" claim in understandable terms. *See e.g. Constellation Designs, LLC v. LG Electronics, Inc.*, 21-cv-448 (E.D. Tex.), Dkt. 309-10 at 34:6-17; *Finesse Wireless LLC v. AT&T Mobility LLC*, 21-cv-316 (E.D. Tex.), Dkt. 286 at 18:10-17; *Koninklijke KPN N.V. v. Telefonaktiebolaget LM*, 21-cv-113-JRG (E.D. Tex.), Dkt. 254 at 20:6-11.

**Defendant's and Intervenor's Position**: This example is divorced from the facts of this case, does not help the jury, and is confusing.

An "independent claim" sets forth all the requirements that must be met in order to be covered by that claim; thus, it is not necessary to look at any other claim to determine what an independent claim covers.

However, a "dependent claim" does not itself recite all the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim is said to "depend" upon another claim. A dependent claim incorporates all the requirements of the claim(s) to which it refers or on which it depends. The dependent claim then adds its own additional requirements. So to determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers or on which it depends. A product that meets all the requirements of both the dependent claim and the additional claim(s) to which it refers or on which it depends is covered by that dependent claim.

## 5.1. INTRODUCTION TO INFRINGEMENT

If a person or corporation makes, uses, sells, or offers to sell within the United States or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare the language of the asserted patent claims, as I have construed each of them for you, to the accused products and determine from that comparison whether or not there is infringement. This is the only correct comparison.

You should not compare the accused products with any specific examples set out in the patent in reaching your decision on infringement. In deciding infringement, again, the only correct comparison is between the accused products and the elements or limitations of the Asserted Claims as the Court has construed those claims. You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal

14

requirements for infringement, and the evidence presented to you by both sides, the competing parties in this case.

## 5.2. DIRECT INFRINGEMENT

I will now instruct you on the specific rules that you must follow to determine whether General Access has proven that Defendants have infringed one or more of the patent claims involved in this case.

Here, General Access asserts that T-Mobile has directly infringed the Asserted Claims of the patents-in-suit by making, using, offering for sale, selling, and/or importing the Accused Products in the United States. A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringing the claim. A patent may also be directly infringed even though the accused direct infringer believed in good faith that what it did was not infringing the patent. Infringement does not require proof that a party copied its product from the Asserted Claims.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another claim. There may also be infringement as to one patent, but not infringement as to another patent. However, if you find that an independent claim on which other claims depend is not infringed, then there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide separately whether the product meets the additional requirements of any dependent claims that depend on or refer to that independent claim. A dependent claim includes all the requirements of any claim to which it refers or on which it depends plus its own additional requirements within the dependent claim.

You must determine separately for each asserted claim and each asserted patent whether or not there is infringement by each accused product. In order to prove direct infringement of a patent

claim, General Access must show by a preponderance of the evidence that [the accused products include each and every limitation or element of the claim][10] [Defendant made, used, sold, offered for sale within, or imported into the United States a product or method that meets all of the requirements of a claim literally][11]. In determining whether an accused product directly infringes a patent claim in this case, you must compare the accused product with each and every one of the requirements or limitations of that claim to determine whether the accused product contains each and every requirement or limitation recited in the claim. [If the accused product does not contain one or more of the requirements or limitations recited in the claim, then the accused product does not literally infringe that claim.][12] [If an accused product or method omits any element recited in a claim, then you must find that the product or method in question does not literally infringe that claim.][13]

As I have told you earlier, there can be apparatus claims and method claims. Direct infringement of a method claim occurs when all the steps of a claimed method are performed. An

---

[10] **General Access's Position:** Recitation of the full language of 35 U.S.C. § 271(a) is needlessly verbose and potentially confusing. The requirement that accused products were made, used, offered for sale, or sold within the United States is not the primary subject of this section, and there is no dispute that the accused products *were* made, used, offered for sale, or sold within the United States.

[11] **Defendant's and Intervenors' Position:** Recites language of 35 U.S.C. § 271(a).

