**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., | § § § | |
| *Plaintiff,* | § | |
| v. | § § | |
| | § | CIVIL ACTION NO.  2:23-CV-00158-JRG |
| T-MOBILE USA, INC., | § § | |
| *Defendant,* | § § § | |
| ERICSSON INC., | § § | |
| *Intervenor-Defendant.* | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is the Motion for a New Trial Regarding Infringement of the '477 Patent (the "Motion") filed by Plaintiff General Access Solutions, Ltd. ("GAS").  (Dkt. No. 261).  In the Motion, GAS moves the Court to order a new trial under Federal Rule of Civil Procedure 59 on the issues of infringement regarding U.S. Patent No. 6,947,477 (the "'477 Patent") and any resulting damages flowing therefrom.  For the following reasons, the Court **DENIES** the Motion.

**I.    BACKGROUND**

At trial, GAS accused Defendant T-Mobile USA, Inc. ("T-Mobile") and Intervenor-Defendant Ericsson Inc. ("Ericsson") (collectively, "Defendants") of infringing claims 1, 3, and 6 of the '477 Patent (the "Asserted Claims").  (*See* Dkt. No. 250 at 4).[1]  GAS specifically accused Ericsson's FDD and TDD base stations of infringing the '477 Patent.  (*See, e.g.*, Dkt. No. 261 at 14-15).  The '477 Patent generally relates to wireless communication systems.  (Dkt. No. 108 at

---

[1] At trial, GAS also asserted infringement of U.S. Patent No. 7,099,383.  (*See* Dkt. No. 250 at 4).  The Court discusses the '477 patent only because the Motion is limited to that patent.

1).   The Asserted Claims require, *inter alia*, that certain "signal-related and channel-related parameters are **collectively representative** of communication of [a] first burst data signal over [a] first channel to [a] receiving station." '477 Patent at 12:63-13:18 (claim 1) (emphasis added).  No party sought claim construction of the term "collectively representative."  Following trial, the jury found that none of the Asserted Claims were infringed.  (Dkt. No. 250 at 4).

## II.    LEGAL STANDARDS

Rule 59 provides that a new trial may be granted on all or part of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  Notwithstanding the broad sweep of Rule 59, "courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial."  *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-00744-JRG, 2017 WL 3704760, at *2 (E.D. Tex. Aug. 28, 2017); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 643 (E.D. Tex. 2017).  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) ("A new trial is warranted if the evidence is against the great, and not merely the greater, weight of the evidence.").  Furthermore "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial. … the court must disregard all errors and defects that do not affect any party's substantial rights."  Fed. R. Civ. P. 61.

## III.    ANALYSIS

In its Motion, GAS requests a new trial based upon two theories.  First, GAS argues that a new trial is warranted because Defendants "resorted to legally incorrect and fundamentally unfair arguments."  (Dkt. No. 261 at 4-9, 11-13).  Second, GAS argues for new trial because the verdict was against the great weight of the evidence, "[d]espite" Defendants' alleged conduct.  (Dkt. No. 261 at 9-11, 14-15).  The Court addresses each in turn.

### A.    Defendants' Presentation Was Not Unfair or Prejudicial

GAS's Motion asserts that Defendants engaged in trial by ambush by presenting erroneous claim construction and undisclosed, surprise non-infringement theories.  (Dkt. No. 261 at 11); (Dkt. No. 272 at 1-5).  GAS also takes issue with Defendants' closing argument with respect to the term "collectively representative."  (Dkt. No. 261 at 11-12).   Notably, neither GAS nor Defendants sought claim construction of the term "collectively representative."  Nonetheless, GAS complains that Defendants asserted in its closing argument, for the first time, that a stored profile must "include all the information required by the demodulators to permit their operation to demodulate bursts," including instantaneous equalization weights used as part of the accused products' algorithm, in order to infringe the Asserted Claims.  (Dkt. No. 261 at 11-12) (citing Dkt. No. 292 at 1329:8-10 1330:8-11, 1330:12-14, 1331:8-12, 1331:19-22, 1332:5-7, 1332:22-24).  Defendants argued that the equalization weights in the accused products are recalculated (as opposed to being stored) and thus could not be "collectively representative," a theory that GAS argues has "no support in the claims."  (*Id.*).