[12] **General Access's Position:** General Access's proposal maintains consistent phrasing throughout the paragraph. It is consistent with the standard instruction in this District as well as with the AIPLA model instructions. *See, e.g.*, *Papst Licensing GmbH v. Samsung Elec. Co.*, No. 18-cv-388 (E.D. Tex.), Dkt. 291 at 15; *Elbit Sys. v. Hughes Network Sys.*, No. 15-cv-37 (E.D. Tex.), Dkt. 485 at 13; 2024 AIPLA Model Patent Jury Instructions at ¶ 3.2.

[13] **Defendant's and Intervenors' Position:** Further elaborates prior language provided by General Access and mirrors that for instructions directly above regarding what is needed to find infringement.

accused product infringes an apparatus claim if it [is reasonably capable of satisfying][14] [satisfies][15] all of the claim elements, even though it may also be capable of non-infringing modes of operation.

A claim requirement is met if it exists in an accused product [or method][16] just as it is described in the claim language, either as I have explained or construed that language for you, or if I did not explain or construe it, as it would have been understood by its plain and ordinary meaning to one of ordinary skill in the art. If an accused product [or method][17] omits any element recited in a claim, then you must find that particular product [or method][18] does not infringe that claim.

[So long as an Accused Product meets each and every one of the claim requirements of a "comprising claim", infringement of that claim is shown, even if the product contains additional features or elements not required by the claims.][19]

## 5.3. THE DOCTRINE OF EQUIVALENTS

For the Asserted Claims of the '383 Patent, if you do not find that each element or limitation of a claim is literally met, then you may still find infringement if you find each element is met under the doctrine of equivalents. This instruction does not apply to the Asserted Claims of the '477 Patent.

---

[14] **General Access's Position**: General Access's proposal correctly articulates the standard and reflects the standard instruction in this District. *See, e.g., Constellation Designs, LLC v. LG Electronics, Inc.,* 21-cv-448 (E.D. Tex.), Dkt. 309-10 at 37:2-4; *Finesse Wireless LLC v. AT&T Mobility LLC,* 21-cv-316 (E.D. Tex.), Dkt. 286 at 22:12-15; *Seagen, Inc. v. Daiichi Sankyo Co..,* 20-cv-337 (E.D. Tex.), Dkt. 378 at 73:23–74:1.

[15] **Defendant's and Intervenors' Position:** General Access's proposed "reasonably capable of satisfying" language is contrary to infringement standards. T-Mobile's and Intervenors' proposal is proper and reflects the appropriate instruction in this District. *See, e.g., Innovation Sciences, LLC v. Amazon.com, Inc., et al.,* No. 4:18-cv-474, Dkt. 845 at 13-14.

[16] **Defendant's and Intervenors' Position:** *see supra* fn. 5.

[17] **Defendant's and Intervenors' Position:** *see supra* fn. 5.

[18] **Defendant's and Intervenors' Position:** *see supra* fn. 5.

[19] **General Access's Position**: This language is *verbatim* of the instruction provided in *Verizon. See Verizon,* Trial Tr. (Vol. 5), at 1259:12-16.

**Defendant's and Intervenors' Position**: This instruction is duplicative.

Under the doctrine of equivalents, an Accused Product infringes a claim if it contains elements or limitations corresponding to each and every element or limitation of the claim that it is equivalent to, even though not literally met by, an Accused Product [or method][20]. You may find that an Accused Product [or method][21] is equivalent to an element or limitation of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that an Accused Product: (1) performs substantially the same function; (2) in substantially the same way; (3) to achieve substantially the same result as the element or limitation of the claim. In order to prove infringement by "equivalents," General Access must prove the equivalency of the structure [or action] to the claim element by a preponderance of the evidence. Thus, each element of a claim must be met by the accused product [or method] either literally or under the doctrine of equivalents for you to find infringement.

Known interchangeability of the claim element and the proposed equivalent is a factor that can support a finding of infringement under the doctrine of equivalents. In order for the structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient.

In order to prove direct infringement under the "doctrine of equivalents," General Access must prove by a preponderance of the evidence that for each claim element or limitation not literally present in the Accused Products, the equivalent of that claim element or limitation is present.