GAS argues that closing argument stemmed from Defendants' expert, Dr. van der Weide, who similarly testified that the accused products did not infringe because they did not store and reuse a certain parameter, "equalization weights," which GAS claims is outside the scope of his report.  (*Id.* at 7, 13); (Dkt. No. 289 at 913:20-914:23).  GAS also accuses Defendants and Dr. van

3

der Weide of presenting a scripted, last-minute claim construction definition because Dr. van der Weide "volunteered," "without any question pending" that the term "'collectively representative' should describe the information required by the demodulators to permit their operation to demodulate bursts of data received by the demodulators." (Dkt. No. 261 at 7, 13-14); (Dkt. No. 289 at 1019:1-5). GAS concludes that, as a result, Defendants' closing argument was "not just wrong—it was trial by ambush." (*Id.*).

Defendant initially responds that GAS waived these arguments at least because much of the "testimony and evidence to which [GAS] now objects were never the subject of objection." (Dkt. No. 266 at 2, 7-11) (citing *Garriott v. NCsoft Corp.*, 661 F.3d 243, 248 (5th Cir. 2011) ("Courts look skeptically at such claims for a do-over, especially in the context of a jury verdict."); *Wi-LAN Inc. v. HTC Corp.*, 2014 U.S. Dist. LEXIS 45819, at *26 (E.D. Tex. Apr. 2, 2014) ("It is improper to fail to object during trial while allegedly objectionable testimony is being presented and then wait until post-verdict briefing to ask for a new trial on the same basis.")).

As to the allegedly scripted, volunteered claim construction which GAS asserts, Defendants push back persuasively. (*See* Dkt. No. 261 at 7-8). The dispute concerns the below exchange during Dr. van der Weide's redirect examination:

> Q. [D]oes the patent give us any guidance as to what is needed to collectively represent a communication channel?
> A. Well, right in the middle starting at line 4, without reading the entire thing, or maybe line 3, "the profiles are updated as appropriate and include the information required by the demodulator" – I won't read all the way down to that – "to permit their operation to demodulate bursts of data received by the demodulators."
> Q. Okay.
> A. So 'collectively representative' should describe the information required by the demodulators to permit their operation to demodulate bursts of data received by the demodulators.

(Dkt. No. 289 at 1018:17-1019:5). GAS fails to quote this exchange with the context presented above. Even so, GAS insists such was a planned ambush by Defendants. (Dkt. No. 261 at 8).

4

However, GAS omitted the first question and answer. With complete context, it seems clear that the "interjection of the word 'okay' after Dr. van der Weide finished reading merely interrupted his answer to the question, and Dr. van der Weide's continued answer was responsive to that question." (Dkt. No. 266 at 7-8). GAS's sole response on this point is a conclusory assertion that "the quick-fire testimony" left "no reason to understand Dr. van der Weide's unprompted remark as the foundation for a new defense." (Dkt. No. 272 at 3). In any case, GAS fails to establish that Dr. van der Weide's testimony was unfairly prejudicial or that the jury could not have found the testimony supported non-infringement.