### 5.4. WILLFUL INFRINGEMENT

General Access also contends that T-Mobile willfully infringed the Asserted Claims of the '477 Patent. If you decide that T-Mobile has infringed the Asserted Claims of the '477 Patent, you must go

---

[20] **Defendant's and Intervenors' Position:** *see supra* fn. 5.

[21] **Defendant's and Intervenors' Position:** *see supra* fn. 5.

on to address the issue of whether or not that infringement was willful. [Willfulness requires you to determine whether General Access proved that it is more likely than not that T-Mobile knew of General Access's patent and that the infringement by T-Mobile was intentional.][22] General Access has the burden of proving willful infringement by a preponderance of the evidence. You may not determine that the infringement was willful just because T-Mobile] was aware of an Asserted Claim of the '477 Patent. You may find that T-Mobile willfully infringed only if you find that T-Mobile deliberately or intentionally infringed the Asserted Claim.

[You may find that T-Mobile actions were willful if T-Mobile acted in reckless or callous disregard of, or with indifference to, the rights of General Access. A Defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position.][23]

To determine whether T-Mobile acted willfully, consider all the facts and assess T-Mobile knowledge at the time of the challenged conduct. Facts that may be considered include whether or

---

[22] **General Access's Position**: This insertion is duplicative of the following sentence regarding General Access's burden, as well as of General Access's subsequent proposal which reflects the Court's standard instruction.

**Defendant's and Intervenors' Position**: This instruction introduces the knowledge requirement for willfulness, and tracks with the Federal Patent Bard Model Instruction 3.10.

[23] **General Access's Position**: This instruction does not imply that "T-Mobile could willfully infringe without actual knowledge of the patent," as Defendants suggest. For infringement to be "known to" T-Mobile or "apparent to a reasonable person" in T-Mobile's position, T-Mobile must necessarily have known of the patent. This phrasing reflects the Court's standard instruction. *Koninklijke KPN N.V. v. Telefonaktiebolaget LM*, 21-cv-113-JRG (E.D. Tex.), Dkt. 254 at 27:17-20; *Constellation Designs, LLC v. LG Electronics, Inc.*, 21-cv-448 (E.D. Tex.), Dkt. 309-10 at 40:23-41:4.

**Defendant's and Intervenors' Position**: The standard for willfulness is deliberate or intentional infringement. *SRI Int'l, Inc. v. Cisco Sys.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). This instruction is divorced from the requirement that the alleged infringer knew of the patent before engaging in the alleged acts of infringement. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1296 (Fed. Cir. 2023). This instruction is thus confusing to the jury as it implies that T-Mobile could willfully infringe without actual knowledge of the patent.

not T-Mobile reasonably believed it did not infringe or that the Asserted Claims of the '477 Patents were invalid.

Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during this trial. Knowledge of the existence of a patent can be relevant to the question of willful infringement. If you decide that any infringement was willful, that decision should not affect any damages award you give. Let me remind you that I will take willfulness, if any, into account later.

## 6.1. INTRODUCTION TO INVALIDITY

I will now instruct you on the rules you must follow in deciding whether or not Defendant and Intervenors have proven that any Asserted Claims of the Asserted Patents are invalid. Patent invalidity is a defense to patent infringement. An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you have heard referred to as the PTO or the Patent Office, acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents.

In order to overcome this presumption, Defendant and Intervenors must establish by clear and convincing evidence that the claim is invalid. Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each claim whether that claim is invalid. If one claim of a patent is invalid, that does not mean that any other claim is necessarily invalid. Claims are construed in the same way for determining infringement as for determining invalidity and ineligibility, and you must apply the claim language consistently and in the same manner for the issues of infringement and for the issues of invalidity. In making your determination as to invalidity, you should consider each claim separately.

## 6.2. PRIOR ART

In patent law, a previous device, system, method, publication, or patent that predates the claimed invention is generally called "prior art." Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. Prior art may be authored or created by anyone. An item of prior art may be called a "prior art reference." It is Defendant's and Intervenors' burden in this case to prove by clear and convincing evidence that a particular reference or system in fact qualifies as prior art. In evaluating the prior art to determine whether any invalidity defense has been proven by clear and convincing evidence, you may consider whether that prior art was or was not before the Patent Office.