Defendants also dispute that their "equalization weights" non-infringement theory was undisclosed. Defendants highlight several portions of Dr. van der Weide's expert report that "specifically criticized Dr. Madisetti's failure to address the 'collectively representative' limitation," including "information related to equalization." (Dkt. No. 261 at 2-4). Defendants further point out that GAS failed to object or show any surprise during opening statements when Defense counsel stated "we don't store all the parameters that are collectively representative of communication of the signal. Instead, the way we do it is we redetermine a number of parameters that frequently change and are not stored," which is central to the theory and "claim construction" of which GAS only now complains. (*Id.* at 4) (quoting Dkt. No. 287 at 200:13-17). Critically, Defendants cross-examined Dr. Madisetti during GAS's case in chief, eliciting agreement that equalization weights are important and that there would be no infringement "if equalization weights were not stored and reused." (Dkt. No. 261 at 4-6) (citing Dkt. No. 287 at 568:12-569:20). Defendants also argue that multiple fact witnesses testified to equalization weights. (Dkt. No. 261 at 5-6).

5

GAS's reply is unavailing.  GAS argues in reply that Dr. van der Weide's expert report does not sufficiently support "equalization weights" as "essential and required" for infringement. (Dkt. No. 272 at 1).  GAS also dismisses the "general" fact witness testimony by focusing the dispute on Defendants' claim that equalization weights were specifically required to find infringement.  (*Id.* at 2).  However, GAS raises several disputes over that fact witness testimony that, by its own framing, are not dispositive to the question before the Court.  (*See id.*).  GAS also alleges that it could not be prepared to handle the equalization weights theory because Defendants waited until GAS rested its case-in-chief to spring that theory.  (*Id.*).  None of these arguments withstand scrutiny, especially given the testimony of GAS's own expert who agreed (notably, during GAS's case-in-chief) that if "Ericsson's base stations['] equalization weights are not stored and reused, [then his] infringement theory is wrong."  (Dkt. No. 287 at 569:15-20).  Confusingly, GAS says this shows that Defendants' allegedly concealed theory "unfairly tainted the trial" because Dr. Madisetti "could have" distinguished from another type of equalization weights and because GAS "could have" corrected this on direct.  (Dkt. No. 272 at 2-3).  However, GAS never did so.  GAS says it failed to correct these alleged errors during its case-in-chief because Defendants did not disclose this equalization weights theory in time.  (*See id.*).  This reasoning is circular and unavailing.

GAS also attempts to defend its failure to timely raise objections about the matters it now attempts to raise.  First, GAS insists that it did object during opening statements, but as Defendants point out, that singular objection was about the word "discard," which is at best only tangentially relevant to the present inquiry.  (*Id.* at 2); (Dkt. No. 266 at 2 n.1).  GAS argues in response that its objection "[l]ikely" led Defendants to conceal their equalization weights theory, yet GAS offers no explanation for this—only speculation.  (Dkt. No. 272 at 2).  Importantly, GAS does not dispute

that it failed to object to Defendant's opening statements that "we don't store all the parameters that are collectively representative of communication of the signal," which expressly described Defendant's theory. (*See* Dkt. No. 266 at 4) (quoting Dkt. No. 287 at 200:13-17). GAS also asserts that it objected to Dr. van der Weide's testimony but concedes it only objected with respect to (1) a demonstrative; and (2) two general questions about what parameters do or do not get stored. (Dkt. No. 272 at 3). Both at trial during its objections and in GAS's briefing, GAS's arguments amount to generic complaints about being outside the scope of Dr. van der Weide's report. GAS declined to articulate then, and again declines now, to explain why or how those specific questions were part of this alleged trial by ambush or why its specific objections did target and seek to cure such tactics. Finally, GAS concedes it did not object during closing arguments, claiming that "by then, the prejudice was already locked in—no objection at that point could have undone the damage." (*Id.* at 4). GAS does not dispute that this failure to object constitutes waiver.