[In this case, Defendant and Intervenors contend that the Asserted Claims of the Asserted Patents are invalid as [anticipated/obvious] in view of the following prior art:

[to be filled in at time of final exchange before trial]

Defendant and Intervenors contend that the prior art references discussed earlier qualify as printed publications or were in public use before the priority dates of the Asserted Patents.

A printed publication must have been maintained in some tangible form, such as printed pages, typewritten pages, internet publication, or photocopies, and must have been sufficiently accessible to persons interested in the subject matter of its contents.

Prior art references that were in public use or on sale must have been used, offered for sale, or otherwise available to the public.

Finally, Prior art also includes the knowledge or use of an invention by a person of ordinary skill in the art in the United States at the time of the invention. In this case, prior art may include any of the following items:

21

- Any patent that issued or printed publication that published anywhere in the world before the priority date or effective filing date of an Asserted Patent;

- Any patent that issued or any printed publication that published anywhere in the world more than one year before the application for the asserted patents were filed in the United States; and

- Any issued patent or published patent application that was filed in the United States by someone other than the inventors of the asserted patents, before the priority date or effective filing date of an Asserted Patent][24]

## 6.3. PRIORITY DATE

When considering whether a particular reference predates a particular Asserted Patent—and is, therefore, prior art as to that patent—the relevant date is called the patent's "priority date."

The priority date of the Asserted Patents is January 19, 2001.

## 6.4 ANTICIPATION

In order for someone to be entitled to a patent, the invention must be "new". In general, inventions are "new" when the identical method or apparatus has not been used or disclosed before.

Defendant and Intervenors contend that the Asserted Claims of the '477 and '383 Patent are invalid because the claimed inventions are not "new." In other words, Defendant and Intervenors contend that the patents are "anticipated" by prior art. Anticipation requires that all of the

---

[24] **Defendant's and Intervenors' Position:** This Court has included a list of presented prior art, including obviousness combinations, in its instructions. *See, e.g., SynQor Inc. v. Vicor Corp.*, No. 2:14-cv-00287-RWS-JBB, Dkt. 737 at 21 (E.D. Tex. Oct. 26, 2022). The remainder of Defendants' proposal addresses public availability, which, assuming the jury hears testimony regarding public availability, an instruction on that issue will help them resolve the dispute.

**General Access's Position:** Defendants' proposed instruction serves as an improper summary of Defendants' invalidity contentions, and is entirely duplicative of the subsequent detailed instruction on each invalidity allegation. Defendants' proposal also goes far beyond this Court's standard Prior Art instruction.

requirements of a patent claim be disclosed in a single prior art reference. Also, the single prior art reference must disclose all elements of the claim arranged or combined in the same way as in the claim—as the claim has been construed or interpreted by the Court. Defendant and Intervenors must prove by clear and convincing evidence that an asserted patent claim was anticipated by the prior art reference. Anticipation must be determined on a claim-by-claim basis.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied, to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention. Keep in mind that Defendant and Intervenors may not establish anticipation by arguing that the Accused Products practice the prior art, or by comparing the Accused Products to a prior art reference. An item of prior art may anticipate without explicitly disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference.

## 6.5. OBVIOUSNESS

Defendant and Intervenors also contend that the Asserted Claims of the '477 and '383 Patent are invalid as being obvious. Even though an invention may not have been identically disclosed or identically described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of the technology of the patent at the time the invention was made. Defendant and Intervenors have the burden of establishing obviousness by showing by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the technology of the patent.

In determining whether the claimed invention was obvious, you must consider the level of ordinary skill in the field that someone would have had at the time the invention was made, the scope

23

and content of the prior art, and any differences between the prior art and the claimed invention. You should keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on the building blocks of prior art. [The skill of the actual inventor is not necessarily relevant because inventors may possess something that distinguishes them from persons having ordinary skill in the art.][25]

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Further, teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like a puzzle. The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way the claimed invention does, taking into account such factors as:

---

[25] **General Access' Position**: The import of this instruction—that they jury may, but need not necessarily, consider the skill of the actual inventor—is precisely correct. The Court is given this instruction in previous cases. *Finesse Wireless LLC v. AT&T Mobility LLC*, 21-cv-316 (E.D. Tex.), Dkt. 286 at 29:8-11; *Ollnova Techs. v. Econee Techs.*, 22-cv-72-JRG (E.D. Tex.), Final Jury Instructions at 18. **Defendant's and Intervenors' Position:** This instruction is confusing, as the phrase "not necessarily relevant" gives no guidance to the jury on how to use the evidence.

11. Whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

12. Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

13. Whether the prior art teaches or suggests to the desirability of combining elements in the claimed invention;

14. Whether the prior art teaches away from combining elements in the claimed invention;

15. Whether it would have been obvious to try the combination of elements in the claimed invention, such as when there is a design need or market pressure to solve a problem, and there are a finite number of identified predictable solutions; and

16. Whether the change resulted more from design incentives or other market forces.

To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight. Consider only what was known at the time of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned by the teachings of the patents-in-suit.

In making these assessments, you should take into account any objective evidence, sometimes called secondary considerations, that may have existed at the time of the invention and afterwards that shed light on the obviousness or non-obviousness of the claimed invention. The following are possible

secondary considerations, but it is up to you to decide whether secondary considerations of [obviousness or][26] non-obviousness exist at all:

1. Whether the invention was commercially successful as the result of the merits of the claimed inventions rather than the result of design needs or market pressure, advertising, or similar activities;

2. Whether the invention satisfied a long-felt need;

3. Whether the inventor proceeded contrary to accepted wisdom in the field;

4. Whether others tried but failed to solve the problem solved by the claimed invention;

5. Whether others invented the invention at roughly the same time;

6. Whether others copied the claimed invention;

7. Whether others accepted licenses under the patents-in-suit because of the merits of the claimed invention;

8. Whether the claimed invention achieved unexpected results;

9. Whether others in the field praised the claimed invention;

10. Whether there were changes or related technologies or market needs contemporaneous with the invention; and

11. Whether persons having ordinary skill in the art in the field of the invention expressed surprise or disbelief regarding the invention.

These factors are relevant only if there was a connection or a nexus between the factors and what differentiates the claimed invention from the prior art. General Access has the burden of

---

[26] **General Access's Position**: This addition would confuse the jury. The factors listed all support a finding of non-obviousness, but Defendants' edit suggests that the factors instead support a finding of obviousness.

**Defendant's and Intervenors' Position**: This edit aligns this sentence with the previous one, which discusses secondary considerations of obviousness and non-obviousness.

establishing this connection or nexus. Moreover, even if you conclude that some of the above indicators of objective evidence have been established, those factors should be considered along with all the other evidence in the case in determining whether Defendant and Intervenors have proven that the claimed invention would have been obvious.

### [**5.1** / **6.6**][27].    PERSON OF ORDINARY SKILL IN THE ART

I have referred to a person of ordinary skill in the field of the invention or a person of ordinary skill in the art. As I mentioned earlier, a person of ordinary skill in the art is a hypothetical person who is presumed to have known all of the relevant prior art that was available to the public**[, or publicly in use]**[28] at the time of the claimed invention. In deciding the level of ordinary skill in the field, you should consider all the evidence introduced at trial, including but not limited to:

---

[27] The parties agree on the content of this instruction. The parties disagree about where it should be in the sequence of instructions.

**General Access's Position:** This instruction should fall under the "Invalidity" section and should follow the instruction on Obviousness. This is the first section of the instructions in which the concept of a person of ordinary skill in the art bears directly on a question the jury is asked to decide.

**Defendant's and Intervenors' Position:** This Court has previously entered jury instructions where the section discuss the "person of ordinary skill in the art" precedes the infringement section. *See Correct Transmission, LLC v. Nokia Corp., et al.*, no. 2:22-cv-343-JRG (E.D. Tex.), Trial Tr. (Vol. 5) at 1244:15-1245:1.

[28] **General Access's Position:** With respect to the RBS2000, there is a dispute regarding what aspects and functionality of that system were available to the public prior to the priority date. It is thus important for the jury to understand that functionality of the RBS2000 corresponding to each element of each Asserted Claim must have been publicly disclosed in order to be potentially invalidating. "[B]eing 'accessible to the public' still requires public availability; secret or confidential third-party uses do not invalidate later-filed patents." *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013).