The Court agrees with Defendants. As an initial matter, GAS waived the purported claim construction dispute regarding the "new" non-infringement theory by failing to raise these issues until after trial. *Hewlett-Packard Co. v. Mustek Sys. Inc.*, 340 F.3d 1314, 1320 (Fed. Cir. 2003) ("[P]arties cannot reserve issues of claim construction for the stage of post-trial motions."); *Garriott*, 661 F.3d at 248 ("A motion for a new trial or to amend a judgment cannot be used to raise arguments which could, and should, have been made before the judgment issued.") (quotations omitted); *ATEN Int'l*, 932 F.3d at 1370 (holding that "there [was] no ground for reversal since there was no objection to the expert testimony as to claim construction," and noting that "[i]t is the parties' obligation to raise a dispute regarding the proper scope of claims to the court") (citations omitted). GAS invokes only four objections it made at trial. (Dkt. No. 272 at 2-4). It describes them only generically. (*See id.*). The fact that GAS raised objections to the word

7

"discard" in an opening statement and to Dr. van der Weide's testimony as outside the scope are alone insufficient to justify its failure to object to the remaining evidence GAS now cites. By waiting to raise it, for the first time, until after the jury returned its verdict, GAS waived this issue. *See Paice LLC v. Toyota Motor Corp.*, 2006 U.S. Dist. LEXIS 61603, at *3-5 (E.D. Tex. Aug. 16, 2006) ("Having failed to raise such objection during the course of the trial, when any objectionable argument could have been rectified, the Court does not find that the remedy of a new trial is warranted.").

Even if GAS had not waived this argument, which it has, GAS has also failed to establish that Dr. van der Weide's testimony amounted to improper claim construction opinions as opposed to testimony to the jury simply explaining the plain and ordinary meaning of the term "collectively representative." GAS may disagree with the plain and ordinary meaning of "collectively representative" which Defendants provided at trial. GAS may believe that a different meaning should be afforded to the term. Even so, that does not necessarily mean that Defendants offered improper claim construction opinions through its witnesses or that GAS is entitled to a new trial. On the evidence GAS identified, the Court does not find that Defendants or their witnesses presented improper claim construction opinions to the jury.

Even if Defendants' evidence constituted improper claim construction opinions, GAS has failed to show how any prejudice that resulted warrants a new trial. Indeed, as Defendants identified in their response, GAS's own expert agreed that equalization weights were necessary to infringement. (Dkt. No. 287 at 569:15-20). The jury could have relied on Dr. Madisetti's testimony alone to reach this result. GAS failed to explain how this alleged improper claim construction opinion could justify setting aside the jury's verdict in this case. "[T]he burden of showing harmful error rests on the party seeking the new trial," and, here, GAS has failed to show

8

that a new trial is warranted on this basis. *Metaswitch Networks*, 2017 WL 3704760, at \*2.

**B.      The Jury's Non-Infringement Verdict Was Not Against the Great Weight of the Evidence**

GAS also contests the sufficiency of the evidence supporting the jury's verdict, arguing that their verdict was against the great weight of the evidence.  As an initial matter, GAS declined to raise non-infringement as part of its Rule 50(a) motions for judgment as a matter of law.  (Dkt. No. 291 at 1209:6-1210:15) ("THE COURT: All right. Are there other matters [other than invalidity] Plaintiff seeks relief on pursuant to Rule 50(a)? MR. KELSON: There are not, Your Honor.").  "Thus, [GAS] failed to put either this Court or [Defendants] on notice of its objections to the sufficiency of the evidence prior to the close of the evidence at trial.  As a result, its ability to challenge the sufficiency of the evidence on any issue has been waived." *Perdue v. Nissan Motor Co.*, 2009 WL 2460988, at \*1 (E.D. Tex. Aug. 10, 2009) (denying new trial).