Defendants' citation to *Lockwood* is inapposite. The holding Defendants cite concerned "evidence showing that other, *unclaimed* aspects of the [alleged prior art] system were not publicly available." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997).

**Defendant's and Intervenors' Position:** The additional language expands on General Access's proposed language, to further include the fact that the RBS2000 qualifies as available prior art if publicly used. *See* 35 U.S.C. 102; *see also See Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997) (holding that an invention may be "used by the public" even though the public does not

1. The levels of education and experience of the inventor and other persons actively working in the field;

2. The types of problems encountered in the field;

3. Previous solutions to those problems;

4. The rapidity with which innovations are made; and

5. The sophistication of the technology.

A person of ordinary skill in the art at the time of the alleged invention for each of the Asserted Patents would have at least a bachelor's degree in computer science, electrical or computer engineering, or a related field, and at least two years of work or research experience in digital communications systems, such as wireless communications systems and networks, or equivalent, or a master's degree in electrical engineering, computer engineering, computer science, or a similar field. Relevant working experience would include experience with telecommunications and networking, radio-access networking, and/or service provisioning in wireless networks. More education can supplement practical experience and vice-versa.

## 6.7.    WRITTEN DESCRIPTION

Defendant and Intervenors also contend that the Asserted Claims of the Asserted Patents are invalid for failure to provide an adequate written description of the full scope of the claimed invention. Defendant and Intervenors bear the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written description requirement.

A patent must also contain a written description of the product or method claimed in the patent. The written description requirement helps ensure that the patent applicant actually invented

---

have knowledge of the inner workings or composition of the invention, so long as the use placed the claimed features "in the public's possession"). This additional language ensures that the jury is properly instructed to find that the RBS2000 qualifies as prior art if its functionality was publicly used.

the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim with clear, concise, and exact terms. When determining whether the specification discloses the invention, the claim must be viewed as a whole.

The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize from reading the patent specification that the inventor possessed the subject matter finally claimed in the patent. The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have changed or new claims have been added since that time. The exact words found in the claim need not be used in the specification.

It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required. Enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention. The written description requirement may be satisfied by a combination of words, structures, figures, diagrams, formulas, etc. contained in the patent application. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1. The nature and scope of the patent claims;

2. The complexity, predictability, and maturity of the technology at issue;

3. The existing knowledge in the relevant field; and

4. The scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or groups of claims.

## 6.8. ENABLEMENT

Another way a patent claim can be invalid is if the specification fails to disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention at the time the

patent application was filed to make and use the full scope of the claimed invention without undue experimentation. This is known as the enablement requirement.

Defendant and Intervenors contend that the Asserted Claims of the '477 Patent are invalid for lack of enablement. If a patent claim is not enabled, it is invalid. In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not state information that persons of ordinary skill would be likely to know or could obtain without undue experimentation. Factors you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include the following:

1. The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques. The question of undue experimentation is a matter of degree. Even extensive experimentation does not necessarily make the experiments unduly intensive where the experiments are routine, such as repetition of known or commonly known techniques, but permissible experimentation is not without bounds;

2. The amount of direction or guidance disclosed in the patent;

3. The presence or absence of working examples in the patent;

4. The nature of the invention;

5. The state of the prior art;

6. The relative skill of those in the art;

7. The predictability of the art; and

8. The breadth of the claims.

No one or more of these factors alone is dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all the evidence presented to you. You should weigh these factors and determine whether or not in the context of this invention and the state of the art at the time of the effective filing date a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

[Furthermore, in determining whether the enablement requirement is met, a patent disclosure need not enable on of ordinary skill in the art to make and use a perfected, commercially viable embodiment. Specifically, the disclosure of the asserted patents need not enable a person of ordinary skill in the art to make and use any of the accused products, including T-Mobile's accused 4G and 5G networks. Likewise, the time it may have took to make a commercial-grade embodiment is not, itself, determinative of enablement. Nor is an inventor required to describe in the specification every conceivable and possible future embodiment of his invention.][29]