GAS also asserts that new trial should be granted because its "RRM algorithm evidence—the foundation of [its] infringement case—was left entirely unchallenged at trial." (Dkt. No. 261 at 9-11, 14-15); (Dkt. No. 272 at 1-5).[2]  Specifically, GAS accused the RRM algorithm in Ericsson's base station products as infringing the '477 Patent.  (Dkt. No. 261 at 9- 11).  In particular, GAS argues that Dr. Madisetti's testimony as to "post equalizer SINR" parameters (part of this RRM algorithm) stand as unrebutted evidence of infringement.  (Dkt. No. 261 at 14-15).[3] GAS argues that, this post equalizer SINR parameter is distinct from the "instantaneous" equalization weights included in Defendants' non-infringement theory, described above.  (Dkt. No. 261 at 14-15); (Dkt. No. 272 4-5); *see generally supra* § III.A.  GAS suggests that new trial is warranted with respect to the accused Ericsson FDD base stations, if not also as to the TDD base

---

[2] "RRM" refers to "radio resource management."  (Dkt. No. 286 at 438:21-25).
[3] "SINR" refers to "signal to interference and noise ratio."  (Dkt. No. 289 at 797:8-9).

stations, because "none of [Defendants'] arguments about 'instantaneous equalization weights' apply to the accused FDD base stations." (Dkt. No. 272 at 4).

The Court is not persuaded by GAS's arguments. Dr. Madisetti himself agreed on cross-examination that equalization weights were required to find infringement. (Dkt. No. 287 at 569:15-20). His opinion testimony was not limited to any particular accused product. (*See id.*). GAS suggests that the Court should disregard this testimony because Defendants conflated the two parameters such that their cross-examination may have confused Dr. Madisetti. (Dkt. No. 261 at 14-15); (Dkt. No. 272 at 4-5). GAS's speculation as to Dr. Madisetti's confusion is of no moment. First, to the extent GAS's argument constitutes objections to Defendants' conduct, it is rejected as noted above. *Supra* § III.A. Second, and more to the point, GAS's own argument demonstrates how the jury was free to reach its non-infringement verdict on this record. It could have reached the same verdict based solely on Dr. Madisetti's testimony. GAS asserts that "Dr. Madisetti was emphatic on this [distinction] in his direct examination, making clear that the equalization weighting parameter he relied on was the 'post-equalizer SINR.'" (Dkt. No. 261 at 14-15). GAS also urges that his direct testimony with respect to SINR is inconsistent with the conclusion (which Dr. Madisetti agreed on cross-examination) that the "instantaneous" equalization weights were required for infringement. (*E.g.*, *id.* at 12-15). Given this inconsistency, the jury was thus free to credit Dr. Madisetti's cross-examination testimony that equalization weights were required and/or disregard Dr. Madisetti's direct-examination (but inconsistent) testimony as non-credible.

Defendants also identify supporting rebuttal evidence, which the jury was free to credit in reaching its verdict. For example, Mr. Faxér, Defendants' witness, independently testified that "Ericsson's base stations do not save and re-use equalization parameters, or channel estimates." (Dkt. No. 266 at 12-13) (citing Dkt. 289 at 785:6-786:2, 786:11-20, 788:2-789:15). GAS argues

this cannot provide a basis to deny a new trial because a portion of Mr. Faxér's testimony was given in discussing exhibits that GAS says only concerned TDD base stations. (Dkt. No. 261 at 15); (Dkt. No. 272 at 4-5). However, Defendants argue that Mr. Faxér's testimony was not limited to a particular type of base station. (Dkt. No. 276 at 3-4) (citing Dkt. No. 289 at 785:19-22, 785:23-786:2). The Court finds the trial transcript confirms Defendants' assertion. (*See* Dkt. 289 at 785:19-22, 785:23-786:2). The jury could reasonably conclude that "Mr. Faxér's discussion of instantaneous calculation of equalization weights applied to all accused Ericsson base stations." (Dkt. No. 276 at 3-4). GAS has not established that any of its infringement evidence stands unrebutted.

Accordingly, the Court finds GAS has failed to carry its burden to show that a new trial is warranted on this basis. *Metaswitch Networks*, 2017 WL 3704760, at *2.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the Motion (Dkt. No. 261) should be and hereby is **DENIED** in all respects.

**So ORDERED and SIGNED this 25th day of March, 2026.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

11