[The question of enablement does not turn on whether the accused product is enabled or whether a commercially viable product has been developed.][30]

### 7.1 DAMAGES

I will now instruct you about the measure of damages, but by instructing you on damages, I am not suggesting which party should win this case on any issue. If you find that Defendant T-Mobile has infringed any valid claim of the asserted patents, you must then consider what amount of damages

---

[29] **General Access's Position:** It is critically important to instruct the jury that enablement refers only to the full scope of the claims, and not to a commercially viable embodiment. This is black letter enablement law. "The dispositive question of enablement does not turn on whether the accused product is enabled." *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997). The Court adopted this instruction in the June trial in the *Verizon* case.

[30] **Defendant and Intervenor's Position:** There is no dispute that enablement does not refer to commercially viable embodiments; however, General Access's proposed language is expansive and redundant of the instruction preceding General Access's proposed paragraph. Defendant and Intervenors' proposed language is *verbatim* of the instruction this Court gave in *Verizon. See Verizon*, Trial Tr. (Vol. 5) at 1266:9-11.

to award to General Access. If you find that T-Mobile has not infringed any valid claim of the patent, then General Access is not entitled to any patent damages.

General Access has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that General Access establishes it more likely than not suffered as a result of T-Mobile's infringement. While General Access is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. [You may not award damages that are speculative, damages that are only possible, or damage that are based on guesswork.] [General Access is not entitled to damages that are remote or are only speculative.] [31]

The damages you award must be adequate to compensate General Access for any infringement that you may find. You may not award General Access more damages than are adequate to compensate for the infringement. You must [keep in mind that the damages award is mean to compensate the patent holder and not to punish the infringer. Thus, you should] [32] not include any additional amount for the purposes of punishing T-Mobile or setting an example.

### 7.2. REASONABLE ROYALTY

In this case, General Access seeks damages in the form of a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of a royalty payment that a patent holder and the alleged infringer

---

[31] **General Access's Position**: This language is *verbatim* of the instruction provided in *Verizon*. *See Verizon*, Trial Tr. (Vol. 5), at 1267:3-4.

**Defendant's and Intervenors' Position**: This instruction was tracking Model Patent Jury Instruction 5.1 from the Federal Circuit Bar Association, but the last sentence deviated and does not account for the full scope of what is included in the instruction.

[32] **General Access's Position**: Defendants' proposal is redundant.

**Defendant's and Intervenors' Position**: The longer instruction provides an explanation for the prohibition of the following sentence.

would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patents were valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty that you determine must be a royalty that would have resulted from this hypothetical negotiation and not simply a royalty that either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating a reasonable royalty but only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine an anticipated profit at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

The law requires that the royalty awarded to General Access correspond to the value of the alleged inventions within the accused product, as distinct from other unpatented features of the accused product.

[If the claimed patented features are not the sole driving factor for customer demand for the accused infringing product, then you must perform what is called apportionment. In this case, the][33]

---

[33] **Defendants Position**: Verbatim from the Federal Circuit Bar Association's Model Jury Instructions at 74.

**General Access's Position:** In context, this instruction misleadingly suggests that the jury must perform a further apportionment of the damages figures presented to it by the parties' damages experts, which already reflect those experts' opinions regarding a proper apportionment.

amount you decide to award as money damages must be based on the value attributable to the infringing features of the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing, advertising, or the parties' size or market positions. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. The date of the hypothetical negotiation would be in early 2013 for the '477 and '383 Patents. Some of the kinds of factors that you may consider in making your determinations are:

1. The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

2. The rates paid by the licensee for the use of the patents comparable to the patents-in-suit. Comparable license agreements include those covering the use of the claimed invention or similar technology;

3. The nature and scope of the license as exclusive or non-exclusive, or as restricted or non-restricted, in terms of territory or with respect to whom the manufactured product may be sold;

4.  The licensor's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business;

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention of the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.  The duration of the patent and the term of the license;

8.  The established profitability of the product made under the patents, its commercial success, and its current popularity;

9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor and the benefits to those who have used the invention;

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. The opinion and testimony of qualified experts; and

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been trying to reasonably and voluntarily reach an agreement; that is, the amount which a prudent licensee who desired as a business proposition to obtain a license to the patented invention would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific* factors." No one of these factors is dispositive, and you can and should consider all the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent owner would have been willing to accept acting as normally prudent businesspeople.

### 7.3. REASONABLE ROYALTY – AVAILABILITY OF ACCEPTABLE NONINFRINGING SUBSTITUTES

In determining a reasonable royalty, you may also consider whether T-Mobile had commercially acceptable non-infringing alternatives to taking a license from General Access that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or comparable result that does not require using the Asserted Claims. You may compare the patented invention to non-infringing alternatives to determine the value of the patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that had been used to achieve similar results.

### 7.4. REASONABLE ROYALTY – LICENSE COMPARABILITY

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question or for rights to similar technologies. Thus comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. Such licenses may indicate the patented inventions' economic value in the marketplace, and they may indicate the proper form of the royalty structure, such as a lump sum, or a running royalty.

A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and alleged infringer in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license in terms of the technologies and economic circumstances of the contracting parties when you make your reasonable royalty determination.

### 7.5. REASONABLE ROYALTY – COMMENCEMENT OF DAMAGES

In determining the amount of damages, you must determine when the damages began. Where you find that an asserted claim has been infringed and is not invalid, you may not award any damages [for activities occurring] before the damages start.

For the '477 Patent, the damages period would have begun in April 2017. The '477 Patent expired on June 30, 2023. So the damages period for the '477 Patent would have ended on June 30, 2023.

For the '383 Patent, the damages period would have begun in April 2017. The '383 Patent expired on March 6, 2023. So the damages period for the '383 Patent would have ended on March 6, 2023.

* * *

Ladies and gentlemen, at this time and with these instructions, we will proceed to hear closing arguments from the attorneys in the case. General Access may now present its first closing argument to the jury.

* * *

## 8. DELIBERATIONS

All right, ladies and gentlemen, I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duty as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Again, do not decide who you think should win and then answer the questions accordingly to reach that result. I remind you once more, your answers to those questions and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, business entities, and even individuals. A patent owner is entitled to protect his rights under the laws of the United States, and this includes bringing a suit in a United States District Court for infringement. A defendant is equally entitled to defend itself under the laws of the United States, and this includes bringing any or all of its available defenses under the law in a United State District Court in which it is being sued. The law recognizes no distinction among types of parties. All corporations, partnerships, other business organizations, and individuals stand

equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, as I have told you, you are each going to have a written copy of these final jury instructions to take with you that I am giving you orally now. If during your deliberations you desire to review any of the exhibits which the Court has admitted into evidence over the course of the trial, you should advise me by a written note delivered to the Court Security Officer and signed by your foreperson. I will then send you that exhibit or those exhibits.

Also, once you retire, you should first select your foreperson and then conduct your deliberations. If you recess during your deliberations for any reason, follow all the instructions the Court has given you about your conduct during the trial.

After you have reached a unanimous verdict, your foreperson is to fill in those unanimous answers to the questions in the verdict form reflecting your unanimous decision. You should not reveal your answers until such time as you are discharged by me or unless I direct you otherwise, and you must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence, ladies and gentlemen, and a juror who has not taken notes should rely on his or her own independent recollection of the evidence produced during the course of the trial and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If during your deliberations you want to communicate with me at any time, you should give a written message or question to the Court Security Officer written and signed by your jury foreperson. The Court Security Officer will then bring it to me and I will respond as promptly as possible either

in writing or by having you brought back into the courtroom where I can address you orally. I will always first disclose to the attorneys in the case your question and my intended response before I answer your question.

After you have reached a unanimous verdict and I have accepted that verdict and discharged you from your position as jurors in this case, I remind you, you are not required to talk with anyone about your service in this case, but at that point when I have discharged you as jurors, by the same token, you will be completely free to discuss your service in this case with anyone of your choosing. That choice at that time, ladies and gentlemen, will be up to you; 100 percent your choice.

I am now going to hand eight printed copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer who will deliver them to you in the jury room.

Ladies and gentlemen, you may now retire to the jury room to deliberate upon your verdict. We await your verdict.